**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **VICKY ARRINGTON,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **C.A.N.: 2:07-CV-717-MHT** |
| | ) | |
| **ALABAMA STATE UNIVERSITY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

**BRIEF IN SUPPORT OF ALABAMA STATE UNIVERSITY'S**
**MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Defendant Alabama State University ("ASU") and hereby files this brief in support of its Motion for Summary Judgment pursuant to F.R.Civ.P, Rule 56.

**STATEMENT OF THE MATERIAL UNDISPUTED FACTS**

1.      ASU is an equal-opportunity employer.  Specifically, ASU's Non-Academic Staff Handbook states:

> It is the policy and practice of Alabama State University to recruit, hire, compensate train, reassign and promote employees without discrimination on the basis of race, religion, color, physical disability, national origin, sex, marital status, political affiliation or age...The policy applies to all levels and phases of personnel administration, such as recruitment, advertising activities, testing, hiring, compensation, training, reassignment and promotion.

Exh. 1, ASU Non-Academic Staff Handbook Policies, Section 2.1, p. 24.

2.      Arrington began her employment with ASU as a police investigator in August 2002.  Exh. 2, Complaint at ¶ 13.

3.      On February 21, 2003, ASU appointed Arrington as the Acting Chief of Police.  Arrington was placed in this position after the Chief and his second in command had both been deployed to Iraq on active duty.  Exh. 3, Memorandum re: Appointment.

4.      On February 10, 2005, ASU posted a vacancy announcement for the position of Director of Police and Campus Security (this position is also referred to as the Chief of Police).  Exh. 4, First Posting.  The position required a Bachelor's Degree in criminal justice, public or business administration with a preference for a Master's Degree in one of those same areas.  The candidates had to have knowledge of modern police methods and be able to supervise sworn and non-sworn officers.  Exh. 4, First Posting.

5.      Arrington testified that she visited ASU's website to view the job posting some time after she had already submitted her application for the position.  Exh. 5, Arrington Depo., p. 21, ln. 7-10.

6.      An independent search committee was formed to screen and interview applicants for this position.  Exh. 6, First Search Committee Report.  T.C. Horn, Larry Cobb, Antoinette Smith, and Janice Franklin were members of the search committee. Exh. 6, First Search Committee Report.

7.      There were three applicants who availed themselves before the search committee.  Those applicants were Vicky Arrington, Virgil Merritt and Donnie Nunley. The search committee selected the applicant Nunley as the finalist.  The committee justified Nunley's selection for the position based upon his ability to demonstrate overall effectiveness.  Exh. 6, First Search Committee Report.

8.     The tally scores for search committee showed a numerical tie between Arrington and Merritt with a score of 65 and Nunley with a score of 61.  Exh. 7, Frazier Memo.

9.     On June 15, 2005, Dr. Leon Frazier, the former Vice President of Administrative Services, wrote a memorandum to President Joe A. Lee thru Olan Wesley, the former Director of Personnel and Human Resources, recommending an appointment for the Director of Police and Security.  Exh. 7, Frazier Memo.  Frazier's memorandum noted that there was "no significant variation between the three candidates."  Exh. 7, Frazier Memo.   Frazier recommended that an external appointment be made "given the history of the police department and its on-going proclivity for internal strife."  Exh. 7, Frazier Memo.  Both Arrington and Merritt were internal applicants.

10.     Further, Frazier recommended that Arrington be raised to Grade 14, Step 12 for having served "valiantly and conscientiously as Interim Police Chief for 2 years and 3 months."  Exh. 7, Frazier Memo.  Frazier stated that his "recommendations and rationale provided for the interests of the Department's effectiveness within the framework of available candidates" and gave "appropriate deference to the first female Police Chief at the University."  Exh. 7, Frazier Memo.

11.     On June 27, 2005, Wesley wrote a Memorandum to President Lee requesting that Frazier's recommendation be rescinded.  Exh. 8, Wesley Memo re: Recommendation.  Wesley stated that Frazier's recommendations left "the University and the Police Department at risk for unwarranted and unnecessary criticism" and "encouraged potential litigation."  Exh. 8, Wesley Memo re: Recommendation.  Further,

Wesley stated that Frazier's remarks regarding giving deference to the first female Police Chief at the University was in contradiction to the University's policy that "Objective criteria are the primary basis for selection. Each applicant is considered on the basis of his/her skills, knowledge and abilities." Wesley recommended that the position be re-opened for ten (10) days and that a new search committee be appointed. Exh. 8, Wesley Memo re: Recommendation.

12.     Frazier's recommendations were never approved. On July 18, 2005, Wesley informed Frazier that President Lee approved the re-opening of the Director of Police and Security Position for ten days. Exh. 9, Wesley Memo re: Re-opening of Position.

13.     The position was re-posted on July 21, 2005 with a closing date of August 4, 2005. The qualifications for the position were the same as the first posting. Exh. 10, Second Posting.

14.     A second screening committee was appointed to conduct the search pursuant to the second posting. Joseph Pace, Lewis Black, Jessyca Darrington, Gloria Julias, and Henry McCreary were members of the search committee. Exh. 11, Second Search Committee Report. There were six applicants considered for the position. Those applicants were Jeffrey Young, Virgil Merritt, Vicky Arrington, Mark Mathies, Andy Dowell and Marion Brock. Exh. 11, Second Search Committee Report.

15.     There were six applicants considered for the position. Those applicants were Jeffrey Young, Virgil Merritt, Vicky Arrington, Mark Mathies, Andy Dowell and Marion Brock. Exh. 11, Second Search Committee Report.

16.     Arrington claims that she did not interview for the second committee because she was not aware of the reopening and she was waiting for Frazier to contact her regarding the reopening.  Exh. 5, Arrington Depo., p. 29-30, ln. 18-9. Arrington never checked ASU's website (just as she had done after becoming aware of the first posting) or contacted the personnel department regarding the reopening of the position.  Exh. 5, Arrington Depo., p. 30, ln. 5-9.

17.     There is no ASU policy or procedure which requires notification, written or otherwise, to applicants of the reopening of a position.  There is no ASU policy or procedure which requires or indicates that the area Vice President should contact applicants regarding the status of vacancies.  The ASU Non-Academic Staff Handbook states the following:

> Recruitment activities are centralized in the Office of Personnel Services and Human Relations.  All available vacancies and new positions will be listed with the Office of Personnel Services and Human Relations immediately upon approval by the President.
>
> Each available permanent position to be filled will be appropriately advertised, and a notice will be posted on the Office of Personnel Services and Human Relations bulletin board and in accessible locations for employees.

Exh. 1, Non-Academic Staff Handbook Policies, Section 2.3, p. 26.

18.     On June 7, 2006, the second committee selected Jeffrey Young as the finalist for the position.  Exh. 11, Search Committee's Second Report.  The committee's report also noted the attempts made to contact applicants for the position and the result of the attempts.  The committee noted the following:

> *Mrs. Vicky Arrington declined to be interviewed.
> **Mr. Mark Mathies could not be reached for interview. (Ph No. not in service/disconnected/customer not available messages received on four attempts).
> ***Mr. Andy Dowell was unable to appear for interview.

> ****After screening all files and interviewing applicants who accepted the invitation to appear before the Committee**, we strongly recommend Mr. Jeffrey Young as top applicant for this position.

Exh. 11, Search Committee's Second Report (emphasis added).

19.     The notes of the second search committee correspond with Wesley's memorandum to Frazier regarding the notification to applicants.  Wesley stated that none of the previous applicants were notified of a selection; however, the search committee conducted a second screening of all applicants who had completed applications on file.  Exh. 13, Memo re: Notification to Applicants.  Wesley further stated that Arrington was contacted for an interview, but she declined.  Exh. 13, Memo re: Notification to Applicants.

20.     The search committee's tally scores were assigned as follows to the applicants:

| | |
|---|---|
| Jeffrey Young | 88 |
| Virgil Merritt | 83.5 |
| Vicky Arrington | 83.5 |
| Mark Mathies | 83 |
| Andy Dowell | 74 |
| Marion Brock, III | 78 |

Exh. 17, Tally Sheets Second Screening.  The tally sheets indicate that at least one committee person indicated that Arrington was a "no-show" and another indicated that there were inconsistencies with Arrington's application and resume.  Exh. 17, Tally Sheets Second Screening.

21.     Young had completed a Bachelor's in Criminal Justice as well as a Master's in Criminal Justice.  Exh. 14, Young's Application for Employment.  He had previously served as the deputy chief of the Auburn University at Montgomery's Police

Department for eleven (11) years.  Exh. 14, Young's Application for Employment. Additionally, he served as a security specialist for the United States Air Force for over thirteen (13) years.

22.     At the time of Arrington's application for the position, she only held a Bachelor's in Criminal Justice; she did not have a Master's Degree in any field.  Exh. 5, Arrington Depo. p. 22, ln. 8-18.   Arrington testified that at the time of her deposition, she was currently enrolled in Master's Degree program for Counseling (which is not one of the preferred areas listed in the job announcement).  Exh. 5, Arrington Depo., p. 9-10, ln. 17-1.

17.     Arrington testified that she had no knowledge of other candidates work histories and educational backgrounds.  Exh. 5, Arrington Depo., p. 58, ln. 15-20. She stated that she believes that she was the best person for the job simply because she had been in the interim position.  Exh. 5, Arrington Depo., p. 58, ln. 15-20.

18.     Arrington could not identify a similarly-situated male who was treated differently than she was.  Arrington's example of male being treated differently than her was the recommendation of Nunley for the position and the fact that she had a higher score than Nunley.  However, Arrington admits that Merritt, another male applicant had the exact same score as Arrington and was not selected.  Exh. 5, Arrington Depo., p. 62-64.  Arrington stated that the search committee's selection of male applicants on both searches gave her the belief that there was no interest in a female being the chief of police.  Exh. 5, Arrington Depo., p. 63, ln. 11-13.

19.     Although Arrington gave a litany of what she perceived as being unfair treatment towards her, Arrington could not identify any ASU policies and procedures that

discriminated against women as she claims in her lawsuit.  Exh. 5, Arrington Depo., p. 69-71.

20.    Arrington is familiar with ASU's Non-Academic Staff Handbook and is aware that ASU has an Equal Employment Opportunity policy yet she never filed a grievance per the procedures identified in the Non-Academic Staff Handbook. Exh. 5, Arrington Depo., p. 71-72, ln. 14-23.

21.    Arrington filed a Charge of Discrimination with the EEOC against ASU and Young on December 21, 2006 alleging gender discrimination and retaliation.  Exh. 16, Charge of Discrimination.

21.    The EEOC mailed a Right-to-Sue Letter to Arrington on May 8, 2007 instructing her that she had 90 days from the date that she received the letter to file a lawsuit against the respondent(s) in her Charge.  Exh. 15, Right-to-Sue Letter.  (The Letter stated that it was prudent for Arrington to file the lawsuit within 90 days from the date that the Letter was mailed to her to avoid any arguments of untimeliness).  Exh. 15, Right-to-Sue Letter.

22.    Arrington filed a Complaint against ASU on August 9, 2007 alleging a single claim of sex discrimination.  Exh. 2, Complaint.

## ARGUMENT

Arrington has no basis for her claim of sex discrimination against ASU.  ASU followed non-discriminatory practices and relied upon non-discriminatory reasons in the hiring of a Police Chief.  Both search committees were comprised of male and female ASU employees.  Neither search committee selected Arrington as the best candidate for the position.  The first search committee selected an applicant whom they perceived to

have the greatest overall effectiveness.  Nonetheless, the search was re-opened and a new search committee was formed after Frazier wrote recommendations criticizing the existing members of the police department.  Arrington never interviewed for the second committee; however, the committee still considered her qualifications for the position.  The evidence clearly shows that Jeffrey Young, the person eventually hired for the position, had greater education and experience than Arrington.  Based upon this evidence, Arrington can not succeed on a claim of gender discrimination.

Arrington does not assert a separate claim for disparate treatment and adverse impact, but instead states that she was subjected to disparate treatment and adverse impact as a basis of her gender discrimination claim.  Arrington provides no factual allegations to support this claim of disparate treatment and adverse impact.  Arrington can not identify a single policy of ASU that discriminates against women.  Arrington can not identify a similarly-situated male who was treated differently than her.  In fact, she does not have any knowledge of the other candidates' educational background and work experience.  ASU is entitled to summary judgment against all of the Plaintiff's claims against it.

Arrington did not timely file her lawsuit against ASU.  Arrington's Complaint and the Right-to-Sue Letter indicate that the lawsuit should have been filed within 90 days from May 8, 2007.  The Complaint was filed on August 9, 2007 – 93 days after the time permitted.  As such, ASU is entitled to summary judgment against all of the Plaintiff's claims against it.

## I.    <u>STANDARD OF REVIEW</u>

The moving party is entitled to summary judgment if the pleadings and affidavits, show that there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The record is viewed in the light most favorable to the non-moving party, and the burden is upon the moving party to show that it is entitled to summary judgment. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although the moving party bears the burden of proof, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). "An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Trotta v. Lighthouse Point Land Co., LLC*, 2008 WL 413962, *1-2 (S.D.Fla. 2008). Summary judgment must be granted to the moving party upon the non-moving party's failure to provide proof on any essential element. *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir.1998).

ASU is entitled to summary judgment as there is no genuine issue of material fact on Arrington's claim of gender discrimination.

II.    **ARRINGTON CAN NOT ESTABLISH A PRIMA FACIE CASE OF GENDER DISCRIMINATION BASED UPON THE HIRING OF JEFFREY YOUNG**

The traditional McDonnell Douglas framework is used to analyze claims of gender discrimination based upon circumstantial evidence. *Stuart v. Jefferson County Dept. of Human Resources*, 152 Fed. Appx. 798, 801-802 (11th Cir. 2005). Under this framework, the plaintiff must establish a prima facie case by showing that:

> (1) she is a member of a protected class,
> (2) she was qualified for a position *and applied for it*,
> (3) she was not considered for the position despite her qualifications, and
> (4) *equally or less qualified individuals* outside of her protected class were considered or hired for the position.

*See Wilson v. B/E Aerospace , Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004); *Welborn v. Reynolds Metals Co.,* 810 F.2d 1026, 1028(11th Cir. 1987). If the plaintiff can present a prima facie case, then the employer is allowed to assert a nondiscriminatory reason for the employer's actions. If the employer has done so, then the plaintiff bears the burden of showing that the non-discriminatory reason is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The plaintiff must offer evidence that the disparity in qualification was 'so apparent as virtually to jump off the page and slap you in the face.' *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1090 (11th Cir. 2004). Arrington can not establish a prima facie case for gender discrimination because she never completely applied for the position and the applicant hired by ASU possessed greater qualifications than she did.

A.    **ARRINGTON FAILED TO COMPLETE HER APPLICATION FOR THE POSITION**

The search committee used the applicants' qualifications only as a preliminary

screening of applicants. Exh. 11, Second Committee Report. The interview process was used as a second level of screening by the committee. Exh. 11, Second Committee Report.

The report of the second search committee indicates that Arrington, along with other male candidates were either unable or declined to interview. Exh. 11, Second Committee Report. The search committee still considered Arrington an applicant for the position, but chose to recommend a top applicant "after screening all files and interviewing applicants who accepted the invitation to appear before the Committee." Exh. 11, Second Committee Report.

As a plaintiff, Arrington must be able to show that she actually applied for the position. *See Wilson* 376 F.3d at 1089. Arrington's own failure to complete her application to the committee by presenting herself for an interview contributed to her non-selection for the position. Because of her own failure, which exhibits no discriminatory practices on the part of ASU, Arrington cannot establish a prima facie case of discrimination. Therefore, ASU is entitled to summary judgment against Arrington's claims.

**B.     THE APPLICANT HIRED BY ASU WAS THE MOST QUALIFIED APPLICANT AND WAS MORE QUALIFIED THAN ARRINGTON**

Arrington claims that she was not hired over Jeffrey Young for the position because she was a female. The job posting listed qualifications as a "Bachelor's degree in criminal justice, public or business administration, or a closely related field. Master's degree preferred in on of the preceding areas." The evidence shows that Young had more education than Arrington. Young had already earned a Bachelor's Degree and a Master's Degree in Criminal Justice. Exh. 14, Young Application. At the time of Arrington's

application for the position, she only held a Bachelor's in Criminal Justice; she did not have a Master's Degree in any field.  Exh. 5, Arrington Depo. p. 22, ln. 8-18.   Arrington testified that at the time of her deposition, she was currently enrolled in Master's Degree program for Counseling (which is not one of the preferred areas listed in the job announcement).  Exh. 5, Arrington Depo., p. 9-10, ln. 17-1.

The job posting states that "successful applicant will manage the operation of the University Police Department."   Exh. 4, First Posting, Exh. 10, Second Posting. Arrington cites her two (2) years of experience as the Interim Chief of Police at ASU as the reason for her being the most qualified candidate.[1] Exh. 5, Arrington Depo., p. 59, ln. 15-21.  However, Young had greater experience in managing a university police department than Arrington.  Exh. 14, Young Application.  At the time of application, Young had over eleven (11) years of experience as the deputy chief of police at Auburn University at Montgomery.  Exh. 14, Young Application.

The differences between Arrington's and Young's qualifications are so apparent that they jump off the page and slap you in the face.  The only conclusion that can be drawn from a review of both candidates' qualifications is that Young is the more qualified candidate.  Given this evidence, Arrington can not maintain even a prima facie case for gender discrimination because the applicant chosen was not equally or lesser qualified than she was.  *See Wilson* 376 F.3d at 1089.  As such, ASU is entitled to summary judgment against Arrington's claims.

      **III.**    **ARRINGTON CAN NOT ESTABLISH A PRIMA FACIE CASE OF GENDER DISCRIMINATION BASED UPON THE REOPENING OF THE VACANCY**

---

[1] Arrington actually testifies that she performed in the position for three and a half years; however, she had only performed the job for two years at the time of application.

The first search committee recommended Nunley as the top applicant for the position. The search committee perceived Nunley as having the highest probability of overall success. Exh. 6, First Search Committee Report. Nunley had an overall score of 61 and Arrington and the other male applicant, Merritt, tied with an overall score of 65. Exh. 7, Frazier Memo. The search committee's recommendation was received by Frazier, the area Vice President. Frazier concurred with the recommendation. Frazier also supported the hiring of an external candidate based upon the department's past troubles. Exh. 7, Frazier Memo. Frazier then recommended a raise for Arrington for having served as ASU's first female police chief. Exh. 7, Frazier Memo.

Wesley, the Director of Personnel and Human Resources, reviewed Frazier's memo and recommended to President Lee that Frazier's recommendations not be accepted. Exh. 8, Wesley Memo re: Recommendation. Wesley stated that the criticism of the police department was unnecessary and that the commendation to Arrington for serving as the first female police chief was in contradiction to ASU's Non-Academic Staff Handbook. Exh. 8, Wesley Memo re: Recommendation. Wesley recommended that the position be re-opened. Exh. 8, Wesley Memo re: Recommendation. Subsequent to Wesley's memo, President Lee approved the re-opening of the position. Exh. 9, Wesley Memo re: Approval for Re-opening of Position.

Arrington can not prove a prima facie claim of gender discrimination based upon these facts because there was no actual employment action made by ASU against Arrington. No one was actually hired for the position under the first search, thus Arrington can not demonstrate that ASU hired some one less qualified than her based upon her gender. *See Wilson* 376 F.3d at 1089. In fact, Wesley's recommendation to re-

open the position, which was subsequently approved by President Lee, actually ensured gender neutral selection process for all applicants.  Wesley shunned the benefit of a raise and commendation simply because of Arrington's gender.  Wesley's recommendation also ensured that the selection process would not be bias against internal applicants.

The recommendation to hire Nunley was simply that – a recommendation.  The recommendation was never approved by ASU.  Arrington was not subjected to discrimination of any form because of this recommendation.  Therefore, ASU is entitled to summary judgment against Arrington's claims.

### IV.     ARRINGTON HAS NOT PRESENTED SUFFICIENT FACTS TO SUPPORT ALLEGATIONS OF DISPARATE TREATMENT OR DISPARATE IMPACT

In her Complaint, Arrington alleges that she was subjected to disparate treatment and adverse impact as a basis for her gender discrimination claim.  Exh. 2, Complaint at ¶ 26.  These allegations are not separate causes of action rather they are included in the claim for gender discrimination.  Arrington offers no factual allegations to support disparate treatment or disparate impact other than to state that ASU has policies and procedures that discriminate against women and that there are similarly-situated males who were treated differently than her.

To succeed on a disparate treatment claim, the plaintiff must prove intentional discrimination, "normally through a combination of statistics and anecdotes, that discrimination is the company's 'standard operating procedure.'' *EEOC v. Joe's Stone Crab*, 220 F.3d 1263, 1274 (11th Cir. 2000). "To meet this burden of proof, a plaintiff must 'prove more than the mere occurrence of isolated or accidental or sporadic

discriminatory acts."  *Joe's Stone Crab,* 220 F.3d at 1286-87 (quoting Teamsters, 431 U.S. at 336, 97 S.Ct. at 1843).

To succeed on a disparate impact claim, the plaintiff must establish that (1) there is a significant statistical disparity among members of different racial groups; (2) there is a specific, facially-neutral employment policy or practice; and (3) there is a causal nexus between the specific policy or practice and the statistical disparity.  *Id.* at 1273.  To meet the third prong, a plaintiff "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id.* at 1274-75 (citation and internal quotation marks omitted).

Arrington can not identify one policy or procedure of ASU that discriminates against women.  Exh. 5, Arrington Depo., p. 69-70, ln. 16-23. Arrington can not identity one similarly-situated male who was treated differently than her.  Exh. 5, Arrington Depo., p. 62-64.  With this lack of evidence, Arrington can not provide the statistical data and evidence required by either the disparate treatment or the disparate impact framework.  ASU is entitled to summary judgment against Arrington's claims to the extent that she is seeking relief from ASU based upon principles of disparate impact and disparate treatment.

## V.    ARRINGTON FAILED TO TIMELY FILE THIS ACTION AGAINST ASU

"Title VII of the Civil Rights Act of 1964 requires that suit be brought within 90 days after the receipt of notice of right to sue.  42 U.S.C. § 2000e *et seq.* (1976)."  The EEOC mailed a right to sue letter to Arrington on May 8, 2007.  Exh. 15, Right-to-Sue Letter.  In the information section of the letter, the EEOC instructs Arrington as follows:

> In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the Charge within **90 days of the date you *receive* this Notice**...Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within **90 days from the date that this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark if later.

Exh. 15, Right-to-Sue Letter (emphasis in the original).  Arrington's Complaint avers that the action was timely filed following the issuance "*of a right-to-sue letter on May 8, 2007, which letter was issued to and received by Plaintiff*."  Exh. 2, Complaint at ¶ 2 (emphasis added).  Arrington failed to follow the instructions in the Right-to-Sue Letter by filing her Complaint against ASU on August 9, 2007.  The date of filing was 93 days past the date of the Right-to-Sue Letter and 93 days past the date that Arrington avers that the Right-to-Sue Letter was issued and received.   Thus, Arrington's Complaint is untimely, and summary judgment should be granted in favor of ASU.

## CONCLUSION

Arrington's claim of gender discrimination against ASU must fail because she can not establish a prima facie case.  ASU hired a more qualified applicant than Arrington for the position.   Notwithstanding, Arrington never completely applied for the position because of her failure to interview.  Additionally, ASU's reopening of the position does not give Arrington any basis for her gender discrimination claim.  The prior search committee did not result in the hiring of an applicant.  Furthermore, the reopening of the position actually benefited her and other internal applicants.  Arrington has not presented sufficient facts to support her allegations of disparate treatment and disparate impact.  Arrington did not timely file this lawsuit pursuant to 42 U.S.C. § 2000e *et seq.* (1976).  For these reasons, ASU respectfully requests that summary judgment be granted in its favor.

Respectfully Submitted,


/s/ Ramadanah M. Salaam-Jones
**KENNETH L. THOMAS (THO043)**
**RAMADANAH M. SALAAM-JONES (SAL026)**
***Attorneys for Alabama State University***

**OF COUNSEL:**
**THOMAS, MEANS, GILLIS, & SEAY,  P.C.**
POST OFFICE DRAWER 5058
3121 ZELDA COURT
MONTGOMERY, ALABAMA 36103-5058
(334)270-1033 Fax: (334)260-9396


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing on the following counsel of record via this Court's electronic filing system on this the 13th day of May, 2008.

K. Anderson Nelms, Esq.
847 S. McDonough Street
Montgomery, Alabama 36104
(334) 263-7733