## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| VICKY ARRINGTON, | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **C.A.N.: 2:07-CV-717-MHT** |
| | ) | |
| ALABAMA STATE UNIVERSITY, | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## ALABAMA STATE UNIVERSITY'S EVIDENTIARY SUBMISSIONS
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**COMES NOW** the Defendant Alabama State University ("ASU") and hereby submit these evidentiary submissions in support of its Motion for Summary Judgment.

| EXHIBIT NUMBER | EXHIBIT TITLE |
|---|---|
| 1 | Non-Academic Staff Handbook Policies |
| 2 | Complaint |
| 3 | Memorandum Re: Appointment |
| 4 | First Posting |
| 5 | Arrington Deposition |
| 6 | First Committee Report |
| 7 | Frazier Memo |
| 8 | Wesley Memo re: Recommendation |
| 9 | Wesley Memo re: Reopening of Position |
| 10 | Second Posting |
| 11 | Second Search Committee Report |
| 12 | Omitted |
| 13 | Memo re: Notification to Applicants |
| 14 | Young Application |
| 15 | Right-to-Sue Letter |
| 16 | Charge of Discrimination |
| 17 | Tally Sheets |

Respectfully Submitted,

/s/ Ramadanah M. Salaam-Jones
**KENNETH L. THOMAS (THO043)**
**RAMADANAH M. SALAAM-JONES (SAL026)**
*Attorneys for Alabama State University*

**OF COUNSEL:**
**THOMAS, MEANS,GILLIS,& SEAY,  P.C.**
POST OFFICE DRAWER 5058
3121 ZELDA COURT
MONTGOMERY, ALABAMA 36103-5058
(334)270-1033 Fax: (334)260-9396

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing on the following counsel of record via this Court's electronic filing system on this the 13th day of May, 2008.

K. Anderson Nelms, Esq.
847 S. McDonough Street
Montgomery, Alabama 36104
(334) 263-7733

# EXHIBIT 1

# SECTION 2.0
## EMPLOYMENT POLICIES

## 2.1  EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION

It is the policy and practice of Alabama State University to recruit, hire, compensate, train, reassign and promote employees without discrimination on the basis of race, religion, color, physical disability, national origin, sex, marital status, political affiliation or age, except where physical disability, sex or age constitutes a bona fide occupational disqualification or where an individual with a physical disability is not otherwise qualified for employment or where a decision based on age is pursuant to a bona fide seniority system or a bona fide employee benefit plan, such as a retirement, pension or insurance plan.  It is also the policy and practice of the University to take affirmative action to prevent discrimination on the basis of race, color, religion, sex, national origin, age or physical disability, including specific adherence to the University's Affirmative Action Plan.  The policy applies to all levels and phases of personnel administration, such as recruitment, advertising activities, testing, hiring, compensation, training, reassignment and promotion.

Applicants and employees who have reason to believe their treatment is in violation of the Equal Employment Opportunity policy should promptly report the circumstances of alleged violation, in writing, in accordance with the procedures set forth in the University's Affirmative Action Plan.  A copy of the University's Affirmative Action Plan is available for inspection in the University Library and in the University's Office of Personnel Services and Human Relations.

## 2.2  EMPLOYMENT ELIGIBILITY GUIDELINES

**2.2.1  MINIMUM JOB REQUIREMENTS.**  The minimum requirements for your job and other jobs have been determined and are available through the Office of Personnel Services and Human Relations.

**2.2.2  AGE REQUIREMENTS.**  To be employed at Alabama State University as a employee, one must be at least 18 years of age, except students.

**2.2.3  EMPLOYMENT OF RELATIVES.**  The University will allow more than one member of an immediate family to be employed at the University in accordance with the following provisions:

1)  Such hiring must conform to the State of Alabama anti-nepotism law (Alabama Code, Section 41-1-5), which provides that "No officer or employee of the state shall appoint any person related to him within the fourth degree of affinity or consanguinity to any job, position or office of profit in the state."

24

2) Such hiring does not discriminate against other candidates for the vacant position.

3) No officer or employee of the University shall be permitted to exercise direct supervision over persons related to him or her by family or marriage. For purposes of this policy, persons related by family or marriage are defined as a spouse, parent, child, brother, sister, grandparent, grandchild, aunt, uncle, niece, nephew, in-laws and persons for whom the employee has been assigned legal responsibility in a guardianship capacity.

The President of the University or his/her designee must grant final approval in each case where the University is considering hiring more than one person related by family or marriage to work in the same department.

2.2.4 ALIENS. An alien may be employed by the University provided he/she has legal proof of a right to work in the United States as indicated by an approved visa or work permit.

2.2.5 EMPLOYMENT OF ATHLETIC COACH. No individual may be employed in a head coaching capacity who has been officially sanctioned by the National Collegiate Athletic Association (NCAA) or an NCAA member conference for violating NCAA or conference rules.

2.2.6 REEMPLOYMENT OF FORMER EMPLOYEES. A former employee who resigns from the University in good standing and is subsequently reemployed after 180 days will be considered a new employee for purposes of seniority and sick leave. However, at the employee's option, accrued sick leave may be transferred to the Teachers' Retirement System of Alabama for service credit toward retirement if application is made within 180 days of resigning from the University.

A former employee who is reemployed after 180 calendar days may be reemployed in the same type of employment or in another type of employment for which he/she is qualified.

## 2.3 RECRUITMENT, SCREENING AND APPOINTMENT

The University actively and affirmatively places emphasis on the recruitment and screening of women and non-black applicants. In addition, the University avails itself of the traditional channels of recruitment which include the Alabama State Employment Service, advertisements in newspapers and professional journals, campus newspapers and community and technical colleges. All advertisements will display that the University is an "Affirmative Action/Equal Opportunity Employer."

25

Persons seeking employment at Alabama State University are referred to the Office of Personnel Services and Human Relations for securing applications and information on available positions.

Recruitment activities are centralized in the Office of Personnel Services and Human Relations. All available vacancies and new positions will be listed with the Office of Personnel Services and Human Relations immediately upon approval by the President.

Each available permanent position to be filled will be appropriately advertised, and a notice will be posted on the Office of Personnel Services and Human Relations bulletin board and in accessible locations for employees.

A work permit, if required by law, shall be secured by the applicant and filed in the Office of Personnel Services and Human Relations.

During initial screening, the Director of Personnel Services and Human Relations will delete all applicants who are not eligible or qualified based on announced criteria for the position.

Applicants for all administrative positions at the level of Director or equivalent and above will be screened and evaluated by a screening committee. The committee will be composed of the Director of Personnel Services and Human Relations, immediate supervisor and/or other persons appointed by the area Vice President. A technical consultant may be added when, in the opinion of the committee, circumstances warrant. The screening committee will submit the top three names to the area Vice President who will make recommendation to the President, and the President will make the final appointment subject to approval by the Board of Trustees.

No person is considered employed until a written contract is signed by both the President and the employee and has been approved by the Board of Trustees. No supervisor or officer is authorized to make an oral or written commitment of employment to any applicant. No contract shall be executed between the University and an employee that is inconsistent with the policies contained in this Handbook.

Objective criteria are the primary basis for selection. Each applicant is considered on the basis of his/her skills, knowledge and abilities.

Each applicant applying for a clerical/data entry position will be required to take a typing/data entry test administered via the Office of Personnel Services and Human Relations.

Any evaluation in terms of skills, knowledge and abilities used to determine the qualification of applicants seeking employment for a certain position shall also be used for the evaluation of all applicants seeking that position.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 AUG -9  P 2: 32

VICKY ARRINGTON,                     )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )     CASE NO. CV-07- 2:07-CV-717-MHT
                                     )
ALABAMA STATE UNIVERSITY             )     JURY TRIAL DEMANDED
                                     )
        Defendant.                   )

## COMPLAINT

Comes now Plaintiff Vicky Arrington by and through counsel, and complains against the

defendant as follows:

### JURISDICTION

1.    Jurisdiction in this Court is proper pursuant to federal question jurisdiction over claims

      brought under 28 U.S.C. § 1331, 28 U.S.C. § 2201-2202, Title VII of the Civil Rights Act

      of 1964, more particularly, 42 U.S.C. § 2000e, et seq. (as amended), 42 U.S.C. 1981a.

2.    Timely filing in this Court followed issuance by the Equal Employment Opportunity

      Commission of a right-to-sue letter on May 8, 2007, which letter was issued to and

      received by Plaintiff.

3.    Venue in this Court is proper in that all causes of action enumerated herein and all claims

      made by Plaintiff arose in the Northern Division of the Middle District of Alabama.

### PARTIES

4.    Plaintiff Vicky Arrington (hereinafter, "Arrington" or "Plaintiff") is a resident of

      Montgomery County, Alabama, over the age of Nineteen (19) years, and was employed

1

by defendant Alabama State University.

5.   Defendant Alabama State University (hereinafter, "the University" or "the employer"), a better, further, and other denomination of which is presently unknown to plaintiff, is an Alabama State agency.

## NATURE OF THIS ACTION

6.   This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent injunction, restraining the defendants from maintaining a policy, practice, custom or usage of discrimination against Plaintiff because of her sex, from harassing her, and from retaliating against her. The Complaint also seeks restitution to Plaintiff of all rights, privileges, benefits and income that would have been received by her but for the defendant's unlawful and discriminatory practices. Further, Plaintiff seeks compensatory damages for her suffering as a consequence of the wrongs alleged herein.

7.   Plaintiff avers that the defendant acted to deny Plaintiff her rights under the laws of the United States of America and such action was designed to discriminate against her, a female.

8.   Plaintiff avers that the defendant's actions were designed to prevent her and other similarly situated females from obtaining an equality with non-protected group members, males, in pay, benefits and treatment.

9.   As a proximate result of the illegal actions alleged above, Plaintiff has been damaged in that she has been deprived of her employment by constructive discharge and has been deprived of title, status, and prestige, as well as caused to suffer great humiliation and mental anguish from then until now.

2

10.  Plaintiff avers that the defendant's unlawful actions were intentionally and knowingly undertaken with the intent to discriminate against her due to her sex, female.

11.  This action is brought to claim compensatory damages and equitable relief of the defendant for sex discrimination.

## FACTUAL ALLEGATIONS

12.  Plaintiff expressly adopts as if fully set forth herein the allegations of each of the foregoing paragraphs.

13.  Plaintiff began her employment with the employer on or around August 2002 as a police investigator.

14.  In or around January 2003, the current Chief of Police, Caesar Moss (hereinafter, "Moss"), was deployed to Iraq by the United States Military. Therefore, Plaintiff was appointed by the employer as the Interim Police Chief.

15.  In or around January 2005, Moss returned from his service in Iraq and retired as Chief of Police of the employer.

16.  Due to Moss's retirement, the employer announced the vacancy for Chief of Police and solicited employment applications. Likewise, the employer appointed a Screening Committee to evaluate potential candidates.

17.  Plaintiff was one of three applicants, and the only female, considered by the Screening Committee for the position as Chief of Police. In fact, Plaintiff was ranked in the top position by the Screening Committee. Thereafter, this Screening Committee was dissolved.

18.  However, a second Screening Committee was appointed to evaluate the qualified

3

applicants. Plaintiff was contacted by Joe Pace, who Plaintiff believed to be the chair of

the second Screening Committee, regarding an appointment for a second evaluation.

19.    Plaintiff contacted Dr. Frazier, a representative of the employer, regarding the necessary

steps she needed to take to participate in this second screening process. All other

applicants were contacted directly by the employer, however the employer failed to

contact Plaintiff. Dr. Frazier promised to get back in touch with Plaintiff which he failed

to do.

20.    Shortly thereafter, Plaintiff learned that a new Chief of Police, Jeffery Young, had been

hired by the employer.

21.    During her tenure with the employer, Plaintiff performed to the reasonable satisfaction of

her employer. In fact, Plaintiff served and satisfactorily performed her duties as Interim

Chief of Police for sever years until a new Chief of Police was hired.

22.    Plaintiff avers that the defendant has discriminated against her because of her sex, female,

in violation of Title VII of the Civil Rights Act of 1964, as amended, in that she was

treated in an adverse fashion when compared with similarly situated males.

## COUNT I – SEX DISCRIMINATION

23.    Plaintiff hereby expressly adopts as if fully set forth herein each and every allegation of

the foregoing paragraphs.

24.    Plaintiff is a member of a protected class, female.

25.    Plaintiff was highly qualified for the position she held, and she was performing each and

every essential function of her job to her employer's reasonable satisfaction.

26.    Plaintiff was subjected to disparate treatment and adverse employment actions to which

4

similarly situated members of a non-protected class were not, and would not have been, subjected.

27.    The treatment complained of was because of her sex, female.

28.    Plaintiff has been damaged thereby in that she has been deprived of title, authority, responsibility, position, status, prestige, esteem, pay, benefits, and opportunity for advancement. In addition, she has been embarrassed, humiliated, deprived of meaningful work, and has been caused to suffer great stress, mental anguish, emotional distress, loss of self-esteem, and loss of enjoyment of living.

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, Plaintiff demands judgment in her favor and against the defendant as follows:

A.    Plaintiff prays that the Court will enter a declaratory judgment that the discriminatory practices complained of herein are unlawful and violative of Title VII of the Civil Rights Act of 1964, as amended;

B.    Plaintiff prays that the Court will permanently enjoin the defendant, its agents, successors, officers, employees, attorneys and those acting in concert with it or them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law;

C.    Plaintiff prays that the Court will order modification or elimination of practices, policies, customs, and usages set forth herein and all other such practices shown to be in violation of applicable law;

D.     Plaintiff demands Compensatory damages in an amount yet to be ascertained or, in the

alternative, nominal damages;

E.     Plaintiff prays that the Court will grant such other, further and different monetary relief,

including such equitable relief as back pay and front pay, as this Court may deem just and

proper;

F.     Plaintiff prays that the Court will grant her the cost of this action including reasonable

attorney's fees.

RESPECTFULLY SUBMITTED, this 9th day of August, 2007.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE**

ANDY NELMS (NEL022)
Attorney for Plaintiff

LAW OFFICES OF JAY LEWIS, LLC
847 South McDonough St. (36104)
PO Box 5059
Montgomery, AL 36103
334-263-7733 (Voice)
334-832-4390 (Telefax)

# EXHIBIT 3



# ALABAMA STATE UNIVERSITY

P.O. BOX 271 • MONTC
(334) ?

**OFFICE OF THE VICE PRESIDENT
FOR ADMINISTRATIVE SERVICES**

*Monthly Rate*

Febr _____ *3,602.33*

**MEMORAND** *1,167.85 · Feb
25,216 31  7mos
26,384.16*

THRU:     Mr. Olan Wesley, Director
          Personnel and Human Relations

TO:       President Joe A. Lee
          Alabama State University

FROM:     Leon Frazier, Vice President
          for Administrative Services

*RE:*     ***Recommendation for Appointment of Acting Chief of Police and Security
          (Investigator Vicky Arrington)***

Chief Ceasar Moss has been ordered to active military duty, effective February 20, 2003, for an
indefinite duration. His second in command, Captain Virgil Merritt, has also departed for active
military service, for an indefinite duration.

In order to provide for continuation of top level departmental leadership, and to preclude a
departmental leadership vacuum, I am recommending the official appointment of Police Investigator
Vickie Arrington to the position of Acting Chief, effective immediately (February 21, 2003). I am
also recommending that her salary be set in accordance with applicable personnel policy. Investigator
Arrington's credentials are attached.

L. F.

myp

cc:
     Dr. Marian H. Smith, Assistant Vice President
        Administrative Services



RECEIVED
FEB 21 2003
PERSONNEL & HUMAN RELATIONS



Exhibit

*Alabama State University is an Affirmative Action / Equal Opportunity Employer*

# EXHIBIT 4

# POSITION AVAILABLE
# ALABAMA STATE UNIVERSITY

915 South Jackson Street   ●   Montgomery, AL 36101-0271
Voice: (334) 229-4667 ●  Fax:  (334)265-0697  ●  ASU Job Line: (334) 229-5627(JOBS)



## AFFIRMATIVE ACTION/EQUAL OPPORTUNITY EMPLOYER

**Date Posted:**  February 10, 2005          **Classification:  Administrative**
**Closing Date:**  March 9, 2005

### To download an application form visit our website @ www.alasu.edu/hr

## DIRECTOR OF POLICE AND CAMPUS SECURITY (JC-4001)

Alabama State University, Division of Administrative Services, invites applications to fill the position of Director of Police and Campus Security.  The successful applicant will manage the operation of the University Police Department providing Law enforcement, security surveillance, escorts, general investigations, communications, contracts and related business operations.

## Qualifications:

Bachelor's degree in criminal justice, public or business administration or closely related field.  Master's degree preferred in one of the preceding areas.  Extensive knowledge of modern police methods, procedures and administration;  thorough knowledge of business management practices and principles; ability to exercise effective administrative and technical supervision over sworn and non-sworn security personnel engaged in law enforcement activities and the ability to exercise judgment and discretion in applying and interpreting departmental policies and procedures.

## Salary:
Competitive

## Starting Date:
Immediately following selection of a candidate.

## TO APPLY:

Interested applicants should submit an employment application form listing the names, address and phone numbers/email address of the three professional references on the reference sheet, transcripts and resume to:

### Office of Personnel and Human Relations
Alabama State University
P. O. Box 271
Montgomery, AL  36101

*Alabama State University is an Affirmative Action/Equal Opportunity Employer*

Exhibit

# EXHIBIT 5

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 20 of 63

Deposition of Vicky Arrington                    ARRINGTON vs. ASU                    November 14, 2007



Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
 2          FOR THE MIDDLE DISTRICT OF ALABAMA
 3                    NORTHERN DIVISION
 4
     VICKY ARRINGTON,
 5
          Plaintiff,
 6
     vs.              CIVIL ACTION NO.
 7                    2:07-CV-717-MHT
 8   ALABAMA STATE UNIVERSITY,
 9        Defendant.
10
11
12
            * * * * * * * * * * * *
13
14          DEPOSITION OF VICKY ARRINGTON, taken pursuant
15   to stipulation and agreement before Julie A. Duncan,
16   Certified Court Reporter and Commissioner for the
17   State of Alabama at Large, at the Law Offices of
18   Anderson Nelms and Associates, L.L.C., 847 South
19   McDonough Street, Suite 100, Montgomery, Alabama, on
20   Wednesday, November 14, 2007, commencing at
21   approximately 8:45 a.m.
22
23          * * * * * * * * * * * *
```

Page 2

```
 1              APPEARANCES
 2   ON BEHALF OF THE PLAINTIFF:
 3   Mr. Andy Nelms
     ANDERSON NELMS and ASSOCIATES
 4   Attorneys at Law
     847 South McDonough Street
 5   Suite 100
     Montgomery, Alabama 36104
 6
     ON BEHALF OF THE DEFENDANT:
 7
     Ms. Ramadanah M. Salaam-Jones
 8   Ms. LaTasha A. Meadows
     THOMAS, MEANS, GILLIS & SEAY, P.C.
 9   Attorneys at Law
     3121 Zelda Court
10   Post Office Box 5058
     Montgomery, Alabama 36103-5058
11
     ALSO PRESENT:
12
     Ms. Beverly Rudolph
13
14
15
            * * * * * * * * * * * *
16
17            EXAMINATION INDEX
18
     VICKY ARRINGTON
19
        BY MS. JONES . . . . . . . . . . . . .  5
20
21
            * * * * * * * * * * * *
22
23
```

Page 3

```
 1              EXHIBIT INDEX
 2                           MAR
     DEFENDANT'S EXHIBITS
 3
 4   1  Position Available, Alabama State      20
        University, Director of Police and Campus
        Security
 5
 6   2  Screening Applicants/Inquiries for Vacant  25
        Positions
 7   3  Position Available, Alabama State      30
        University, Director of Police and Campus
 8      Security (Search Re-Opened)
 9   4  Memorandum to President Joe A. Lee from    31
        Olan L. Wesley, June 27, 2005,
10      Recommendation for Appointment of Director
        of Police and Security
11
12   5  Memorandum to Dr. Leon Frazier from Olan   40
        Wesley, Date: July 18, 2005, Re: Director
13      of Police and Security

14   6  ASU, Screening Applicants/Inquiries for    42
        Vacant Positions
15   7  Memorandum to Dr. Leon Frazier from Olan   52
        Wesley, Date: July 18, 2006, In Re:
16      Notification to Applicants (Director
        of Police and Campus Security)
17
     8  ASU, Job Description, Director of Police   59
18      and Campus Security
19   9  Tally Sheet, Director of Police and Campus  65
        Security
20
     10  Excerpt, Employee Handbook            71
21
     11  June 26, 2006 Letter to Ms. Vicky Arrington  75
22       from Beverly A. Rudolph
23
```

Page 4

```
 1              STIPULATION
 2       It is hereby stipulated and agreed by and
 3   between counsel representing the parties that the
 4   deposition of VICKY ARRINGTON is taken pursuant to the
 5   Federal Rules of Civil Procedure and that said
 6   deposition may be taken before Julie A. Duncan, Court
 7   Reporter and Commissioner for the State of Alabama at
 8   Large, without the formality of a commission, that
 9   objections to questions other than objections as to
10   the form of the question need not be made at this time
11   but may be reserved for a ruling at such time as the
12   said deposition may be offered in evidence or used for
13   any other purpose by either party provided for by the
14   Statute.
15       It is further stipulated and agreed by and
16   between counsel representing the parties in this case
17   that the filing of said deposition is hereby waived
18   and may be introduced at the trial of this case or
19   used in any other manner by either party hereto
20   provided for by the Statute regardless of the waiving
21   of the filing of the same.
22       It is further stipulated and agreed by and
23   between the parties hereto and the witness that the
```

Page 5

1  signature of the witness to this deposition is hereby
2  waived.
3
4  * * * * * * * * * * * *
5
6        VICKY ARRINGTON
7    The witness, after having first been duly sworn
8  to speak the truth, the whole truth and nothing but
9  the truth testified as follows:
10        EXAMINATION
11  BY MS. JONES:
12  Q.  Ms. Arrington, I think you -- you know me,
13      correct?  You know who I am?
14  A.  Yes, I'm familiar with you.
15  Q.  Thank you.  I'm Ramadanah Jones, and this is
16      LaTasha Meadows.  And we represent Alabama
17      State University defending the lawsuit that
18      you filed against the University.
19         Have you ever sat for a deposition
20      before?
21  A.  Yes.
22  Q.  Okay.  So you know, pretty much, I've got to
23      ask you a lot of questions.  And because

Page 6

1    you're the plaintiff in this lawsuit, some of
2    it is going to cover some of your personal
3    history and personal background.  And if you
4    don't understand my questions, you know, just
5    let me know.  I'll try to clarify them.  And
6    if you need a break, let me know.  We'll, you
7    know, stop for you.
8         If you could, give me your full name.
9  A.  Vicky, V-I-C-K-Y, B.
10  Q.  What does the B stand for?
11  A.  Bell.
12  Q.  Bell.
13  A.  Last name Arrington.
14  Q.  Okay.  And Bell is your maiden name?
15  A.  Yes.
16  Q.  Did you have a -- go by a middle name before
17      you married?
18  A.  Yes.
19  Q.  What is that?
20  A.  Lynn, L-Y-N-N.
21  Q.  Okay.  And what is your date of birth?
22  A.  10/30/1966.
23  Q.  Were you born here in Montgomery?

Page 7

1  A.  No.
2  Q.  Where were you born?
3  A.  Nashville, Tennessee.
4  Q.  Were you raised in Nashville?
5  A.  No.
6  Q.  Where were you -- where did you go to high
7      school?
8  A.  Tuskegee.
9  Q.  In Tuskegee?
10  A.  Yes.
11  Q.  Are you married?
12  A.  Yes.
13  Q.  What's your husband's name?
14  A.  Shedrick, S-H-E-D-R-I-C-K.
15  Q.  And his last name is Arrington?
16  A.  Yes.
17  Q.  Where is he employed?
18  A.  Sabel -- not Sabel.  I'm sorry.
19      Rheem Manufacturing.
20  Q.  Do y'all have any children?
21  A.  No.
22  Q.  What's your current address?
23  A.  1141 Freemont Drive.

Page 8

1  Q.  Is that here in Montgomery?
2  A.  Yes.
3  Q.  Okay.  And how long have you lived there?
4  A.  Since 1996.
5  Q.  Now, starting with high school -- well, where
6      did you go to high school?  You said it was in
7      Tuskegee.
8  A.  Tuskegee Institute High School.
9  Q.  What year did you graduate?
10  A.  1985.
11  Q.  Did you go on to college from there?
12  A.  No.  I went to college approximately two years
13      later.
14  Q.  Were you working in those two years?
15  A.  Yes.
16  Q.  Where were you working?
17  A.  In Atlanta.
18  Q.  Do you know the name of the place?
19  A.  I've worked several jobs in Atlanta.  I think
20      it was at Wal-Mart at one time.  And then it
21      was a restaurant, but I can't remember the
22      name of it.
23  Q.  Okay.  And that was approximately from '85 to

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 22 of 63

Deposition of Vicky Arrington    ARRINGTON vs. ASU    November 14, 2007

Page 9

1    '87?
2    A.  Yes.
3    Q.  Okay.  And in 1987, you started college?
4    A.  Yes.
5    Q.  And where did you attend college?
6    A.  ASU.
7    Q.  What was your major?
8    A.  Criminal justice.
9    Q.  What year did you graduate?
10   A.  1991.
11   Q.  Did you go on to do any graduate work?
12   A.  In between time, I did.
13   Q.  You have done some?
14   A.  Yes.
15   Q.  Where did you do it?
16   A.  At ASU.
17   Q.  At ASU.  Have you obtained a master's?
18   A.  I'm currently in grad school now.
19   Q.  Enrolled in grad school?
20   A.  Yes.
21   Q.  And that's at ASU?
22   A.  Yes.
23   Q.  In what course of study?

Page 10

1    A.  Counseling.
2    Q.  Counseling.  Do you have a projected date of
3        graduation?
4    A.  I have another full semester of classes, then
5        I have an internship and practicum.
6    Q.  Okay.  So we're looking at two -- two years, a
7        year?
8    A.  It's hard to say, because I need to -- I've
9        got a test that I need to take.
10   Q.  Okay.  I'm not trying to tie you down, just
11       trying to see how far along you were in the
12       program.  When did you start the program?
13   A.  I started in 2003.
14   Q.  When did you become involved in law
15       enforcement?
16   A.  1992.
17   Q.  How did you begin your career in law
18       enforcement?
19   A.  I was an ASU police officer.
20   Q.  Did you go to any academy?
21   A.  Yes.
22   Q.  What academy did you attend?
23   A.  Montgomery.

Page 11

1    Q.  And how long did the academy last?
2    A.  At that time, I think it was seven weeks.
3    Q.  Was that in 1992 or --
4    A.  It was in 1992.
5    Q.  1992.  And you graduated from the academy?
6    A.  Yes.
7    Q.  Are you postcertified?
8    A.  Yes.
9    Q.  And the postcertification -- did you receive
10       that at the academy or did you have to go to
11       Selma?
12   A.  Postcertification, I'm not understanding what
13       you're asking.
14   Q.  The law enforcement postcertification, did you
15       obtain that at the City of Montgomery Academy
16       or did you go somewhere else to receive that?
17   A.  I graduated from the MPD Academy, but
18       postcertification comes from the State of
19       Alabama, if that's what you're asking.
20   Q.  That's what I'm asking.  And when you obtained
21       the postcertification from the State of
22       Alabama, did you go to that training facility
23       in Selma --

Page 12

1    A.  No.
2    Q.  -- that they have?
3    A.  MPD has their own academy.
4    Q.  But that was still all done through the MPD
5        Academy, including the postcertification?
6    A.  Yes.
7            (Brief interruption in proceedings.)
8    Q.  (Ms. Jones continuing) Okay.  I think we left
9        off with postcertification.  Did you receive
10       any other law enforcement training?
11   A.  Yes.
12   Q.  Where?
13   A.  I went back through the academy for maximum
14       standards through MPD in 1995.  And that was
15       twenty weeks.
16   Q.  Any other law enforcement training?
17   A.  We had certification every year.  Training,
18       I -- I mean, I would have to bring you my file
19       on training.
20   Q.  But you do have certification every year?
21   A.  Uh-huh (positive response).
22   Q.  Is that through the MPD Academy?
23   A.  It's whoever you're going to -- where you're

Page 13

1 sent to get training. It doesn't necessarily
2 have to be MPD.
3 Q. Are you getting certified on a variety of
4 different topics or is it the same course
5 every year?
6 A. It really depends on what they send you to.
7 You have to have mandatory twelve years -- I
8 mean, correction, twelve hours each year, but
9 it exceeds that.
10 And then as far as supervisory training,
11 I've done three point -- and a half years on
12 the administrative level in training.
13 Q. Okay. In 1992 when you started as a police
14 officer at ASU, how long did you stay in that
15 position? _____
16 A. From 1992, I want to say, to 1995.
17 Q. And did you change positions within the
18 department or did you go someplace else in
19 1995?
20 A. I took a job with the City of Montgomery as a
21 park ranger.
22 Q. What made you decide to take that position?
23 A. Well, it was an advancement in pay.

Page 14

1 Q. How long did you stay in that position, the
2 park ranger position?
3 A. That position was, I want to say, abolished by
4 the mayor probably a couple of months after I
5 got there, the mayor of Montgomery, which
6 was -- at that time, I believe it was
7 Mr. Folmar.
8 Q. And where did you go after that job was
9 abolished?
10 A. They merged us into a division with the City
11 of Montgomery, and I was a park police
12 officer.
13 Q. How long did you stay in the position of park
14 police officer?
15 A. Well, once I got there, they sent me to the
16 academy, police academy. And that's where I
17 got the maximum certification. And when I
18 graduated the academy, they didn't assign me
19 back to where they said they were going to
20 assign me to. They assigned me to patrol.
21 Q. Did you not want to be on patrol?
22 A. Well, I didn't -- I mean, I've got to do what
23 I'm told.

Page 15

1 Q. So you did go back to the City of Montgomery
2 Police Department?
3 A. Yes.
4 Q. On patrol?
5 A. When I -- when I came to the City of
6 Montgomery as a park ranger, we were told that
7 we're going to send you to the academy to get
8 you more training, and then from there, we're
9 going to move you to park police bureau. But
10 for some reason they decided they wanted me in
11 patrol, because I was a good officer.
12 Q. And how long did you stay on patrol?
13 A. I stayed on patrol for about two years.
14 MR. NELMS: Just to clarify, there
15 was a period of time when the
16 recreation police or park police
17 were part of the department of
18 recreation. But then the city
19 merged them where they were part
20 of MPD, and you were actually a
21 MPD officer; is that right?
22 THE WITNESS: No. It started off --
23 the position was actually park

Page 16

1 ranger. It had nothing to do
2 with the City of Montgomery. It
3 just -- it was assigned to parks
4 and recreation.
5 MR. NELMS: Right.
6 THE WITNESS: And then when the
7 mayor decided that he no longer
8 wanted the park -- the park
9 rangers, the police department
10 merged the rangers in with park
11 police bureau at the City of
12 Montgomery.
13 Q. Okay. And you stayed on patrol for a couple
14 of years?
15 A. Yes.
16 Q. And then where did you go from there?
17 A. I became a police detective.
18 Q. And that's also with the City of Montgomery?
19 A. Yes.
20 Q. How long did you stay in the position of
21 police detective?
22 A. From -- I need to go back, because before I
23 became a detective, I -- the mayor saw me and

Page 17

1   the job that I did when I was in the academy.
2   He promoted me first out of my class to police
3   corporal.
4   Q.  Okay.
5   A.  As soon as I graduated the academy, it was
6   announced at the graduation that he was going
7   to promote me to corporal out of a graduating
8   police academy class first.
9   Q.  But that all tied into while you were being --
10  you were on patrol as a police corporal?
11  A.  I was on patrol as a police officer.  And then
12  not long after I became a -- was assigned to
13  patrol, I was promoted to police corporal.
14  Q.  Did your duties change?
15  A.  Yes.
16  Q.  What were you doing as a police corporal?
17  A.  Well, basically, you're a training officer and
18  had the responsibility of the issuing of
19  equipment.  And at times you were assigned to,
20  I guess, direct the shift.
21  Q.  Okay.  And from police corporal, you went to
22  police detective?
23  A.  I was transferred from patrol to the detective

Page 18

1   division, and I was a juvenile detective.
2   Q.  And what were your duties as a juvenile
3   detective?
4   A.  Investigations, felonies.
5   Q.  How long did you stay in that position?
6   A.  I stayed in that position until 2000 and -- I
7   want to say 2001.
8   Q.  And then where did you go?
9   A.  I -- after that -- I came back to Alabama
10  State in 2002.
11  Q.  2002?
12  A.  Uh-huh (positive response).
13  Q.  And what position did you come into at
14  Alabama State?
15  A.  Police investigator.
16  Q.  And what were your duties as police
17  investigator at ASU?
18  A.  Felony investigations.
19  Q.  And how long did you stay in that position?
20  A.  Until February 2003.
21  Q.  And what position did you assume in February
22  2003?
23  A.  Interim police chief.

Page 19

1   Q.  What were your duties as the interim police
2   chief?
3   A.  Responsible for the operation of the police
4   department.
5   Q.  And how long did you stay in that position?
6   A.  Until July the 1st, 2006.
7   Q.  How were you appointed as interim?  Did you
8   have to apply for the position?
9   A.  It was an appointment based on experience and
10  expertise.
11  Q.  And who made this appointment?
12  A.  It was Dr. Marian Smith and Dr. Leon Frazier.
13  Q.  Dr. Leon Frazier, he was the VP of
14  administrative services, correct?
15  A.  Yes.
16  Q.  Who was Dr. Marian Smith?
17  A.  Assistant VP.
18  Q.  Okay.
19  A.  Interim VP.
20  Q.  Who did you report to?  Who was your
21  supervisor?
22  A.  Immediate supervisor was Dr. Frazier, but the
23  police department was assigned to

Page 20

1   Dr. Marian Smith as the interim assistant VP.
2   Q.  When did you become aware that the University
3   would be making the police chief position a
4   permanent -- seeking to fill -- have someone
5   permanent in that slot?
6   A.  When Chief Moss got back to the United States
7   from Baghdad and I guess posted his papers to
8   retire.
9   Q.  So let's back back.  Why was there a need for
10  the interim position?
11  A.  The chief of police at that time, which was
12  Chief Ceasar Moss, was deployed to Baghdad.
13  Q.  And when he got back, he decided to retire,
14  correct?
15  A.  Yes.
16          (Defendant's Exhibit Number 1 marked
17          for identification.)
18  Q.  Let me show you -- let me have this marked as
19  Defendant's Exhibit 1.
20          Have you seen this posting before?
21  A.  To be honest with you, no, I did not.
22  Q.  How did you learn that the University had a
23  vacancy for director of police and campus

Page 21

1  security?
2  A.  Chief Moss told me he was going to retire, and
3      I went over to personnel and got the
4      application and filled out the paperwork.
5  Q.  So you never saw the posting, correct?
6  A.  No, I didn't see this posted.
7  Q.  So you didn't know what qualifications they
8      were looking for at the time you applied?
9  A.  After I applied, I looked at the -- I went on
10     the Internet and looked at it.
11 Q.  So you did see it after you applied?
12 A.  Yes.
13 Q.  How long after you applied did you view the
14     posting?
15 A.  It wasn't very long, but I can't really give
16     you an estimate on it.  I guess --
17 Q.  Was it before you were interviewed by the
18     screening committee; do you know?
19 A.  I would say yes.
20 Q.  If you can look on the section where the
21     qualifications are listed.  It requires a
22     bachelor's degree in criminal justice, public
23     or business administration, or closely-related

Page 22

1  field.
2      At the time you applied, did you meet
3      that qualification?
4  A.  Yes.  I have a bachelor's degree in criminal
5      justice.
6      (Brief interruption in proceedings.)
7      (Off-the-record discussion.)
8  Q.  (Ms. Jones continuing) Did you meet that
9      qualification -- did you have a bachelor's
10     degree in criminal justice, public or business
11     administration, or a close-related field?
12 A.  Yes, ma'am.
13 Q.  Then it says, master's degree preferred in one
14     of the preceding areas.
15     Did you have a master's degree in one of
16     those areas at the time you applied?
17 A.  No, I didn't have a master's degree in that
18     area.  But this -- the way I read it is going
19     to be totally different from what I'm looking
20     at now.
21 Q.  Uh-huh (positive response).
22 A.  I would have to go back and look through my
23     paperwork to see if it -- if it's exactly

Page 23

1  written this way, because I don't recall
2  reading it that way.  It said -- the one that
3  I read said master's degree preferred.
4  Q.  This one says preferred.
5  A.  It was attached to the statement of bachelor's
6      degree.  And then it went on to say something
7      about preferred.  I don't remember reading it
8      the way that it's written now --
9  Q.  Okay.
10 A.  -- is what I am saying.
11 Q.  Okay.  But on this one it says master's degree
12     preferred in one of the preceding areas.  And
13     you have stated that you didn't have a
14     master's degree?
15 A.  No, I didn't.
16 Q.  Then extensive knowledge of modern police
17     methods, procedures and administration;
18     thorough knowledge of business management
19     practice and principles; ability to exercise
20     effective administration and technical
21     supervision over sworn and non-sworn security
22     personnel engaged in law enforcement
23     activities, and the ability to exercise

Page 24

1  judgment and discretion in applying and
2  interpreting departmental policies and
3  procedures.
4      Do you think you were qualified to meet
5      those requirements?
6  A.  I would -- I didn't have a master's degree at
7      that particular time, but I had enough hours
8      to -- enough hours and credits in training to
9      equal to a master's degree.
10     Now, as far as all of the other stuff is
11     concerned, I had -- I was the interim police
12     chief for about three and a half years.  So,
13     yes, I meet all of the qualifications that you
14     followed after that.
15 Q.  Through your --
16 A.  Training.
17 Q.  Through your position from interim chief and
18     your training, you felt like you met these
19     qualifications?
20 A.  And I want to think before that.  Because as
21     an investigator and a police corporal at the
22     City of Montgomery, yes, I basically did some
23     of these things that you've got listed.

Page 25

1  Q.  Okay.  Now, you testified that you did submit
2      an application for this position?
3  A.  Yes.
4  Q.  Did you interview for this position?
5  A.  Yes.
6  Q.  Let me show you -- do you remember who you
7      were interviewed by?
8  A.  I want to say it was Theotis Horn and
9      Ms. Ann Smith.  And it was one other person.
10     I don't recall their name.
11          (Defendant's Exhibit Number 2 marked
12           for identification.)
13  Q.  Okay.  Let me show you what I want to have
14      marked as Defendant's Exhibit 2.
15          I would represent to you that that is the
16      report from the screening committee from that
17      job posting.  If you could, look on that first
18      page.  Who did they identify as the successful
19      applicant?
20  A.  Are you referring to the finalist?
21  Q.  Yes, ma'am.  There's also a notation at the
22      bottom, successful applicant on the bottom of
23      the page.

Page 26

1  A.  Donnie, D-O-N-N-I-E, Nunley.
2          THE WITNESS:  Can you excuse me for
3          a minute?
4          MS. JONES:  Sure.
5          THE WITNESS:  Can I talk to you for
6          a second?
7          MS. JONES:  Sure.
8          (Brief pause in proceedings.)
9  Q.  (Ms. Jones continuing) Okay.  If we go to the
10     second page, there's -- the search committee
11     members are listed.  Do you see that section?
12  A.  Yes.
13  Q.  And we have T.C. Horn.  And I think -- that's
14     the person you said interviewed you?
15  A.  Yes.
16  Q.  Was Larry Cobb also in on the interview, to
17     your knowledge?
18  A.  No, he wasn't.
19  Q.  He wasn't?
20  A.  No, he didn't interview me.
21  Q.  What about Antoinette Smith?  Was she there?
22  A.  She was there.
23  Q.  And Janice Franklin?  Was she there?

Page 27

1  A.  She was there.
2  Q.  She was there.  And then they have a
3      recommendation, parentheses, justification of
4      appointee.  Do you see that -- that box there?
5  A.  Over to the right-hand side?
6  Q.  Yes.
7  A.  Yes.
8  Q.  What did they list as the justification for
9      their appointment?
10  A.  Highest probability for increased overall
11      effectiveness.
12  Q.  Did you know Nunley had been selected as a
13      finalist -- as the finalist after this search
14      was done?
15  A.  I became made aware sometime thereafter.
16  Q.  Did you speak to anyone as to why he may have
17      been selected?  Did you talk to anyone about
18      that?
19  A.  No.
20  Q.  How did you become aware that he had been
21      selected as the finalist?
22  A.  I want to say that Dr. Frazier called me over
23      to advise me that Mr. Nunley was selected.

Page 28

1  Q.  And you didn't offer any response to him?
2  A.  No, I sure didn't.
3  Q.  Now, at some point did you become aware that
4      the position was reopened?
5  A.  Yes.
6  Q.  How did you become aware of that?
7  A.  I got a call from Mr. Joe Pace one day when I
8      was at work stating to me that he wanted me to
9      come over for an interview.
10  Q.  And did Mr. Joe Pace identify himself?
11  A.  He did.  He said, I'm Mr. Joe Pace, and that
12      I'm in charge of the screening committee for
13      director of police and police security.  And I
14      said, you're in charge of a screening
15      committee?  And he said yes.  I said, when did
16      they reopen the position, because nobody sent
17      me a letter notifying me.  And then he told me
18      that I needed to talk with Dr. Frazier.
19  Q.  And did you speak with Dr. Frazier?
20  A.  I did.
21  Q.  And what did Dr. Frazier say to you?
22  A.  I explained everything that Mr. Pace said to
23      me, and he told me he would get back in touch

Page 29

1    with me.
2    Q.  Did Dr. Frazier ever get back in touch?
3    A.  No.
4    Q.  So back to Mr. Pace.  You told him that you
5        weren't aware that it had been reopened?
6    A.  Yes.
7    Q.  So did you ever go down to the interview?
8    A.  He told -- no, he didn't tell me to come down
9        to the interview.  He told me to talk with
10       Dr. Frazier.  And that's exactly what I did.
11       And Dr. Frazier said he would get back in
12       contact with me.
13   Q.  But when Mr. Pace originally called you, he
14       said that he was contacting you regarding a
15       interview, didn't he?
16   A.  Yes.
17   Q.  Okay.
18   A.  But when I explained to him that I was not
19       aware that an interview or the position for
20       director of police and security was reopened,
21       he said for me to get in touch with
22       Dr. Frazier.  And that's what I did.
23   Q.  Let's do this one as Defendant's 3.

Page 30

1            (Defendant's Exhibit Number 3 marked
2             for identification.)
3    Q.  Have you ever seen this posting?
4    A.  No.
5    Q.  Okay.  After Mr. Pace contacted you, did you
6        go to the website or did you contact personnel
7        to verify that it had in fact been reopened?
8    A.  No.  I was waiting on Dr. Frazier to get back
9        in contact with me.
10   Q.  Okay.  Now, if you could, look at what I had
11       as Exhibit 1, that first job posting.  Can you
12       compare one with the one that -- the first one
13       with the one that I just gave you, as far as
14       the qualifications are concerned?  Do they
15       appear to be the same?
16   A.  They appear to be.
17   Q.  Okay.  Do you know why the search was reopened
18       for the position?
19   A.  I wasn't officially notified of anything, but
20       I'm with the understanding that Mr. Nunley
21       didn't meet the qualification -- the candidate
22       selected didn't meet the qualifications or he
23       lied about his credentials.

Page 31

1    Q.  Is that the only explanation that you -- well,
2        is that the only thing that you had ever heard
3        about it being reopened?
4    A.  That's the only thing.
5    Q.  Okay.
6            (Defendant's Exhibit Number 4 marked
7             for identification.)
8    Q.  Let me show you what I will have marked as
9        Exhibit 4.
10       Have you ever seen this memo prior to
11       today?
12   A.  I have never seen this right -- this memo.
13   Q.  Okay.  Can you take the time and review the
14       memo and also the attachments Mr. Wesley has
15       included for you?
16   A.  I did not -- I have not seen this one, but I
17       have seen this and this (indicating).
18   Q.  From Dr. Frazier?
19   A.  And this right here I have not seen.  I've
20       seen this right here (indicating).
21   Q.  You've seen what Dr. -- Dr. Frazier's memo; is
22       that what you're saying?
23   A.  To, from -- portions of it I have seen.  This

Page 32

1    right here was given to me at a request
2    for -- it had some stipulations on it about
3    who -- once I was removed back to the position
4    of investigator who I should and shouldn't be,
5    I guess, supervised by.  And this was given to
6    me, because I think the new chief was not
7    aware of this.  So I have seen this page right
8    here where it says, President Joe A. Lee,
9    June 15, '05.  I have not seen the page after
10   that.
11   Q.  Okay.
12   A.  And I have seen page -- the one --
13   Q.  With the tallies?
14   A.  The memo -- yes, I have seen that.
15   Q.  Okay.
16           MR. NELMS:  I wouldn't dare tell you
17       what to do, but I might suggest
18       that we take that exhibit and
19       hand write numbers on every page
20       so we'll know in the future
21       which pages she's actually
22       referring to, because -- you
23       know what I mean?

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 28 of 63

Deposition of Vicky Arrington          ARRINGTON vs. ASU                    November 14, 2007

Page 33

1      MS. JONES: Suggestion taken.
2      MR. NELMS: Because I see Julie over
3          there going, this page. And I'm
4          like, what page is this page?
5    A.  That's why I was calling out the dates to give
6          an indication of what I was referring to.
7    Q.  Okay. So if we go -- and I've numbered them
8          on my page. And I will number it on this
9          exhibit. The first page that we see, you say
10         you've never seen this memo?
11   A.  I've never seen that. What page is that?
12   Q.  The one to President Lee from Olan Wesley
13         dated June 27, 2005.
14   A.  I've never seen that.
15   Q.  You've never seen that. So that would mean
16         you've never seen page 2 of that memo?
17   A.  I've never seen it.
18   Q.  Then we get to a new memo, but it's part of
19         the attachments from Olan Wesley's. I'm going
20         to mark that as page 3.
21         MR. NELMS: Go ahead and put 3 down
22             there so --
23   Q.  Have you seen that -- you've seen that one?

Page 34

1    A.  Yes.
2    Q.  Yes. And if we turn the page, we're going to
3          mark that as page 4. You've seen that one?
4    A.  Yes.
5    Q.  And then the next page we're going to mark as
6          page 5. You've seen that one?
7    A.  No.
8    Q.  No. And the next page we're going to mark as
9          page 6. You've seen --
10   A.  Yes.
11   Q.  -- that one?
12   A.  Yes.
13   Q.  And the last page we'll mark as 7. You've
14         seen that one?
15   A.  Yes.
16   Q.  Okay. And if we can go back to page 1. And
17         you've had a chance to look at what Mr. Wesley
18         wrote?
19   A.  I glanced through it.
20   Q.  Do you know what Mr. Wesley is requesting in
21         this memorandum?
22   A.  Give me a minute to read it thoroughly.
23   Q.  Sure. What is he requesting or recommending?

Page 35

1    A.  That they reopen for ten days, and a new
2          screening committee be appointed by the vice
3          president for administrative services.
4    Q.  And you were already a part of the
5          University's police department at this time,
6          were you not? June 27th, 2005, were you a
7          member of the University's --
8    A.  Yes.
9    Q.  -- police department?
10   A.  Yes.
11   Q.  And Mr. Merritt, was he also a member of the
12         University's police department?
13   A.  Yes.
14   Q.  And you've read -- you said you had seen
15         Dr. Frazier's memorandum, page 3?
16   A.  Yes.
17   Q.  Okay. And in that he talks about internal
18         strife and dissension and anti-managerial
19         orientations of the police department. You've
20         seen that before, correct?
21   A.  Excuse me.
22   Q.  Yes.
23         (Off-the-record discussion.)

Page 36

1    A.  I was made aware of it in 2000 -- aware --
2          when I say aware, I had some questions in
3          regards to supervision, and more of a question
4          really from Chief Young. And I knew that such
5          existed, so I requested a copy of the
6          paperwork outlining the -- I guess the
7          criteria for myself. And that's when I was
8          made aware of this memo in 2006.
9    Q.  Okay. And Mr. -- excuse me, Dr. Frazier's
10         comments regarding the police department at
11         that time -- do you think that any of those
12         criticisms or assessments were directed
13         towards you and Mr. Merritt?
14   A.  No.
15   Q.  You don't?
16   A.  No.
17   Q.  Although he used that as a justification for
18         picking an outside -- someone outside of the
19         department?
20   A.  I can't really speak for why he wrote that,
21         because I saw it after the fact. And I never
22         had a chance to question him. He was gone.
23   Q.  Okay. But you would agree that Mr. Wesley

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 29 of 63

Deposition of Vicky Arrington                    ARRINGTON vs. ASU                    November 14, 2007

Page 37

1    thought this was unnecessary?
2    A.  Thought what was unnecessary?
3    Q.  The criticism of the University police
4        department?
5    A.  Like I said, I never seen it. I saw it -- I
6        see what you're saying now, but I was not
7        aware that -- Dr. Frazier's statement about
8        strife and all of that, that had nothing to do
9        with me and Merritt, Captain Merritt, because
10       we didn't have strife.
11   Q.  Okay. But nonetheless, he did state that in
12       his memo?
13   A.  It would be difficult for me to respond to
14       what he's saying, because I don't know what he
15       was feeling when he wrote that.
16   Q.  But he did state it in his memo?
17   A.  Dr. Frazier did?
18   Q.  Yes, about the internal strife.
19   A.  I didn't even -- where --
20   Q.  It's on page 3. In the section where it says
21       discussion. If you get down to the last
22       sentence.
23   A.  Okay. Now, what is your question about that?

Page 38

1    Q.  Dr. Frazier did make comments regarding
2        internal strife in the University's police
3        department?
4    A.  Yes.
5    Q.  And he used that as a justification for
6        selecting someone outside of the department,
7        did he not?
8            THE WITNESS: Is that something for
9            me to --
10           MR. NELMS: The document speaks for
11           itself, I mean, you know.
12   Q.  That's fine.
13   A.  I don't need to be trying to explain why
14       Dr. Frazier wrote what he wrote.
15   Q.  Well, I'm not asking you to explain. But
16       that's what he said, a case is made for an
17       appointment from without the department. That
18       is on that document, correct?
19   A.  Yeah, that's what he's saying.
20   Q.  Yes. And if we look on the first page, when
21       we're dealing with Mr. Wesley's memo to
22       President Lee, in that second paragraph he
23       says it's his opinion that that memo left the

Page 39

1        University's police department at risk for
2        unwarranted and unnecessary criticism?
3    A.  Yes.
4    Q.  Correct?
5    A.  That's Mr. Wesley's statement.
6    Q.  Yes. When he asked that -- when he
7        recommended that the position be reopened,
8        correct?
9    A.  I'm sorry. I missed your question, because I
10       was reading the statement. What did you say?
11   Q.  Okay. He made that statement about that
12       criticism being unwarranted and unnecessary as
13       a part of his recommendation that the position
14       be reopened, that the search be reopened?
15   A.  You're saying Mr. Wesley did?
16   Q.  Yes.
17   A.  If that's what he's trying to say. I don't
18       really know what he's trying to say in his
19       letter. I see what he's written.
20   Q.  Okay.
21   A.  And I can't -- it's hard for me to try to say
22       what somebody else is interpreting.
23   Q.  Okay. And I wrote on that. I underlined

Page 40

1        that. I can get a fresh copy.
2            MS. JONES: We'll probably
3            substitute this one.
4            (Defendant's Exhibit Number 5 marked
5            for identification.)
6    Q.  And I've got another memo you probably haven't
7        seen before.
8            MS. JONES: We'll mark this as 5.
9    A.  No, I've never seen that.
10   Q.  So you've never seen this one, correct?
11   A.  No.
12   Q.  And this is from Mr. Wesley, correct?
13   A.  Yes.
14   Q.  To Dr. Frazier, correct?
15   A.  Yes.
16   Q.  And if you can, just review it for -- review
17       it since you've never seen it before.
18   A.  Yes.
19   Q.  Okay. And Mr. Wesley, what is he informing
20       Dr. Frazier in this memo?
21   A.  That Dr. Lee has approved the re-opening of
22       the position.
23           (Off-the-record discussion.)

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 30 of 63

Deposition of Vicky Arrington                    ARRINGTON vs. ASU                              November 14, 2007

Page 41

1      MR. NELMS: You already told her
2    that. That's fine. I mean,
3        I -- off-the-record, please.
4      (Off-the-record discussion.)
5  Q. (Ms. Jones continuing) And if you want to have
6    this on or off. I'm not asking you to
7    explain --
8  A.  I can't --
9  Q.  -- or get into their head. All I'm asking you
10    is to verify with me that the document says
11    what it says.
12  A.  Yes.
13  Q.  And you know who Mr. Wesley is, correct?
14  A.  Yes.
15  Q.  Who is he to you?
16  A.  At the time, he was the director of
17    personnel.
18  Q.  At the time that the search for the director
19    of police and campus security was going on?
20  A.  In 2005 he was the director. Yes.
21  Q.  And did you ever have any conversations with
22    Mr. Wesley regarding the selection of a police
23    chief at ASU?

Page 42

1  A.  Not at the time that all of this was going on
2    or whatever. But after he was removed from
3    that position, I don't know -- for whatever
4    reason, I was just asking a general question
5    about Mr. Nunley, why was he not selected.
6    And he told me that he didn't have the
7    credentials. That's the reason why he didn't
8    get the chief of police job. He lied on his
9    credentials.
10  Q.  And that's the only conversation that you had
11    with him about --
12  A.  That's the only --
13  Q.  -- why Mr. Nunley didn't get it?
14  A.  Yes.
15      (Defendant's Exhibit Number 6 marked
16        for identification.)
17  Q.  Okay. Let me give you what I'm going to have
18    marked as Defendant's Exhibit 6.
19      Have you seen this before?
20  A.  No, ma'am, I have not.
21  Q.  Okay. I would represent to you this is the
22    screening report from the reopened search.
23    Take the time to review it along with the

Page 43

1    attachments. This may be another one that we
2    need to mark 1, 2, and 3.
3        Okay. On that first page, when we look
4    at first screening in alphabetical order, you
5    are listed as being one of those candidates,
6    correct?
7  A.  Yes.
8  Q.  And on the second screening, order of
9    preference, how do you fall in the order of
10    preference?
11  A.  Second.
12  Q.  And there's a star by your name. What does
13    the committee note with that star?
14  A.  The committee noted that I declined to be
15    interviewed, and that is not true.
16      MR. NELMS: Don't argue with her.
17      Just answer her question.
18  Q.  Now, we also have a Mr. Mark Mathies. He has
19    two stars by his name. And what does the
20    committee note with those two stars?
21  A.  The phone number not in service, disconnected,
22    customer not available message.
23  Q.  That he could not be reached for an interview;

Page 44

1    is that correct?
2  A.  Yes.
3  Q.  And by Mr. Andy Dowell, there are three
4    stars?
5  A.  Yes.
6  Q.  What does the committee note?
7  A.  That Andy Dowell was unable to appear for
8    interview.
9  Q.  Now, on the finalist column, there are three
10    names listed. Are you one of those finalists?
11  A.  No.
12  Q.  Now, you mentioned that the statement that
13    Ms. Vicky Arrington declined to be interviewed
14    was incorrect.
15      Why would you say that's an incorrect
16    statement?
17  A.  I never declined to interview. I was told to
18    talk to Dr. Leon Frazier. Dr. Leon Frazier
19    advised me that he was going to get back in
20    contact with me. And he never did.
21  Q.  So you never told Mr. Pace or anybody else,
22    I'm not interviewing because I don't know
23    what's going on or --

Page 45

1  A.  I specifically told him that I intend to be
2      interviewed, and I want to be interviewed, but
3      I need to find out what's going on. I
4      specifically told him that.
5  Q.  You told him that you wanted to be
6      interviewed?
7  A.  Yes.
8  Q.  And he told you that you could not be
9      interviewed?
10  A.  No, he didn't tell me that. He told me that I
11      needed to get with Dr. Frazier.
12  Q.  He didn't come -- he didn't tell you a time
13      and place to come meet him and the committee
14      to be interviewed?
15  A.  On the original conversation that I had with
16      Mr. Pace, he told me he was calling me for an
17      interview. And when he told me that he was
18      calling me for an interview and that he was --
19      he explained that he was on the committee for
20      director of police and -- I said, what do you
21      mean? I was not -- I was not aware that it
22      had been reopened.
23  Q.  And so from there, you talked to Dr. Frazier?

Page 46

1  A.  I did.
2  Q.  And he said that he would get back with you?
3  A.  He did.
4  Q.  How long did you wait for Dr. Frazier to get
5      back with you?
6  A.  I waited, waited. He never did.
7  Q.  You didn't talk to Mr. Wesley?
8  A.  No. Because I was told to talk to Dr. Frazier
9      by the person that was in charge of the
10      committee.
11  Q.  Okay. So you knew -- you did know that
12      Mr. Wesley was over personnel at that time?
13  A.  Yes.
14  Q.  You knew that?
15  A.  Yes.
16  Q.  And you didn't make any other attempts to
17      contact Mr. Pace?
18  A.  No, I was trying to follow the chain. I
19      talked to Mr. Pace. Mr. Pace said to see
20      Dr. Frazier. Dr. Frazier said he would get
21      back in contact with me. And I waited for him
22      to get back in contact with me and he never
23      did.

Page 47

1  Q.  But he told you to talk to Dr. -- I'm just
2      trying to get this straight. He told you to
3      talk to Dr. Frazier after you said you didn't
4      know anything about the position being
5      reopened?
6  A.  I told him I wasn't notified, and he told me
7      to talk to Dr. Frazier.
8  Q.  Now, when you say you weren't notified, how
9      did you expect to be notified?
10  A.  Well, the procedure that I'm familiar with is
11      anytime that we get a position that has been
12      opened and for some reason has to be reopened,
13      there's a letter that comes out.
14  Q.  Have you received one of these letters
15      personally from another job announcement that
16      had to be reopened?
17  A.  No.
18  Q.  Is it in the handbook; do you know? Are you
19      saying it's --
20  A.  I'm aware --
21  Q.  -- a policy in the handbook?
22  A.  I'm aware about the letter, because I asked
23      Captain Merritt, did you receive a letter?

Page 48

1  Q.  Uh-huh (positive response).
2  A.  And he said yes.
3  Q.  Captain Merritt said he received a letter
4      regarding what?
5  A.  That he got a letter saying that the position
6      was going to be reopened, and that was after
7      the fact.
8  Q.  When you say after the fact, after what fact?
9  A.  After I had talked to Dr. Frazier and he never
10      did get back in contact with me.
11  Q.  So Captain Merritt said that he received a
12      letter, and it stated that the position had
13      been reopened?
14  A.  Yes.
15  Q.  Did it tell him anything else?
16  A.  That's all he told me. I asked him did he
17      receive a letter of notification, and that was
18      after -- I didn't even know until I had talk
19      to Mr. Pace that it was being reopened,
20      because he called me to try to set something
21      up. And when I told him I was not notified,
22      that's when he told me to get with
23      Dr. Frazier.

Page 49

1        Now, after Dr. Frazier never got back in
2 contact with me, I said, well, let me see if
3 Captain Merritt ever got a letter. And that
4 was some time that had elapsed right before he
5 retired. I asked him. I said, did you get a
6 letter that the chief of police position was
7 being reopened? And he said, yeah, he did.
8 Q. Okay. Did he say he had gotten this before he
9    was interviewed or after they had selected
10    someone? Did he say when he got it?
11 A. I didn't ask any further questions. It was
12    right before he got ready to retire.
13 Q. Okay. And you said, to your knowledge, that's
14    the common practice of the University, to send
15    out a letter?
16 A. I found that out after the fact. I asked, do
17    you-all send letters out?
18 Q. Who did you ask?
19 A. I asked Dr. Frazier, don't a letter supposed
20    to go out?
21 Q. And Dr. Frazier, we've already stated, he's --
22    at that time, he was the vice president of
23    administrative services, correct?

Page 50

1 A. Yes.
2 Q. And you asked him wasn't a letter supposed to
3    go out?
4 A. Yes.
5 Q. And what did he say?
6 A. He said, let me get back with you.
7 Q. This was another time when he said, let me get
8    back with you?
9 A. Right before Merritt got ready to retire and
10    right before he left. When I found out from
11    Merritt, I asked him, did -- did you know that
12    the position was being reopened? That was
13    right before he got ready to retire. That was
14    after everything had happened. And he said,
15    yeah, I got a letter. So I said, let me go
16    back over here and ask Dr. Frazier. So I
17    asked Dr. Frazier about a letter, and -- let
18    me get back with you. I don't know what he
19    was doing, but I never -- he never got back
20    with me on that either.
21 Q. So the second time when you went to see him
22    about a letter, did you ask him about an
23    interview at that time?

Page 51

1 A. That was after everything had -- I didn't even
2    know a letter had existed. I just started
3    asking questions right before Merritt got
4    ready to retire, Captain Merritt did. I said,
5    did anybody notify you that the position was
6    being reopened? And he said, yes, I got a
7    letter, right before he got ready to retire.
8    So I went and asked Dr. Frazier, did a letter
9    go out about the reopening? That was after
10    the fact.
11 Q. Did he say where he got the letter from? Did
12    it come from Dr. Frazier?
13 A. I didn't ask any questions. I just wanted to
14    know did he get a letter.
15 Q. Did Dr. --
16 A. Did he know.
17        MR. NELMS: Just answer her
18        questions.
19 A. Did he know. I didn't ask anything else.
20        MR. NELMS: So the answer is no?
21 A. No.
22 Q. Did Dr. Frazier say that he sent out a letter
23    to anybody?

Page 52

1 A. No.
2 Q. Did he say that he was aware of anybody
3    receiving a letter? Did Dr. Frazier --
4 A. No.
5 Q. -- say he was aware?
6 A. No.
7        (Defendant's Exhibit Number 7 marked
8        for identification.)
9 Q. I'm going to have this marked as Defendant's
10    Exhibit 7.
11        Have you seen this memo before?
12 A. No.
13 Q. Can you take the time to review it, please.
14        Are you done?
15 A. Uh-huh (positive response).
16 Q. Okay. And this memo, it's from Olan Wesley,
17    correct?
18 A. Yes.
19 Q. To Dr. Leon Frazier, correct?
20 A. Yes.
21 Q. And he's stating he's responding to an inquiry
22    made by Dr. Frazier, correct?
23 A. Yes.

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 33 of 63

Deposition of Vicky Arrington          ARRINGTON vs. ASU          November 14, 2007

Page 53

1  Q.  And, again, I don't want you to try to explain
2      what Mr. Wesley may have been thinking, but I
3      just want you to verify some things with me.
4          Mr. Wesley lists the postings for
5      these -- for this job announcement from
6      February 10, '05 through March 9th, '05,
7      correct?
8  A.  Yes.
9  Q.  And you've seen that here today?
10  A.  Yes.
11  Q.  And then again on July 21st, 2005 through
12      August 4th, 2005?
13  A.  Yes.
14  Q.  And you've seen that here, correct?
15  A.  Yes.
16  Q.  And he makes a statement that after the second
17      posting, the first screening of all eligible
18      applicants was made and a selection was made
19      but the appointee declined the offer of
20      employment.
21          Did you know anything about that?
22  A.  You're talking about the statement that was
23      made by Mr. Frazier?

Page 54

1  Q.  About the appointee declining the offer of
2      employment.  Did you know somebody had
3      declined an offer of employment for the
4      position?
5  A.  No.
6  Q.  He also makes the statement that none of the
7      applicants were notified of the selection of
8      an applicant because a contract had not been
9      approved.  Does he make that statement?
10  A.  Yes.
11  Q.  And then he states that the position was not
12      reposted.  The screening committee completed a
13      second screen of all applicants who had a
14      completed application on file.
15          And do you see your name as one of the
16      applicants who had been screened for the
17      second posting -- for the second posting?
18  A.  Where do you want me to look?
19          MR. NELMS:  Now, all she can do is
20          comment on what she -- she says
21          she has not seen this memorandum
22          before.  So all she can do is
23          recite to you exactly what is

Page 55

1      stated in that memorandum.  So
2      the document really speaks for
3      itself.
4          I also note that it
5      references attached.  Are we --
6      do we have that attached?
7      MS. JONES:  I do not have the
8      attachments.
9      MR. NELMS:  It seems to indicate
10      that it -- it supports the
11      contention that Ms. Arrington
12      refused in some way to be
13      interviewed the second time.
14      She declined, it says.  And then
15      it says attached.  And it would
16      seem to be some document that
17      would be --
18      MS. JONES:  Uh-huh (positive
19      response).  And, Andy, I'll just
20      tell you this, what I did was --
21      his attachments were those job
22      postings, and that second
23      screening report, which we've

Page 56

1      already viewed in here.  But I
2      did not include those as
3      attachments on the memorandum,
4      because we had already furnished
5      them as exhibits.
6          That's just me as counsel
7      representing that to you.
8      MR. NELMS:  I understand.
9      MS. JONES:  But what I'm asking
10      Ms. Arrington -- and I'm not
11      asking her to explain.  And if
12      her response is the document
13      speaks for itself, that's --
14      that's fine as far as me asking
15      her to verify what it says.
16  Q.  But what I'm asking her is, on that search
17      committee report, were you one of the
18      candidates listed as having been reviewed in
19      that screening?  We go back to Exhibit --
20          MS. MEADOWS:  6.
21  Q.  -- 6, in the first screening and the second
22      screening columns.
23  A.  Which one?  This is Exhibit 6?

14 (Pages 53 to 56)

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 34 of 63

Deposition of Vicky Arrington                    ARRINGTON vs. ASU                    November 14, 2007

Page 57

1   Q.  Yes, ma'am.
2        MR. NELMS:  Well, for my
3       edification, is the attachment
4       referred to in Number 7
5       Number 6?
6       MS. JONES:  Yes.
7       MR. NELMS:  Okay.
8   A.  Okay.  Now, what was your question?  I'm
9     sorry.
10  Q.  On Exhibit 6 --
11  A.  Uh-huh (positive response).
12  Q.  -- on the first screening -- you are listed as
13    being a candidate in the first screening,
14    correct, on that Exhibit 6?
15  A.  Yes.
16  Q.  And on the second screening, you are listed as
17    being a candidate?
18  A.  Yes.
19  Q.  Yes.  And that's where we have that notation
20    that you declined to be interviewed, but you
21    told me, you know, that you refute that
22    statement?
23  A.  Yes.

Page 58

1   Q.  Yes.
2   A.  It's not true.
3   Q.  Let's see.  Now, when did you become aware
4    that Chief Young had been appointed to the
5    position as chief of police?
6   A.  Two weeks before he reported to duty.  I think
7    he reported to duty July the 1st of '06, if
8    I'm not mistaken.  And two weeks prior to
9    that, I think we started hearing some rumors
10    that a chief of police had been appointed.
11  Q.  And when you started hearing those rumors, did
12    you go speak to anyone in administration about
13    an appointment being made?
14  A.  No, I sure didn't.
15  Q.  Okay.  And prior to Chief Young's appointment
16    and -- or right now, do you know anything
17    about his educational background?
18  A.  No.
19  Q.  Do you know anything about his work history?
20  A.  No.
21  Q.  Have you seen a job description for the chief
22    of police?
23  A.  You're not talking about this, are you, the

Page 59

1    qualifications?
2   Q.  No.  No, ma'am.  I'm talking about this.  And
3    I'll have this marked as 8.
4       (Defendant's Exhibit Number 8 marked
5       for identification.)
6   Q.  Have you ever seen that job description
7    before?
8   A.  I have seen a job description of the chief of
9    police, but I can't really say it's this one,
10    because it was inside of a booklet that I saw
11    it in.
12  Q.  Okay.
13  A.  So I don't know if anything has changed is
14    what I'm saying.
15  Q.  Now, do you contend that you were the best
16    person for this job?
17  A.  Yes, I do.
18  Q.  You do.
19  A.  I was in the position, and I was doing the
20    job.  And I had done -- I had done the job for
21    three and a half years.
22  Q.  And, to your knowledge, do any of the other
23    applicants possess any education or skills

Page 60

1    greater than you?
2   A.  I don't really know about the other
3    applicants.
4   Q.  So you're just basing that you were the best
5    based upon your application, your education,
6    your training?
7   A.  Yes.
8   Q.  So you wouldn't have an opinion one way or the
9    other whether you could perform these duties
10    and responsibilities better than Chief Young
11    or any other applicant?
12  A.  I don't know if I need to answer that, because
13    I don't really --
14       THE WITNESS:  Is that a question
15      that I need to answer?
16      MR. NELMS:  Well, she's asked the
17      question --
18      THE WITNESS:  It's an opinion.
19      MR. NELMS:  And it is -- it does
20      call for an opinion, but, you
21      know, give her what your
22      thoughts are.
23  A.  Repeat that one more time.

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 35 of 63

Deposition of Vicky Arrington          ARRINGTON vs. ASU          November 14, 2007

Page 61

1    Q.  Okay.  Do you have any opinion or any evidence
2         that you could perform these duties and
3         responsibilities better than Chief Young or
4         any other applicant for the position?
5    A.  Based on the description and everything that
6         is going on and based on the fact that -- that
7         I've been called to do a lot of answering
8         questions to him as of his appointment now,
9         yeah, I feel that I would have been a better
10        candidate for the job.  Because I'm still
11        being asked administrative style questions,
12        and he's the selection.
13   Q.  So just based upon the fact that you're having
14        to answer administrative questions and he's
15        now the chief, that you would have been the
16        better appointment?
17   A.  Yes.
18   Q.  Okay.  Now, in your lawsuit you claim that
19        there were -- and I know this is a legal
20        phrase, but that there were similarly-situated
21        males who were treated differently than you.
22             Can you give me some names of males who
23        were treated differently than you?

Page 62

1    A.  May I look at what you're reading from?
2    Q.  These are just my questions.  I can get a copy
3         of the complaint.
4             MR. NELMS:  Off-the-record.
5             MS. JONES:  Yes.
6             (Off-the-record discussion.)
7    Q.  (Ms. Jones continuing) Do you still want to
8         see what I was referring to in the lawsuit?
9    A.  He explained to me what you --
10   Q.  He explained it to you?
11   A.  Yes.
12   Q.  Okay.  Now, who are the males that you would
13        say were treated differently than you?
14   A.  You-all had a position open back in 2005.  I
15        applied for the position.  Looking at the
16        ratings, you-all got one, two, and three.  I'm
17        number one, Captain Merritt is number two, and
18        Mr. Nunley is number three.  His score is
19        lower than mine, but he was selected.
20   Q.  Okay.  And the search was reopened from there;
21        would you agree?
22   A.  Yes.
23   Q.  Do you know the results of the scores from the

Page 63

1         second search?
2    A.  No.  But I'm concerned of the fact that it was
3         reopened again and, there again, another male
4         was selected.
5    Q.  Okay.  So it's your -- just because it was a
6         male there was something wrong?
7    A.  No.  Just because it was the fact that I
8         did -- one, two, and three.  I was number one,
9         and you picked number three; and then you
10        reopen it, and then you went at a male again.
11        So it let me believe that you weren't
12        interested in a female being the chief of
13        police.
14   Q.  Now, we go back to -- and I think you -- we
15        had it on what I marked as Number 4.  And
16        you're saying you picked number three.  If we
17        turn to page 6 of what was Defendant's
18        Exhibit 4, it's that memo from Olan, the
19        president -- right there.  And we go to page
20        6.
21   A.  Okay.
22   Q.  You and Captain Merritt are tied, numerical
23        scores; is that correct?

Page 64

1    A.  But based on what I'm looking at -- numerical
2         scores, yes.  Yes.  But it had a ranking.  And
3         it says, upon comprehensive review and
4         analysis the final ranking of candidates is as
5         follows.  Although our scores are the same it
6         ranks -- and I have another question too.  I'm
7         missing the tally sheets, because this is
8         somebody's adding.
9    Q.  If you look on --
10   A.  Do you-all have the tally sheets?
11   Q.  No, I don't have the --
12   A.  The handwritten tally sheets.
13   Q.  If you turn on page 7.
14   A.  Uh-huh (positive response).  I see that.  But
15        that's not what -- this (indicating).
16   Q.  No, I don't have the handwritten tally sheets
17        from this one as an exhibit, but I do have it
18        from the second.
19   A.  Okay.
20   Q.  We can get to --
21             THE WITNESS:  May I get to -- get a
22             copy of the tally sheets.
23             MR. NELMS:  Just answer her

Page 65

1    questions right now.
2         THE WITNESS: Okay.
3    Q. But as far as numerical scores, you and
4    Captain Merritt were tied?
5    A. Yes.
6         (Defendant's Exhibit Number 9 marked
7         for identification.)
8    Q. Okay. Now, let's get to -- bear with me.
9         MS. JONES: May I have this marked
10        as Exhibit 9.
11   Q. Are these the tally sheets that you're
12   referring to?
13   A. No, ma'am. I'm referring to the ones that are
14   handwritten by the people that sit on the
15   screening committee. This is just what -- I
16   guess whomever was in charge typed it.
17   Q. Okay. But they are a -- they are tally
18   sheets? They may be typed -- are they -- this
19   is a tally sheet?
20   A. This is not the tally sheet that I'm referring
21   to.
22   Q. It's not the one that you're referring to, but
23   it's a tally sheet?

Page 66

1    A. Yes.
2    Q. And it's --
3         MR. NELMS: I'm going to object.
4         And let me state my grounds. I
5         mean, you -- for the sixth time,
6         I believe, today you're asking
7         her to identify documents that
8         she admits she's never seen
9         before. She's simply telling
10        you what the face of the
11        document states. I don't know
12        that she's verifying anything
13        about the document when she says
14        so. She is no more than anyone
15        would be reading the newspaper
16        to you. She's never seen it
17        before. She can only tell you
18        that it says tally sheet on it.
19   Q. Okay. And does this say tally sheet on it?
20   A. Yes.
21   Q. Okay. Now, for Jeffrey Young, what was his
22   total score? There's a total score given at
23   the bottom.

Page 67

1    A. This is for the second screening? Because I
2    never did interview with Jeffrey Young. This
3    is for the second; is that correct?
4    Q. Okay. On the sheet it says, in parentheses,
5    second screening.
6    A. Okay. I'm sorry.
7    Q. And Jeffrey Young, he had a total score. What
8    was that?
9    A. Eighty-eight.
10   Q. And if we turn the page, we have
11   Virgil Merritt. What was his total score?
12   A. Eighty-three point five.
13   Q. And the third page is you, Vicky Arrington?
14   A. What --
15   Q. And what was your total score?
16   A. Eighty-three point five.
17   Q. And then the next page we have
18   Mr. Mark Mathies. I don't know how to
19   pronounce that. His total score was?
20   A. Eighty-three.
21   Q. And then we have Andy Dowell. And his total
22   score was?
23   A. Seventy-four.

Page 68

1    Q. And a Mr. Marion Brock. And he had a total
2    score of?
3    A. Seventy-eight.
4    Q. Okay. So in the second screening,
5    Jeffrey Young was the highest scoring
6    candidate, was he not?
7    A. Based on?
8    Q. Based upon these tally sheets that I gave
9    you.
10   A. Yes.
11   Q. Okay. And also in your lawsuit there's a
12   claim that the University had policies and
13   procedures that discriminated against women.
14        Can you identify those, what those
15   policies and procedures would be?
16   A. May I get a copy of my writings, please.
17   Q. Of your writings?
18   A. Yes. Because your questions are based on my
19   thing. I need to --
20   Q. What I'm going from is the lawsuit that was
21   filed on your behalf.
22   A. I need a copy of that.
23   Q. And this is my only copy.

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 37 of 63

Deposition of Vicky Arrington                     ARRINGTON vs. ASU                        November 14, 2007

Page 69

1    MS. JONES: Do you want to make a
2      copy of it for her, Andy?
3    MR. NELMS: This is just your --
4      this is the complaint that we
5      filed.
6    THE WITNESS: Okay.
7    MR. NELMS: She is just reciting --
8      you may never have even seen
9      this before. This is just the
10     complaint that we filed on your
11     behalf with the court. And it's
12     got a lot of standard language
13     in it. And you can respond as
14     you can.
15    THE WITNESS: Okay.
16  Q.  Okay. There's a statement in here that the
17     University had policies and procedures that
18     discriminated against women.
19       Do you have -- can you identify any
20     policies?
21  A.  You-all have a position available, and it's
22     supposed to be available to everybody. And it
23     looks like a lot of efforts were put forth to

Page 70

1    make sure that I didn't get to be treated
2    fairly in the selection of chief of police.
3      I say this because you had a screening in
4    2005. I was rated -- based on the rating one,
5    two, and three, I was rated number one. And
6    you tried -- and an attempt was made to pull
7    number three. And then you go back and you
8    reopen the position. I'm not notified. I
9    don't even know it's being reopened until I
10   get a call. I'm at work and get a call. And
11   then I had to say to the person that was in
12   charge of the screening committee, that was
13   Mr. Pace, what do you mean you reopened it? I
14   was not notified of it. And he tells me to go
15   back to Dr. Leon Frazier, which is the
16   administrative VP at that particular time.
17     And I go to him, and he tells me that I'm
18   going to get back with you. He never did get
19   back with me. In the meantime,
20   Captain Merritt is getting ready to retire,
21   which is the one that's rated number two up
22   under me. And I go to him out of curiosity,
23   did you get a letter saying that the position

Page 71

1    was being reopened? And he said yes.
2      So I'm trying to figure out if the
3    standards are available to everybody, then why
4    do all the men -- men know what's going on,
5    and I'm the only female and I have no
6    knowledge.
7  Q.  Now, are you aware that the University has an
8     Equal Employment Opportunity policy?
9  A.  I have not specifically seen it, but I'm sure
10    they possibly -- I have not seen it.
11    MR. NELMS: Answer her question the
12      best you can now.
13  A.  I have not seen it.
14  Q.  Okay. You haven't seen it, but do you know
15    that they have one?
16  A.  I'm going to say I'm sure they do have one.
17  Q.  Are you familiar with the non-academic staff
18    handbook?
19  A.  Yes.
20  Q.  Do you have a copy of it?
21  A.  Yes.
22       (Defendant's Exhibit Number 10 marked
23         for identification.)

Page 72

1  Q.  Let me show you what I'll have marked as
2    Defendant's Exhibit 10. And this is a
3    composite of policies taken from the
4    non-academic handbook. And I really didn't
5    even mean to copy what's page 23. If you'll
6    go to page 24, Section 2.1.
7      Have you seen this before?
8  A.  And this is from the non-academic handbook?
9  Q.  Yes, ma'am.
10  A.  No, I haven't seen it.
11  Q.  Okay. When you learned about what you've, you
12    know, represented to me today as being, you
13    know, the University's standards and policies
14    and how you felt you were kept out of it and
15    they really wanted to select a male, did you
16    file a grievance with anyone?
17  A.  You mean verbally or written?
18  Q.  Did you file a grievance per the procedure
19    laid out in the non-academic staff handbook?
20  A.  Per this procedure?
21  Q.  If you turn to page -- what's on here as page
22    61, Section 6.4.
23  A.  No, I didn't file it based on that. No.

Case 2:07-cv-00717-MHT-CSC     Document 14     Filed 05/13/2008     Page 38 of 63

Deposition of Vicky Arrington                ARRINGTON vs. ASU                    November 14, 2007

Page 73

1  Q.  You didn't.  Did you file any type of
2      grievance?
3  A.  I verbally went to Dr. Frazier to find out
4      what was going on.  And at that particular
5      time, I didn't know I was grieving.
6  Q.  Now, when you say you went to Dr. Frazier, are
7      these the two times that you've already spoke
8      about?
9  A.  The first time I went to him when I got a call
10     from Mr. Joe Pace, and the second time when
11     I -- right before Captain Merritt got ready to
12     retire.  And I went to him to inquire about
13     the letter, is there a letter that went out
14     stating that this position was being
15     reopened?
16  Q.  Okay.  And when you mentioned earlier about
17     you thought that when an announcement was
18     reopened that letters went out, do you -- is
19     that a part of the non-academic staff handbook
20     or is that just what you got from
21     Captain Merritt?
22  A.  I'm sorry, I don't --
23  Q.  When you said -- when we were talking earlier

Page 74

1      and you said that it was your understanding
2      that when a position was reopened letters went
3      out.
4  A.  Based on the fact that Captain Merritt got one
5      about the chief of police position.  That's
6      when I started to make that inquiry about it.
7  Q.  Okay.  But that wasn't based upon any policy
8      contained in any of the University's
9      handbooks, is it?
10  A.  I don't --
11         MR. NELMS:  If you know.
12  A.  I don't know if it is a policy, but it has to
13     be something, because he received a letter.
14     And it aroused my curiosity in and of the fact
15     that he got a letter.
16  Q.  Okay.
17  A.  But I don't know if anything is written, if
18     that's what you're asking.
19  Q.  That's what I was asking.
20         Were you ever informed in writing of your
21     nonselection for the chief of police?
22     Informed in writing that you weren't selected
23     for the job?

Page 75

1  A.  I was -- I don't ever recall getting a letter,
2      but I know at some point Dr. Frazier made
3      contact with me, because he wanted to bring
4      the selected candidate, which was Chief Young,
5      over to meet the officers at the police
6      department.
7  Q.  Okay.
8         (Defendant's Exhibit Number 11 marked
9          for identification.)
10  Q.  I'll mark this as 11.
11      Did you ever receive this letter?
12  A.  No.
13  Q.  You didn't.
14         MS. JONES:  And, Andy, let me -- let
15         me stop right here.
16         MR. NELMS:  Sure.
17         MS. JONES:  Let me take a break.
18         MR. NELMS:  Okay.
19         (Brief pause in proceedings.)
20         MS. JONES:  I don't have any more
21         questions for you.  I don't have
22         any more.
23         MR. NELMS:  I don't have any either.

Page 76

3      (The deposition concluded at
4      approximately 10:25 a.m.)

6  * * * * * * * * * * * *
7  FURTHER DEPONENT SAITH NOT
8  * * * * * * * * * * * *

Page 77

1           REPORTER'S CERTIFICATE
2   STATE OF ALABAMA:
3   BUTLER COUNTY:
4        I, Julie A. Duncan, Court Reporter and
5   Commissioner for the State of Alabama at Large, do
6   hereby certify that I reported the deposition of:
7           VICKY ARRINGTON
8   who was first duly sworn by me to speak the truth,
9   the whole truth and nothing but the truth, in the
10  matter of:
11        VICKY ARRINGTON,
12        Plaintiff,
13        vs.
14        ALABAMA STATE UNIVERSITY,
15        Defendant.
16      In the United States District Court
17      for the Middle District of Alabama
18      Northern Division,
19      Civil Action Number:
20        2:07-CV-717-MHT,
21  on Wednesday, November 14, 2007.
22      The foregoing 77 computer-printed pages
23  contain a true and correct transcript of the

Page 78

1   examination of said witness by counsel for the parties
2   set out herein.  The reading and signing of same is
3   hereby waived.
4        I further certify that I am neither of kin
5   nor of counsel to the parties to said cause nor in any
6   manner interested in the results thereof.
7        This 14th day of December, 2007.
8
9
10
                Julie A. Duncan, ACCR#: 256
11              Expiration Date:  9-30-2008
                Certified Court Reporter and
12              Commissioner for the State
                of Alabama at Large
13
14
15
16
17
18
19
20
21
22
23

Deposition of Vicky Arrington

ARRINGTON vs. ASU

November 14, 2007

**A**

ability 23:19,23
abolished 14:3,9
about 15:13 23:7 24:12
  26:21 27:17 30:23
  31:3 32:2 35:17 37:7
  37:18,23 39:11 42:5
  42:11 47:4,22 50:17
  50:22,22 51:9 53:21
  53:22 54:1 58:12,17
  58:19,23 59:2 60:2
  66:13 72:11 73:8,12
  73:16 74:5,6
academy 10:20,22 11:1
  11:5,10,15,17 12:3,5
  12:13,22 14:16,16,18
  15:7 17:1,5,8
ACCR 78:10
Action 1:6 77:19
activities 23:23
actually 15:20,23 32:21
adding 64:8
address 7:22
administration 21:23
  22:11 23:17,20 58:12
administrative 13:12
  19:14 35:3 49:23
  61:11,14 70:16
admits 66:8
advance 27:23
advancement 13:23
advise 27:23
advised 44:19
after 5:7 14:4,8 17:12
  18:9 21:9,11,13
  24:14 27:13 30:5
  32:9 36:21 42:2 47:3
  48:6,8,8,9,18 49:1,9
  49:16 50:14 51:1,9
  53:16
again 53:1,11 63:3,3,10
against 5:18 68:13
  69:18
agree 36:23 62:21
agreed 4:2,15,22
agreement 1:15
ahead 33:21
Alabama 1:2,8,17,19
  2:5,10 3:3,7 4:7 5:16
  11:19,22 18:9,14
  77:2,5,14,17 78:12
along 10:11 42:23
alphabetical 43:4
already 35:4 41:1
  49:21 56:1,4 73:7
Although 36:17 64:5
analysis 64:4
Anderson 1:18 2:3
Andy 2:3 44:3,7 55:19

67:21 69:2 75:14
Ann 25:9
announced 17:6
announcement 47:15
  53:5 73:17
another 10:4 40:6 43:1
  47:15 50:7 63:3 64:6
answer 43:17 51:17,20
  60:12,15 61:14 64:23
  71:11
answering 61:7
anti-managerial 35:18
Antoinette 26:21
anybody 44:21 51:5,23
  52:2
anyone 27:16,17 58:12
  66:14 72:16
anything 30:19 47:4
  48:15 51:19 53:21
  58:16,19 59:13 66:12
  74:17
anytime 47:11
appear 30:15,16 44:7
APPEARANCES 2:1
applicant 25:19,22
  54:8 60:11 61:4
applicants 3:16 53:18
  54:7,13,16 59:23
  60:3
Applicants/Inquiries
  3:5,13
application 21:4 25:2
  54:14 60:5
applied 21:8,9,11,13
  22:2,16 62:15
apply 19:8
applying 24:1
appointed 19:7 35:2
  58:4,10
appointee 27:4 53:19
  54:1
appointment 3:10 19:9
  19:11 27:9 38:17
  58:13,15 61:8,16
approved 40:21 54:9
approximately 1:21
  8:12,23 76:4
area 22:18
areas 22:14,16 23:12
argue 43:16
aroused 74:14
Arrington 1:4,14 2:18
  3:21 4:4 5:6,12 6:13
  7:15 44:13 55:11
  56:10 67:13 77:7,11
asked 39:6 47:22 48:16
  49:5,16,19 50:2,11
  50:17 51:8 60:16
  61:11

asking 11:13,19,20
  38:15 41:6,9 42:4
  51:3 56:9,11,14,16
  66:6 74:18,19
assessments 36:12
assign 14:18,20
assigned 14:20 16:3
  17:12,19 19:23
assistant 19:17 20:1
Associates 1:18 2:3
assume 18:21
ASU 3:13,17 9:6,16,17
  9:21 10:19 13:14
  18:17 41:23
Atlanta 8:17,19
attached 23:5 55:5,6,15
attachment 57:3
attachments 31:14
  33:19 43:1 55:8,21
  56:3
attempt 70:6
attempts 46:16
attend 9:5 10:22
Attorneys 2:4,9
August 53:12
available 3:3,7 43:22
  69:21,22 71:3
aware 20:2 27:15,20
  28:3,6 29:5,19 32:7
  36:1,1,2,8 37:7 45:21
  47:20,22 52:2,5 58:3
  71:7
a.m 1:21 76:4

**B**

B 6:9,10
bachelor's 21:22 22:4,9
  23:5
back 12:13 14:19 15:1
  16:22 18:9 20:6,9,9
  20:13 22:22 28:23
  29:2,4,11 30:8 32:3
  34:16 44:19 46:2,5
  46:21,22 48:10 49:1
  50:6,8,16,18,19
  56:19 62:14 63:14
  70:7,15,18,19
background 6:3 58:17
Baghdad 20:7,12
based 19:9 60:5 61:5,6
  61:13 64:1 68:7,8,18
  70:4 72:23 74:4,7
basically 17:17 24:22
basing 60:4
bear 65:8
became 16:17,23 17:12
  27:15
become 10:14 20:2
  27:20 28:3,6 58:3

before 1:15 4:6 5:20
  6:16 16:22 20:20
  21:17 24:20 35:20
  40:7,17 42:19 49:4,8
  49:12 50:9,10,13
  51:3,7 52:11 54:22
  58:6 59:7 66:9,17
  69:9 72:7 73:11
begin 10:17
behalf 2:2,6 68:21
  69:11
being 17:9 31:3 39:12
  43:5 47:4 48:19 49:7
  50:12 51:6 57:13,17
  58:13 61:11 63:12
  70:9 71:1 72:12
  73:14
believe 14:6 63:11 66:6
Bell 6:11,12,14
best 59:15 60:4 71:12
better 60:10 61:3,9,16
between 4:3,16,23 9:12
Beverly 2:12 3:22
birth 6:21
booklet 59:10
born 6:23 7:2
bottom 25:22,22 66:23
box 2:10 27:4
break 6:6 75:17
Brief 12:7 22:6 26:8
  75:19
bring 12:18 75:3
Brock 68:1
bureau 15:9 16:11
business 21:23 22:10
  23:18
BUTLER 77:3

**C**

call 28:7 60:20 70:10
  70:10 73:9
called 27:22 29:13
  48:20 61:7
calling 33:5 45:16,18
came 15:5 18:9
campus 3:4,7,16,18,19
  20:23 41:19
candidate 30:21 57:13
  57:17 61:10 68:6
  75:4
candidates 43:5 56:18
  64:4
Captain 37:9 47:23
  48:3,11 49:3 51:4
  62:17 63:22 65:4
  70:20 73:11,21 74:4
career 10:17
case 4:16,18 38:16
  cause 78:5

Ceasar 20:12
CERTIFICATE 77:1
certification 12:17,20
  14:17
certified 1:16 13:3
  78:11
certify 77:6 78:4
chain 46:18
chance 34:17 36:22
change 13:17 17:14
changed 59:13
charge 28:12,14 46:9
  65:16 70:12
chief 18:23 19:2 20:3,6
  20:11,12 21:2 24:12
  24:17 32:6 36:4
  41:23 42:8 49:6 58:4
  58:5,10,15,21 59:8
  60:10 61:3,15 63:12
  70:2 74:5,21 75:4
children 7:20
city 11:15 13:20 14:10
  15:1,5,18 16:2,11,18
  24:22
Civil 1:6 4:5 77:19
claim 61:18 68:12
clarify 6:5 15:14
class 17:2,8
classes 10:4
closely-related 21:23
close-related 22:11
Cobb 26:16
college 8:11,12 9:3,5
column 44:9
columns 56:22
come 18:13 28:9 29:8
  45:12,13 51:12
comes 11:18 47:13
commencing 1:20
comment 54:20
comments 36:10 38:1
commission 4:8
Commissioner 1:16 4:7
  77:5 78:12
committee 21:18 25:16
  26:10 28:12,15 35:2
  43:13,14,20 44:6
  45:13,19 46:10 54:12
  56:17 65:15 70:12
common 49:14
compare 30:12
complaint 62:3 69:4,10
completed 54:12,14
composite 72:3
comprehensive 64:3
computer-printed
  77:22
concerned 24:11 30:14
  63:2

Deposition of Vicky Arrington

ARRINGTON vs. ASU

November 14, 2007

Page 2

concluded 76:3
contact 29:12 30:6,9
  44:20 46:17,21,22
  48:10 49:2 75:3
contacted 30:5
contacting 29:14
contain 77:23
contained 74:8
contend 59:15
contention 55:11
continuing 12:8 22:8
  26:9 41:5 62:7
contract 54:8
conversation 42:10
  45:15
conversations 41:21
copy 36:5 40:1 62:2
  64:22 68:16,22,23
  69:2 71:20 72:5
corporal 17:3,7,10,13
  17:16,21 24:21
correct 5:13 19:14
  20:14 21:5 35:20
  38:18 39:4,8 40:10
  40:12,14 41:13 43:6
  44:1 49:23 52:17,19
  52:22 53:7,14 57:14
  63:23 67:3 77:23
correction 13:8
counsel 4:3,16 56:6
  78:1,5
Counseling 10:1,2
COUNTY 77:3
couple 14:4 16:13
course 9:23 13:4
court 1:1,16 2:9 4:6
  69:11 77:4,16 78:11
cover 6:2
credentials 30:23 42:7
  42:9
credits 24:8
criminal 9:8 21:22 22:4
  22:10
criteria 36:7
criticism 37:3 39:2,12
criticisms 36:12
curiosity 70:22 74:14
current 7:22
currently 9:18
customer 43:22

## D

dare 32:16
date 3:12,15 6:21 10:2
  78:11
dated 33:13
dates 33:5
day 28:7 78:7
days 35:1

dealing 38:21
December 78:7
decide 13:22
decided 15:10 16:7
  20:13
declined 43:14 44:13
  44:17 53:19 54:3
  55:14 57:20
declining 54:1
Defendant 1:9 2:6
  77:15
Defendant's 3:2 20:16
  20:19 25:11,14 29:23
  30:1 31:6 40:4 42:15
  42:18 52:7,9 59:4
  63:17 65:6 71:22
  72:2 75:8
defending 5:17
degree 21:22 22:4,10
  22:13,15,17 23:3,6
  23:11,14 24:6,9
department 13:18 15:2
  15:17 16:9 19:4,23
  35:5,9,12,19 36:10
  36:19 37:4 38:3,6,17
  39:1 75:6
departmental 24:2
depends 13:6
deployed 20:12
DEPONENT 76:7
deposition 1:14 4:4,6
  4:12,17 5:1,19 76:3
  77:6
description 3:17 58:21
  59:6,8 61:5
detective 16:17,21,23
  17:22,23 18:1,3
different 13:4 22:19
differently 61:21,23
  62:13
difficult 37:13
direct 17:20
directed 36:12
director 3:4,7,10,12,16
  3:17,19 20:23 28:13
  29:20 41:16,18,20
  45:20
disconnected 43:21
discretion 24:1
discriminated 68:13
  69:18
discussion 22:7 35:23
  37:21 40:23 41:4
  62:6
dissension 35:18
District 1:1,2 77:16,17
division 1:3 14:10 18:1
  77:18
document 38:10,18

41:10 55:2,16 56:12
  66:11,13
documents 66:7
doing 17:16 50:19
  59:19
done 9:13 12:4 13:11
  27:14 52:14 59:20,20
Donnie 26:1
Dowell 44:3,7 67:21
down 10:10 29:7,8
  33:21 37:21
Dr 3:11,15 19:12,12,13
  19:16,22 20:1 27:22
  28:18,19,21 29:2,10
  29:11,22 30:8 31:18
  31:21,21 35:15 36:9
  37:7,17 38:1,14
  40:14,20,21 44:18,18
  45:11,23 46:4,8,20
  46:20 47:1,3,7 48:9
  48:23 49:1,19,21
  50:16,17 51:8,12,15
  51:22 52:3,19,22
  70:15 73:3,6 75:2
Drive 7:23
duly 5:7 77:8
Duncan 11:5 14:6 77:4
  78:10
duties 17:14 18:2,16
  19:1 60:9 61:2
duty 58:6,7
D-O-N-N-I-E 26:1

## E

each 13:8
earlier 73:16,23
edification 57:3
education 59:23 60:5
educational 58:17
effective 23:20
effectiveness 27:11
efforts 69:23
Eighty-eight 67:9
Eighty-three 67:12,16
  67:20
either 4:13,19 50:20
  75:23
elapsed 49:4
eligible 53:17
employed 7:17
Employee 3:20
employment 53:20
  54:2,3 71:8
enforcement 10:15,18
  11:14 12:10,16 23:22
engaged 23:22
enough 24:7,8
Enrolled 9:19
equal 24:9 71:8

equipment 17:19
estimate 21:16
even 37:19 48:18 51:1
  69:8 70:9 72:5
ever 5:19 29:2,7 30:3
  31:2,10 41:21 49:3
  59:6 74:20 75:1,11
every 12:17,20 13:5
  32:19
everybody 69:22 71:3
everything 28:22 50:14
  51:1 61:5
evidence 4:12 61:1
exactly 22:23 29:10
  54:23
examination 2:17 5:10
  78:1
exceeds 13:9
Excerpt 3:20
excuse 26:2 35:21 36:9
exercise 23:19,23
exhibit 3:1 20:16,19
  25:11,14 30:1,11
  31:6,9 32:18 33:9
  40:4 42:15,18 52:7
  52:10 56:19,23 57:10
  57:14 59:4 63:18
  64:17 65:6,10 71:22
  72:2 75:8
exhibits 3:2 56:5
existed 36:5 51:2
expect 47:9
experience 19:9
expertise 19:10
Expiration 78:11
explain 38:13,15 41:7
  53:1 56:11
explained 28:22 29:18
  45:19 62:9,10
explanation 31:1
extensive 23:16

## F

face 66:10
facility 11:22
fact 30:7 36:21 48:7,8,8
  49:16 51:10 61:6,13
  63:2,7 74:4,14
fairly 70:2
fall 43:9
familiar 5:14 47:10
  71:17
far 10:11 13:10 24:10
  30:13 56:14 65:3
February 18:20,21
  53:6
Federal 4:5
feel 61:9
feeling 37:15

felonies 18:4
Felony 18:18
felt 24:18 72:14
female 63:12 71:5
field 22:1,11
figure 71:2
file 12:18 54:14 72:16
  72:18,23 73:1
filed 5:18 68:21 69:5,10
filing 4:17,21
fill 20:4
filled 21:4
final 64:4
finalist 15:20 27:13,13
  27:21 44:9
finalists 44:10
find 45:3 73:3
fine 38:12 41:2 56:14
first 5:7 17:2,8 25:17
  30:11,12 33:9 38:20
  43:3,4 53:17 56:21
  57:12,13 73:9 77:8
five 67:12,16
follow 46:18
followed 24:14
follows 5:9 64:5
Folmar 14:7
foregoing 77:22
form 4:10
formality 4:8
forth 69:23
found 49:16 50:10
Franklin 26:23
Frazier 3:11,15 19:12
  19:13,22 27:22 28:18
  28:19,21 29:2,10,11
  29:22 30:8 31:18
  37:17 38:1,14 40:14
  40:20 44:18,18 45:11
  45:23 46:4,8,20,20
  47:3,7 48:9,23 49:1
  49:19,21 50:16,17
  51:8,12,22 52:3,19
  52:22 53:23 70:15
  73:3,6 75:2
Frazier's 31:21 35:15
  36:9 37:7
Freemont 7:23
fresh 40:1
from 3:9,11,15,22 8:11
  8:23 11:5,17,18,21
  13:16 15:8 16:16,22
  17:21,23 20:7 22:19
  24:17 25:16,16 28:7
  31:18,23 33:12,19
  36:4 38:17 40:12
  42:2,22 45:23 47:15
  50:10 51:11,12 52:16
  53:5 62:1,20,23

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 42 of 63

Deposition of Vicky Arrington    ARRINGTON vs. ASU    November 14, 2007

Page 3

63:18 64:17,18 68:20
72:3,8 73:10,20
full 6:8 10:4
furnished 56:4
further 4:15,22 49:11
  76:7 78:4
future 32:20

**G**

gave 30:13 68:8
general 42:4
getting 13:3 70:20 75:1
GILLIS 2:8
give 6:8 21:15 33:5
  34:22 42:17 60:21
  61:22
given 32:1,5 66:22
glanced 34:19
go 6:16 7:6 8:6,11 9:11
  10:20 11:10,16,22
  13:18 14:8 15:1
  16:16,22 18:8 22:22
  26:9 29:7 30:6 33:7
  33:21 34:16 49:20
  50:3,15 51:9 56:19
  58:12 63:14,19 70:7
  70:14,17,22 72:6
going 6:2 12:23 14:19
  15:7,9 17:6 21:2
  22:18 33:3,19 34:2,5
  34:8 41:19 42:1,17
  44:19,23 45:3 48:6
  52:9 61:6 66:3 68:20
  70:18 71:4,16 73:4
gone 36:22
good 15:11
gotten 49:8
grad 9:18,19
graduate 8:9 9:9,11
graduated 11:5,17
  14:18 17:5
graduating 17:7
graduation 10:3 17:6
greater 60:1
grievance 72:16,18
  73:2
grieving 73:5
grounds 66:4
guess 17:20 20:7 21:16
  32:5 36:6 65:16

**H**

half 13:11 24:12 59:21
hand 32:19
handbook 3:20 47:18
  47:21 71:18 72:4,8
  72:19 73:19
handbooks 74:9
handwritten 64:12,16

65:14
happened 50:14
hard 10:8 39:21
having 5:7 56:18 61:13
head 41:9
heard 31:2
hearing 58:9,11
her 41:1 43:16,17
  51:17 56:11,12,15,16
  60:21 64:23 66:7
  69:2 71:11
hereto 4:19,23
high 7:6 8:5,6,8
highest 27:10 68:5
him 28:1 29:4,18 36:22
  42:11 45:1,4,5,13
  46:21 47:6 48:15,16
  48:21 49:5 50:2,11
  50:21,22 61:8 70:17
  70:22 73:9,12
himself 28:10
history 6:3 58:19
honest 20:21
Horn 25:8 26:13
hours 13:8 24:7,8
husband's 7:13

**I**

identification 20:17
  25:12 30:2 31:7 40:5
  42:16 52:8 59:5 65:7
  71:23 75:9
identify 25:18 28:10
  66:7 68:14 69:10
Immediate 19:22
include 56:2
included 31:15
including 12:5
incorrect 44:14,15
increased 27:10
INDEX 2:17 3:1
indicate 55:9
indicating 31:17,20
  64:15
indication 33:6
informed 74:20,22
informing 40:19
inquire 73:12
inquiry 52:21 74:6
inside 59:10
Institute 8:8
intend 45:1
interested 63:12 78:6
interim 18:23 19:1,7,19
  20:1,10 24:11,17
internal 35:17 37:18
  38:2
Internet 21:10
internship 10:5

interpreting 24:2 39:22
interruption 12:7 22:6
interview 25:4 26:16
  26:20 28:9 29:7,9,15
  29:19 43:23 44:8,17
  45:17,18 50:23 67:2
interviewed 21:17 25:7
  26:14 43:15 44:13
  45:2,2,6,9,14 49:9
  55:13 57:20
interviewing 44:22
introduced 4:18
investigations 18:4,18
investigator 18:15,17
  24:21 32:4
involved 10:14
issuing 17:18

**J**

Janice 26:23
Jeffrey 66:21 67:2,7
  68:5
job 3:17 13:20 14:8
  17:1 25:17 30:11
  42:8 47:15 53:5
  55:21 58:21 59:6,8
  59:16,20,20 61:10
  74:23
jobs 8:19
Joe 3:9 28:7,10,11 32:8
  73:10
Jones 2:19 5:11,15 12:8
  22:8 26:4,7,9 33:1
  40:2,8 41:5 55:7,18
  56:9 57:6 62:5,7 65:9
  69:1 75:14,17,20
judgment 24:1
Julie 1:15 4:6 33:2 77:4
  78:10
July 3:12,15 19:6 53:11
  58:7
June 3:9,21 32:9 33:13
  35:6
just 6:4 10:10 15:14
  16:3 30:13 40:16
  42:4 43:17 47:1 51:2
  51:13,17 53:3 55:19
  56:6 60:4 61:13 62:2
  63:5,7 64:23 65:15
  69:3,7,9 73:20
justice 9:8 21:22 22:5
  22:10
justification 27:3,8
  36:17 38:5
juvenile 18:1,2

**K**

kept 72:14
kin 78:4

knew 36:4 46:11,14
know 5:12,13,22 6:4,5
  6:6,7 8:18 21:7,18
  27:12 30:17 32:20,23
  34:20 37:14 38:11
  39:18 41:13 42:3
  44:22 46:11 47:4,18
  48:18 50:11,18 51:2
  51:14,16,19 53:21
  54:2 57:21 58:16,19
  59:13 60:2,12,21
  61:19 62:23 66:11
  67:18 70:9 71:4,14
  72:12,13 73:5 74:11
  74:12,17 75:2
knowledge 23:16,18
  26:17 49:13 59:22
  71:6 ———

**L**

L 3:9
laid 72:19
language 69:12
Large 1:17 4:8 77:5
  78:12
last 6:13 7:15 11:1
  34:13 37:21
LaTasha 2:8 5:16
later 8:13
law 1:17 2:4,9 10:14,17
  11:14 12:10,16 23:22
lawsuit 5:17 6:1 61:18
  62:8 68:11,20
learn 20:22
learned 72:11
Lee 3:9 32:8 33:12
  38:22 40:21
left 12:8 38:23 50:10
legal 61:19
Leon 3:11,15 19:12,13
  44:18,18 52:19 70:15
let 6:5,6 20:18,18 25:6
  25:13 31:8 42:17
  49:2 50:6,7,15,17
  63:11 66:4 72:1
  75:14,14,17
letter 3:21 28:17 39:19
  47:13,22,23 48:3,5
  48:12,17 49:3,6,15
  49:19 50:2,15,17,22
  51:2,7,8,11,14,22
  52:3 70:23 73:13,13
  74:13,15 75:1,11
letters 47:14 49:17
  73:18 74:2
let's 20:9 29:23 58:3
  65:8
level 13:12

lied 30:23 42:8
like 24:18 33:4 37:5
  69:23
list 27:8
listed 21:21 24:23
  26:11 43:5 44:10
  56:18 57:12,16
lists 53:4
lived 8:3
long 8:3 11:1 13:14
  14:1,13 15:12 16:20
  17:12 18:5,19 19:5
  21:13,15 46:4
longer 16:7
look 21:20 22:22 25:17
  30:10 34:17 38:20
  43:3 54:18 62:1 64:9
looked 21:9,10
looking 10:6 21:8
  22:19 62:15 64:1
looks 69:23
lot 5:23 61:7 69:12,23
lower 62:19
Lynn 6:20
L-Y-N-N 6:20
L.L.C 1:18

**M**

M 2:7
made 4:10 13:22 19:11
  27:15 36:1,8 38:16
  39:11 52:22 53:18,18
  53:23 58:13 70:6
  75:2
maiden 6:14
major 9:7
make 38:1 46:16 54:9
  69:1 70:1 74:6
makes 53:16 54:6
making 20:3
male 63:3,6,10 72:15
males 61:21,22 62:12
management 23:18
mandatory 13:7
manner 4:19 78:6
Manufacturing 7:19
MAR 3:2
March 53:6
Marian 19:12,16 20:1
Marion 68:1
mark 33:20 34:3,5,8,13
  40:8 43:2,18 67:18
  75:10
marked 20:16,18 25:11
  25:14 30:1 31:6,8
  40:4 42:15,18 52:7,9
  59:3,4 63:15 65:6,9
  71:22 72:1 75:8
married 6:17 7:11

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 43 of 63

Deposition of Vicky Arrington    ARRINGTON vs. ASU    November 14, 2007
Page 4

master's 9:17 22:13,15
    22:17 23:3,11,14
    24:6,9
Mathies 43:18 67:18
matter 77:10
maximum 12:13 14:17
may 4:6,11,12,18 27:16
    43:1 53:2 62:1 64:21
    65:9,18 68:16 69:8
mayor 14:4,5 16:7,23
ma'am 22:12 25:21
    42:20 57:1 59:2
    65:13 72:9
McDonough 1:19 2:4
Meadows 2:8 5:16
    56:20
mean 12:18 13:8 14:22
    32:23 33:15 38:11
    41:2 45:21 66:5
    70:13 72:5,7
MEANS 2:8
meet 22:2,8 24:4,13
    30:21,22 45:13 75:5
member 35:7,11
members 26:11
memo 31:10,12,14,21
    32:14 33:10,16,18
    36:8 37:12,16 38:21
    38:23 40:6,20 52:11
    52:16 63:18
memorandum 3:9,11
    3:15 34:21 35:15
    54:21 55:1 56:3
men 71:4,4
mentioned 44:12 73:16
merged 14:10 15:19
    16:10
Merritt 35:11 36:13
    37:9,9 47:23 48:3,11
    49:3 50:9,11 51:3,4
    62:17 63:22 65:4
    67:11 70:20 73:11,21
    74:4
message 43:22
met 24:18
methods 23:17
middle 1:2 6:16 77:17
might 32:17
mine 62:19
minute 26:3 34:22
missed 39:9
missing 64:7
mistaken 58:8
modern 23:16
Montgomery 1:19 2:5
    2:10 6:23 8:1 10:23
    11:15 13:20 14:5,11
    15:1,6 16:2,12,18
    24:22

months 14:4
more 15:8 36:3 60:23
    66:14 75:20,22
Moss 20:6,12 21:2
move 15:9
MPD 11:17 12:3,4,14
    12:22 13:2 15:20,21
much 5:22
myself 36:7

_____

N

name 6:8,13,14,16 7:13
    7:15 8:18,22 25:10
    43:12,19 54:15
names 44:10 61:22
Nashville 7:3,4
necessarily 13:1
need 4:10 6:6 10:8,9
    16:22 20:9 38:13
    43:2 45:3 60:12,15
    68:19,22
needed 28:18 45:11
neither 78:4
Nelms 1:18 2:3,3 15:14
    16:5 32:16 33:2,21
    38:10 41:1 43:16
    51:17,20 54:19 55:9
    56:8 57:2,7 60:16,19
    62:4 64:23 66:3 69:3
    69:7 71:11 74:11
    75:16,18,23
never 21:5 31:12 33:10
    33:11,14,15,16,17
    36:21 37:5 40:9,10
    40:17 44:17,20,21
    46:6,22 48:9 49:1
    50:19,19 66:8,16
    67:2 69:8 70:18
new 32:6 33:18 35:1
newspaper 66:15
next 34:5,8 67:17
nobody 28:16
none 54:6
nonetheless 37:11
nonselection 74:21
non-academic 71:17
    72:4,8,19 73:19
non-sworn 23:21
Northern 1:3 77:18
notation 25:21 57:19
note 43:13,20 44:6 55:4
noted 43:14
nothing 5:8 16:1 37:8
    77:9
notification 3:16 48:17
notified 30:19 47:6,8,9
    48:21 54:7 70:8,14
notify 51:5
notifying 28:17

November 1:20 77:21
number 20:16 25:11
    30:1 31:6 33:8 40:4
    42:15 43:21 52:7
    57:4,5 59:4 62:17,17
    62:18 63:8,9,15,16
    65:6 70:5,7,21 71:22
    75:8 77:19
numbered 33:7
numbers 32:19
numerical 63:22 64:1
    65:3
Nunley 26:1 27:12,23
    30:20 42:5,13 62:18

_____

O

object 66:3
objections 4:9,9
obtain 11:15
obtained 9:17 11:20
off 12:9 15:22 41:6
offer 28:1 53:19 54:1,3
offered 4:12
Office 2:10
officer 10:19 13:14
    14:12,14 15:11,21
    17:11,17
officers 75:5
Offices 1:17
officially 30:19
off-the-record 22:7
    35:23 40:23 41:3,4
    62:4,6
Okay 5:22 6:14,21 8:3
    8:23 9:3 10:6,10 12:8
    13:13 16:13 17:4,21
    19:18 23:9,11 25:1
    25:13 26:9 29:17
    30:5,10,17 31:5,13
    32:11,15 33:7 34:16
    35:17 36:9,23 37:11
    37:23 39:11,20,23
    40:19 42:17,21 43:3
    46:11 49:8,13 52:16
    57:7,8 58:15 59:12
    61:1,18 62:12,20
    63:5,21 64:19 65:2,8
    65:17 66:19,21 67:4
    67:6 68:4,11 69:6,15
    69:16 71:14 72:11
    73:16 74:7,16 75:7
    75:18
Olan 3:9,11,15 33:12
    33:19 52:16 63:18
once 14:15 32:3
one 8:20 22:13,15 23:2
    23:4,11,12 25:9 28:7
    29:23 30:12,12,12,13
    31:16 32:12 33:12,23

34:3,6,11,14 40:3,10
    43:1,5 44:10 47:14
    54:15 56:17,23 59:9
    60:8,23 62:16,17
    63:8,8 64:17 65:22
    70:4,5,21 71:15,16
    74:4
ones 65:13
only 31:1,2,4 42:10,12
    66:17 68:23 71:5
open 62:14
opened 47:12
operation 19:3
opinion 38:23 60:8,18
    60:20 61:1
Opportunity 71:8
order 43:4,8,9
orientations 35:19
original 45:15
originally 29:13
other 4:9,13,19 12:10
    12:16 24:10 25:9
    46:16 59:22 60:2,9
    60:11 61:4
out 17:2,7 21:4 33:5
    45:3 47:13 49:15,16
    49:17,20 50:3,10
    51:9,22 70:22 71:2
    72:14,19 73:3,13,18
    74:3 78:2
outlining 36:6
outside 36:18,18 38:6
over 21:3 23:21 27:5
    27:22 28:9 33:2
    46:12 50:16 75:5
overall 27:10
own 12:3

_____

P

Pace 28:7,10,11,22
    29:4,13 30:5 44:21
    45:16 46:17,19,19
    48:19 70:13 73:10
page 25:18,23 26:10
    32:7,9,12,19 33:3,4,4
    33:8,9,11,16,20 34:2
    34:3,5,6,8,9,13,16
    35:15 37:20 38:20
    43:3 63:17,19 64:13
    67:10,13,17 72:5,6
    72:21,21
pages 32:21 77:22
papers 20:7
paperwork 21:4 22:23
    36:6
paragraph 38:22
parentheses 27:3 67:4
park 13:21 14:2,11,13
    15:6,9,16,23 16:8,8

16:10
parks 16:3
part 15:17,19 33:18
    35:4 39:13 73:19
particular 24:7 70:16
    73:4
parties 4:3,16,23 78:1
    78:5
party 4:13,19
patrol 14:20,21 15:4,11
    15:12,13 16:13 17:10
    17:11,13,23
pause 26:8 75:19
pay 13:23
people 65:14
per 72:18,20
perform 60:9 61:2
period 15:15
permanent 20:4,5
person 25:9 26:14 46:9
    59:16 70:11
personal 6:2,3
personally 47:15
personnel 21:3 23:22
    30:6 41:17 46:12
phone 43:21
phrase 61:20
picked 63:9,16
picking 36:18
place 8:18 45:13
plaintiff 1:5 2:2 6:1
    77:12
please 41:3 52:13 68:16
point 13:11 28:3 67:12
    67:16 75:2
police 3:4,7,10,12,16
    3:17,19 10:19 13:13
    14:11,14,16 15:2,9
    15:16,16 16:9,11,17
    16:21 17:2,8,10,11
    17:13,16,21,22 18:15
    18:16,23 19:1,3,23
    20:3,11,23 23:16
    24:11,21 28:13,13
    29:20 35:5,9,12,19
    36:10 37:3 38:2 39:1
    41:19,22 42:8 45:20
    49:6 58:5,10,22 59:9
    63:13 70:2 74:5,21
    75:5
policies 24:2 68:12,15
    69:17,20 72:3,13
policy 47:21 71:8 74:7
    74:12
portions 31:23
position 3:3,7 13:15,22
    14:1,2,3,13 15:23
    16:20 18:5,6,13,19
    18:21 19:5,8 20:3,10

Case 2:07-cv-00717-MHT-CSC   Document 14   Filed 05/13/2008   Page 44 of 63

Deposition of Vicky Arrington                  ARRINGTON vs. ASU                    November 14, 2007

Page 5

24:17 25:2,4 28:4,16
29:19 30:18 32:3
39:7,13 40:22 42:3
47:4,11 48:5,12 49:6
50:12 51:5 54:4,11
58:5 59:19 61:4
62:14,15 69:21 70:8
70:23 73:14 74:2,5
positions 3:6,14 13:17
positive 12:21 18:12
22:21 48:1 52:15
55:18 57:11 64:14
possess 59:23
possibly 71:10
Post 2:10
postcertification 11:9
11:12,14,18,21 12:5
12:9
postcertified 11:7
posted 20:7 21:6
posting 20:20 21:5,14
25:17 30:3,11 53:17
54:17,17
postings 53:4 55:22
practice 23:19 49:14
practicum 10:5
preceding 22:14 23:12
preference 43:9,10
preferred 22:13 23:3,4
23:7,12
PRESENT 2:11
president 3:9 32:8
33:12 35:3 38:22
49:22 63:19
pretty 5:22
principles 23:19
prior 31:10 58:8,15
probability 27:10
probably 14:4 40:2,6
procedure 4:5 47:10
72:18,20
procedures 23:17 24:3
68:13,15 69:17
proceedings 12:7 22:6
26:8 75:19
program 10:12,12
projected 10:2
promote 17:7
promoted 17:2,13
pronounce 67:19
provided 4:13,20
public 21:22 22:10
pull 70:6
purpose 4:13
pursuant 1:14 4:4
put 33:21 69:23
P.C 2:8

Q

qualification 22:3,9
30:21
qualifications 21:7,21
24:13,19 30:14,22
59:1
qualified 24:4
question 4:10 36:3,22
37:23 39:9 42:4
43:17 57:8 60:14,17
64:6 71:11
questions 4:9 5:23 6:4
36:2 49:11 51:3,13
51:18 61:8,11,14
62:2 65:1 68:18
75:21

R

raised 7:4
Ramadanah 2:7 5:15
ranger 13:21 14:2 15:6
16:1
rangers 16:9,10
ranking 64:2,4
ranks 64:6
rated 70:4,5,21
rating 70:4
ratings 62:16
Re 3:12,15
reached 43:23
read 22:18 23:3 34:22
35:14
reading 23:2,7 39:10
62:1 66:15 78:2
ready 49:12 50:9,13
51:4,7 70:20 73:11
really 13:6 21:15 36:4
36:20 39:18 55:2
59:9 60:2,13 72:4,15
reason 15:10 42:4,7
47:12
recall 23:1 25:10 75:1
receive 11:9,16 12:9
47:23 48:17 75:11
received 47:14 48:3,11
74:13
receiving 52:3
recite 54:23
reciting 69:7
recommendation 3:10
27:3 39:13
recommended 39:7
recommending 34:23
recreation 15:16,18
16:4
references 55:5
referred 57:4
referring 25:20 32:22
33:6 62:8 65:12,13
65:20,22

refused 55:12
refute 57:21
regarding 29:14 36:10
38:1 41:22 48:4
regardless 4:20
regards 36:3
remember 8:21 23:7
25:6
removed 32:3 42:2
reopen 28:16 35:1
63:10 70:8
reopened 28:4 29:5,20
30:7,17 31:3 39:7,14
39:14 42:22 45:22
47:5,12,16 48:6,13
48:19 49:7 50:12
51:6 62:20 63:3 70:9
70:13 71:1 73:15,18
74:2
reopening 51:9
Repeat 60:23
report 19:20 25:16
42:22 55:23 56:17
reported 58:6,7 77:6
Reporter 1:16 4:7 77:4
78:11
REPORTER'S 77:1
reposted 54:12
represent 5:16 25:15
42:21
represented 72:12
representing 4:3,16
56:7
request 32:1
requested 36:5
requesting 34:20,23
requirements 24:5
requires 21:21
reserved 4:11
respond 37:13 69:13
responding 52:21
response 12:21 18:12
22:21 28:1 48:1
52:15 55:19 56:12
57:11 64:14
responsibilities 60:10
61:3
responsibility 17:18
Responsible 19:3
restaurant 8:21
results 62:23 78:6
retire 20:8,13 21:2
49:12 50:9,13 51:4,7
70:20 73:12
retired 49:5
review 31:13 40:16,16
42:23 52:13 64:3
reviewed 56:18
Re-Opened 3:8

re-opening 40:21
Rheem 7:19
right 15:21 16:5 31:12
31:19,20 32:1,7 49:4
49:12 50:9,10,13
51:3,7 58:16 63:19
65:1 73:11 75:15
right-hand 27:5
risk 39:1
Rudolph 2:12 3:22
Rules 4:5
ruling 4:11
rumors 58:9,11

S

Sabel 7:18,18
SAITH 76:7
Salaam-Jones 2:7
same 4:21 13:4 30:15
64:5 78:2
sat 5:19
saw 16:23 21:5 36:21
37:5 59:10
saying 23:10 31:22
37:6,14 38:19 39:15
47:19 48:5 59:14
63:16 70:23
says 22:13 23:4,11 32:8
37:20 38:23 41:10,11
54:20 55:14,15 56:15
64:3 66:13,18 67:4
school 7:7 8:5,6,8 9:18
9:19
score 62:18 66:22,22
67:7,11,15,19,22
68:2
scores 62:23 63:23 64:2
64:5 65:3
scoring 68:5
screen 54:13
screened 54:16
screening 3:5,13 21:18
25:16 28:12,14 35:2
42:22 43:4,8 53:17
54:12 55:23 56:19,21
56:22 57:12,13,16
65:15 67:1,5 68:4
70:3,12
search 3:8 26:10 27:13
30:17 39:14 41:18
42:22 56:16 62:20
63:1
SEAY 2:8
second 26:6,10 38:22
43:8,11 50:21 53:16
54:13,17,17 55:13,22
56:21 57:16 63:1
64:18 67:1,3,5 68:4
73:10

section 21:20 26:11
37:20 72:6,22
security 3:4,8,10,12,16
3:18,19 21:1 23:21
28:13 29:20 41:19
see 10:11 21:6,11 22:23
26:11 27:4 33:2,9
37:6 39:19 46:19
49:2 50:21 54:15
58:3 62:8 64:14
seeking 20:4
seem 55:16
seems 55:9
seen 20:20 30:3 31:10
31:12,16,17,19,20,21
31:23 32:7,9,12,14
33:10,11,14,15,16,17
33:23,23 34:3,6,9,14
35:14,20 37:5 40:7,9
40:10,17 42:19 52:11
53:9,14 54:21 58:21
59:6,8 66:8,16 69:8
71:9,10,13,14 72:7
72:10
select 72:15
selected 27:12,17,21,23
30:22 42:5 49:9
62:19 63:4 74:22
selecting 38:6
selection 41:22 53:18
54:7 61:12 70:2
Selma 11:11,23
semester 10:4
send 13:6 15:7 49:14
49:17
sent 13:1 14:15 28:16
51:22
sentence 37:22
service 43:21
services 19:14 35:3
49:23
set 48:20 78:2
seven 11:2
Seventy-eight 68:3
Seventy-four 67:23
several 8:19
Shedrick 7:14
sheet 3:19 65:19,20,23
66:18,19 67:4
sheets 64:7,10,12,16,22
65:11,18 68:8
shift 17:20
show 20:18 25:6,13
31:8 72:1
side 27:5
signature 5:1
signing 78:2
similarly-situated

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 45 of 63

Deposition of Vicky Arrington          ARRINGTON vs. ASU          November 14, 2007

Page 6

61:20
simply 66:9
since 8:4 40:17
sit 65:14
sixth 66:5
skills 59:23
slot 20:5
Smith 19:12,16 20:1
    25:9 26:21
some 6:1,2 9:13 15:10
    24:22 28:3 32:2 36:2
    47:12 49:4 53:3
    55:12,16 58:9 61:22
    75:2
somebody 39:22 54:2
somebody's 64:8
someone 20:4 36:18
    38:6 49:10
someplace 13:18
something 23:6 38:8
    48:20 63:6 74:13
sometime 27:15
somewhere 11:16
soon 17:5
sorry 7:18 39:9 57:9
    67:6 73:22
South 1:18 2:4
speak 5:8 27:16 28:19
    36:20 58:12 77:8
speaks 38:10 55:2
    56:13
specifically 45:1,4 71:9
spoke 73:7
staff 71:17 72:19 73:19
stand 6:10
standard 69:12
standards 12:14 71:3
    72:13
star 43:12,13
stars 43:19,20 44:4
start 10:12
started 9:3 10:13 13:13
    15:22 51:2 58:9,11
    74:6
starting 8:5
state 1:8,17 3:3,7 4:7
    5:17 11:18,21 18:10
    18:14 37:11,16 66:4
    77:2,5,14 78:12
stated 23:13 48:12
    49:21 55:1
statement 23:5 37:7
    39:5,10,11 44:12,16
    53:16,22 54:6,9
    57:22 69:16
states 1:1 20:6 54:11
    66:11 77:16
stating 28:8 52:21
    73:14

Statute 4:14,20
stay 13:14 14:1,13
    15:12 16:20 18:5,19
    19:5
stayed 15:13 16:13
    18:6
still 12:4 61:10 62:7
stipulated 4:2,15,22
stipulation 1:15 4:1
stipulations 32:2
stop 6:7 75:15
straight 47:2
Street 1:19 2:4
strife 35:18 37:8,10,18
    38:2
study 9:23
stuff 24:10
style 61:11
submit 25:1
substitute 40:3
successful 25:18,22
suggest 32:17
Suggestion 33:1
Suite 1:19 2:5
supervised 32:5
supervision 23:21 36:3
supervisor 19:21,22
supervisory 13:10
supports 55:10
supposed 49:19 50:2
    69:22
sure 26:4,7 28:2 34:23
    58:14 70:1 71:9,16
    75:16
sworn 5:7 23:21 77:8
S-H-E-D-R-I-C-K 7:14

―――――――
            T
take 10:9 13:22 31:13
    32:18 42:23 52:13
    75:17
taken 1:14 4:4,6 33:1
    72:3
talk 26:5 27:17 28:18
    29:9 44:18 46:7,8
    47:1,3,7 48:18
talked 45:23 46:19
    48:9
talking 53:22 58:23
    59:2 73:23
talks 35:17
tallies 32:13
tally 3:19 64:7,10,12,16
    64:22 65:11,17,19,20
    65:23 66:18,19 68:8
technical 23:20
tell 29:8 32:16 45:10,12
    48:15 55:20 66:17
telling 66:9

tells 70:14,17
ten 35:1
Tennessee 7:3
test 10:9
testified 5:9 25:1
Thank 5:15
their 13:2 25:10 27:9
    41:9
Theotis 25:8
thereof 78:6
thing 31:2,4 68:19
things 24:23 53:3
think 5:12 8:19 11:2
    12:8 24:4,20 26:13
    32:6 36:11 58:6,9
    63:14
thinking 53:2
third 67:13
THOMAS 2:8
thorough 23:18
thoroughly 34:22
thought 37:1,2 73:17
thoughts 60:22
three 13:11 24:12 44:3
    44:9 59:21 62:16,18
    63:8,9,16 70:5,7
through 12:4,13,14,22
    22:22 24:15,17 34:19
    53:6,11
tie 10:10
tied 17:9 63:22 65:4
time 4:10,11 8:20 9:12
    11:2 14:6 15:15
    20:11 21:3 22:2,16
    24:7 31:13 35:5
    36:11 41:16,18 42:1
    42:23 45:12 46:12
    49:4,22 50:7,21,23
    52:13 55:13 60:23
    66:5 70:16 73:5,9,10
times 17:19 73:7
today 31:11 53:9 66:6
    72:12
told 14:23 15:6 21:2
    28:17,23 29:4,8,9
    41:1 42:6 44:17,21
    45:1,4,5,8,10,16,17
    46:8 47:1,2,6,6 48:16
    48:21,22 57:21
topics 13:4
total 66:22,22 67:7,11
    67:15,19,21 68:1
totally 24:1
touch 28:23 29:2,21
towards 36:13
training 11:22 12:10
    12:16,17,19 13:1,10
    13:12 15:8 17:17
    24:8,16,18 60:6

transcript 77:23
transferred 17:23
treated 61:21,23 62:13
    70:1
trial 4:18
tried 70:6
true 43:15 58:2 77:23
truth 5:8,8,9 77:8,9,9
try 6:5 39:21 48:20
    53:1
trying 10:10,11 38:13
    39:17,18 46:18 47:2
    71:2
turn 34:2 63:17 64:13
    67:10 72:21
Tuskegee 7:8,9 8:7,8
twelve 13:7,8
twenty 12:15
two 8:12,14 10:6,6
    15:13 43:19,20 58:6
    58:8 62:16,17 63:8
    70:5,21 73:7
type 73:1
typed 65:16,18
T.C 26:13

―――――――
            U
Uh-huh 12:21 18:12
    22:21 48:1 52:15
    55:18 57:11 64:14
unable 44:7
under 70:22
underlined 39:23
understand 6:4 56:8
understanding 11:12
    30:20 74:1
United 1:1 26:17 77:16
University 1:8 3:4,7
    5:17,18 20:2,22 37:3
    49:14 68:12 69:17
    71:7 77:14
University's 35:5,7,12
    38:2 39:1 72:13 74:8
unnecessary 37:1,2
    39:2,12
until 18:6,20 19:6
    48:18 70:9
unwarranted 39:2,12
used 4:12,19 36:17
    38:5

―――――――
            V
vacancy 20:23
Vacant 3:5,14
variety 13:3
verbally 72:17 73:3
verify 30:7 41:10 53:3
    56:15
verifying 66:12

very 21:15
vice 35:2 49:22
Vicky 1:4,14 2:18 3:21
    4:4 5:6 6:9 44:13
    67:13 77:7,11
view 21:13
viewed 56:1
Virgil 67:11
VP 19:13,17,19 20:1
    70:16
vs 1:6 77:13
V-I-C-K-Y 6:9

―――――――
            W
wait 46:4
waited 46:6,6,21
waiting 30:8
waived 4:17 5:2 78:3
waiving 4:20
Wal-Mart 8:20
want 13:16 14:3,21
    18:7 24:20 25:8,13
    27:22 41:5 45:2 53:1
    53:3 54:18 62:7 69:1
wanted 15:10 16:8 28:8
    45:5 51:13 72:15
    75:3
wasn't 21:15 26:18,19
    30:19 47:6 50:2 74:7
way 22:18 23:1,2,8
    55:12 60:8
website 30:6
Wednesday 1:20 77:21
weeks 11:2 12:15 58:6
    58:8
well 8:5 13:23 14:15,22
    17:17 31:1 38:15
    47:10 49:2 57:2
    60:16
went 8:12 12:13 17:21
    21:3,9 23:6 50:21
    51:8 63:10 73:3,6,9
    73:12,13,18 74:2
were 6:23 7:2,4,6 8:14
    8:16 10:11 14:19
    15:6,17,19,20 17:9
    17:10,16,19 18:2,16
    19:1,7 21:8,17 24:4
    25:7 35:4,6,6 36:12
    54:7 55:21 56:17
    59:15 60:4 61:19,20
    61:21,23 62:13 65:4
    69:23 72:14 73:23
    74:20
weren't 29:5 47:8
    63:11 74:22
Wesley 3:9,12,15 31:14
    33:12 34:17,20 36:23
    39:15 40:12,19 41:13

Case 2:07-cv-00717-MHT-CSC    Document 14    Filed 05/13/2008    Page 46 of 63

Deposition of Vicky Arrington                    ARRINGTON vs. ASU                    November 14, 2007

Page 7

41:22 46:7,12 52:16
    53:2,4
**Wesley's** 33:19 38:21
    39:5
**we'll** 6:6 32:20 34:13
    40:2,8
**we're** 10:6 15:7,8 34:2
    34:5,8 38:21
**we've** 49:21 55:23
**while** 17:9
**whole** 5:8 77:9
**witness** 4:23 5:1,7
    15:22 16:6 26:2,5
    38:8 60:14,18 64:21
    65:2 69:6,15 78:1
**women** 68:13 69:18
**work** 9:11 28:8 58:19
    70:10
**worked** 8:19
**working** 8:14,16
**wouldn't** 32:16 60:8
**write** 32:19
**writing** 74:20,22
**writings** 68:16,17
**written** 23:1,8 39:19
    72:17 74:17
**wrong** 63:6
**wrote** 34:18 36:20
    37:15 38:14,14 39:23

———————
**Y**
———————
**yeah** 38:19 49:7 50:15
    61:9
**year** 8:9 9:9 10:7 12:17
    12:20 13:5,8
**years** 8:12,14 10:6 13:7
    13:11 15:13 16:14
    24:12 59:21
**Young** 36:4 58:4 60:10
    61:3 66:21 67:2,7
    68:5 75:4
**Young's** 58:15
**you-all** 49:17 62:14,16
    64:10 69:21
**y'all** 7:20

———————
**Z**
———————
**Zelda** 2:9

———————
**0**
———————
**05** 32:9 53:6,6
**06** 58:7

———————
**1**
———————
**1** 3:3 20:16,19 30:11
    34:16 43:2
**1st** 19:6 58:7
**10** 3:20 53:6 71:22,72:2
**10/30/1966** 6:22

**10:25** 76:4
**100** 1:19 2:5
**11** 3:21 75:8,10
**1141** 7:23
**14** 1:20 77:21
**14th** 78:7
**15** 32:9
**18** 3:12,15
**1985** 8:10
**1987** 9:3
**1991** 9:10
**1992** 10:16 11:3,4,5
    13:13,16
**1995** 12:14 13:16,19
**1996** 8:4

———————
**2**
———————
**2** 3:5 25:11,14 33:16
    43:2
**2.1** 72:6
**2:07-CV-717-MHT** 1:7
    77:20
**20** 3:3
**2000** 18:6 36:1
**2001** 18:7
**2002** 18:10,11
**2003** 10:13 18:20,22
**2005** 3:9,12 33:13 35:6
    41:20 53:11,12 62:14
    70:4
**2006** 3:15,21 19:6 36:8
**2007** 1:20 77:21 78:7
**21st** 53:11
**23** 72:5
**24** 72:6
**25** 3:5
**256** 78:10
**26** 3:21
**27** 3:9 33:13
**27th** 35:6

———————
**3**
———————
**3** 3:7 29:23 30:1 33:20
    33:21 35:15 37:20
    43:2
**30** 3:7
**31** 3:9
**3121** 2:9
**36103-5058** 2:10
**36104** 2:5

———————
**4**
———————
**4** 3:9 31:6,9 34:3 63:15
    63:18
**4th** 53:12
**40** 3:11
**42** 3:13

———————
**5**
———————

**5** 2:19 3:11 34:6 40:4,8
**5058** 2:10
**52** 3:15
**59** 3:17

———————
**6**
———————
**6** 3:13 34:9 42:15,18
    56:20,21,23 57:5,10
    57:14 63:17,20
**6.4** 72:22
**61** 72:22
**65** 3:19

———————
**7**
———————
**7** 3:15 34:13 52:7,10
    57:4 64:13
**71** 3:20
**75** 3:21
**77** 77:22

———————
**8**
———————
**8** 3:17 59:3,4
**8:45** 1:21
**847** 1:18 2:4
**85** 8:23
**87** 9:1

———————
**9**
———————
**9** 3:19 65:6,10
**9th** 53:6
**9-30-2008** 78:11

# EXHIBIT 6

# ALABAMA STATE UNIVERSITY
## PERSONNEL AND HUMAN RELATIONS



## SCREENING APPLICANTS/INQUIRIES FOR VACANT POSITIONS

**POSITION:** Director of Police and Security          **POSTION #:** 615002

| SOL/UNS | RACE | FIRST SCREENING (Alphabetical Order) | SECOND SCREENING (Order of Preference) | FINALIST |
|---|---|---|---|---|
| | B | Vicky Arrington | Vicky Arrington | Donnie Nunley |
| | B. | Virgil Merritt | Virgil Merritt | |
| | B | Donnie Nunley | Donnie Nunley | |

**Successful  Applicant**
Donnie Nunley



# ALABAMA STATE UNIVERSITY
## PERSONNEL AND HUMAN RELATIONS



## AFFIRMATIVE ACTION PERSONNEL COMPLIANCE REPORT

PERSON RECOMMENDED: Donnie Nunley

TITLE: Director of Police and Security

(  ) New Position
( X )Replacement for  Ceasar Moss
If Replacement, Race_B_ Sex_M_  Salary $56,718 _____ of previous incumbent.
COLLEGE:_____ DEPT:_____
APPLICATION DEADLINE: March 9, 2005  STARTING DATE July 15, 2005

SALARY RANGE: $43,228-$50,131  ACCOUNT #216150 POSITION #: 615002

---

*TOTAL NUMBER OF APPLICANTS:_3_

FEMALE:_1_   MALE:_2_
BLACK:_3 WHITE:_0_ OTHER:_0_

TOTAL APPLICANTS INTERVIEWED:

BLACK:_3_ MALE:_2_ FEMALE:_1_
WHITE:_0_ MALE:_0_ FEMALE:_0_
OTHER:_0_ MALE:_0_ FEMALE:_0_

3 TO 5 APPLICANTS IN RANK ORDER
NAMES          RACE/SEX

1ST.  Vicky Arrington
2ND.  Virgil Merritt
3RD.  Donnie Nunley
4TH.  _____
5TH.  _____

SEARCH COMMITTEE MEMBERS:  RACE/SEX

1. T. C. Horn, Chair
2. Larry Cobb, Member
3. Antoinette Smith, Member
4. Janice Franklin, Member

---

RECOMMENDATION( JUSTIFICATION OF APPOINTEE):

Highest probability for increased overall effectiveness

ADVERTISEMENT DOCUMENTATION:
LIST BELOW & ATTACH DOCUMENTATION
  Attached

ATTACH JOB DESCRIPTION

MUST BE REVIEWED BY THE FOLLOWING
PERSONS BEFORE A JOB OFFER IS MADE:

T. C. Horn
CHAIR OF SEARCH COMMITTEE          DATE

COLLEGE DEAN/DEPARTMENT HEAD       DATE
                                    6/17/05
AREA VICE PRESIDENT

DIRECTOR OF PERSONNEL              DATE

**ALABAMA STATE UNIVERSITY**
**PERSONNEL AND HUMAN RELATIONS**



| **EMPLOYMENT APPLICATION CHECKLIST** **(NON-ACADEMIC)** |
|---|

1.     College, School or Area: __Administrative Services__

2.     Department: __Police and Security__

3.     Recommended Academic Rank and/or Title: __Director__

4.     Area of Specialization: _____

5.     Recommended Salary: __50,131__

6.     Source of Funds: __General Fund: 216150 1210__

7.     Budget Position Number: __615002__

8.     Desired Beginning Date of Employment: __July 15, 2005__

9.     Was a request for authorization to Fill a Vacancy Secured?  (x) Yes        ( ) No

10.    Was the position announcement prepared on the basis of the position description from the request for Authorization to Fill Vacancy?  If no, why not? **Yes**

11.    List the name and address of each organization to which the position announcement was sent.  (Use the back of this sheet if more space is needed). **Alabama State Employment Services, 1060 A. East South Blvd., Montgomery, Alabama  36116-2338: Alabama State University Job Line and Alabama State University website @ www.alasu.edu:**

12.    Was the position announcement published?   If yes, list the publications in which the position was advertised.  **No**

1

13. Was the position announcement sent to other institutions, placement services and/or agencies? ( X ) Yes    (   ) No.   If yes, list below.   If no, why not?  Use space provided for explanation.  **National-Wide Personnel: Southeastern Personnel and Local Personnel agencies and institutions of Higher Education**

14. Were efforts made to determine the availability of qualified whites, other non blacks and females for the position?   If yes, what efforts?  If no, why not?  **Yes, See #11**

15. Were active efforts made to inform potential white and other non black applicants of the vacancy?  If yes, what were the efforts?  If no, why not?  **Yes, See # 11**

16. How many applications were received?

   (a)   **Number of solicited applications:** _____3_____

   (b)   **Number of unsolicited application:** ____0_____

   (c)   **Number of completed applications:** ____3_____

   (d)   **Are all applications on file?**    ( X ) Yes    (   ) No

17. What method was used in the preliminary screening of applications?
   Initial screening by Personnel office.

18. What method was used for selection of applicants for interview?

   Screening Committee

2

19.    Applicants interviewed:

    (a)    Were they all required to make some form of presentation?

        (x) Yes        ( ) No

    (b)    Did they meet with all departmental staff members?

        ( ) Yes        (x) No

    (c)    Did they all meet the Department Head, Director or Dean?

        ( ) Yes        (x) No

    (d)    Did they all meet the area Vice-President?

        (x) Yes        ( ) No

If the answer to any of the above is no, explain.


20.    Compile the following information about applicants for whom complete applications received and interviews were conducted.

|  | NUMBER OF APPLICANTS | |
| --- | --- | --- |
| Race and Sex | With Completed Applications | Who were interviewed |
| Black Males | 2 | 2 |
| Black Females | 1 | 1 |
| White Females | 0 | 0 |
| Other Males | 0 | 0 |
| Other Females | 0 | 0 |
| Total Number | 3 | 3 |

21.    List the name, race, and sex of the selected candidate.

Donnie Nunley                                    B            M
Name                                            Race            Sex

3

22.   What procedure was used to make the final selection?

   Review of ranked candidates by Vice President.
   _____
   _____

23.   Why was this candidate selected over candidates for whom complete applications were received
      and interviews were held?
   Perceived as having highest probability of overall success
   _____
   _____

24.   Signatures: (Required)

   _____    _____
   Department Head/Chairperson/Director          Date

   _____    _____
   College/School/Dean                            Date

   _____    6/17/05
   Area Vice-President                            Date

   _____    6/21/05
   Director of Personnel Services & Human Relations    Date

   Void

4

# EXHIBIT 7



OFFICE OF THE

VICE PRESIDENT FOR

ADMINISTRATIVE SERVICES

June 15, 2005

## MEMORANDUM



TO:      President Joe A. Lee

THRU:    Mr. Olan Wesley, Director
             Personnel and Human Relations

FROM:    Leon Frazier, Vice President
            for Administrative Services

*RE:*      *Recommendation for Appointment of*
            *Director of Police and Security*

References
1.    Memorandum to this office from Beverly A. Rudolph, Assistant Director, Personnel and Human Relations, dated March 15, 2005, subject, "Applications for Screening."

2.    Memorandum to this office from T. C. Horn, Screening Committee Chair, dated May 18, 2005, subject, "Screening for Position of Director of Police and Security."

Discussion
As a result of the most recent announcement of the vacancy in the position of Director of Police and Security, only three applications were received that passed the first screening conducted by the Office of Personnel and Human Relations, of which two were internal to the Police Department and one was external to the University. The outcome of the two-phased Screening Committee review is shown in referenced item 2, above. The report indicates no significant variation between the three candidates. Further reviews and interviews by this office confirm the close rating of the Committee, and established my finding of three acceptable candidates, none of which are notably strong. However, given the history of the Police Department and its on-going proclivity for internal strife, dissension, and demonstrated anti-managerial orientations and ambitions, at the expense of the Department's effectiveness and the University's image, a case is made for an appointment from without the Department.

ALABAMA

STATE

UNIVERSITY

P.O. BOX 271

MONTGOMERY,

ALABAMA

36101-0271

334.229.6994

www.alasu.edu

*President Joe A. Lee*
*15 – June – 05*
*Page -2-*

Recommendation

In light of the above discussion and the need to settle the matter of the Department's leadership, I am hereby making the following recommendations:

a.    That Mr. Donnie Nunley be offered the position of Director of Police and Security, at Grade 21, Step 7, salary of $50,131, effective July 15, 2005.

Approved: _____    Disapproved: _____

Date: _____

b.    That Ms. Vicky Arrington, who has served valiantly and conscientiously as Interim Police Chief for 2 years and 3 months, be reassigned to the position of Police Investigator at Grade 14, Step 12, Salary $37,722, effective July 15, 2005. Further,

Approved: _____    Disapproved: _____

Date: _____

c.    That Police Investigator Arrington reports directly to the Director of Police and Security, and not to anyone whom she currently supervises.

Approved: _____    Disapproved: _____

Date: _____

Conclusion

I believe that the above recommendations and rationale provide for the interests of the Department's effectiveness within the framework of available candidates, and gives appropriate deference to the first female Police Chief at the University. They are hereby presented for action as indicated, or other action.

Enclosures:  Letters Stated
Personnel Documents



OFFICE OF PERSONNEL SERVICES
AND HUMAN RELATIONS

# MEMORANDUM

**TO:**  Dr. Leon Frazier, Vice President
Administrative Service

**FROM:**  Beverly A. Rudolph, Assistant Director
Personnel and Human Relations

**RE:**  APPLICATION(S) FOR SCREENING

**DATE:**  March 15, 2005

The position for **Director of Police & Security** was advertised. There are **three** complete applicant files, being forwarded for consideration and screening.

Please return application package to the Office of Personnel and Human Relations (Councill Hall, Room #1) along with screening forms when screening and selection process are complete.

B. A. R.

Enclosures:

1. Employment Application(s) = 3
2. Screening Form
3. Advertisement
4 Job Description (If available)
5. Employment Application Checklist
6. Screening Application/Inquiries
7. Affirmative Action Personnel Record

## NOTICE

*  In the event the position needs to be re-opened, please submit a letter requesting the extended time frame for the advertisement. Please return all folders submitted to you, along with the request. In order for us to notify applicants of the position's status, it is very important folders are returned to Personnel before the position is re-advertised.

*  When no applications have been received, at the closing date of advertisement, or the entire applicant pool is incomplete for the position; a request in writing to re-open the position is required.



OFFICE OF THE
VICE PRESIDENT FOR
ADMINISTRATIVE SERVICES

**M E M O R A N D U M**

RECEIVED
MAY 19 2005
ADMINISTRATIVE SERVICES

DATE:    May 18, 2005

TO:    Dr. Leon Frazier, Vice President
      for Administrative Services

FROM:    T.C. Horn, Interim Assistant Vice President
      for Administrative Services (Committee Chairman)

SUBJECT:    *Screening for Position of Director of Police and Security*

1.    Re:    Your Memorandum to me dated April 25, 2005, Subject: Director
        of Police and Security.

2.    Herewith attached please find results of subject screening.

3.    This was a very deliberate process that allowed the interviewing of three
     (3) candidates, Interim Chief Vicky Arrington, ASU, Captain Virgil
     Merrit, ASU, and Investigator Donnie Nunley, State of Alabama. Upon
     comprehensive review and analysis the final ranking of candidates is as
     follows:

|   |   | Points (See Tally) |
|---|---|---|
| a. | Vicky Arrington | 65 |
| b. | Virgil Merrit | 65 |
| c. | Donnie Nunley | 61 |

4.    Though there is a tie (point allocation) between candidates a & b. Scores
     vary by category relative to degrees of strength. These results are hereby
     submitted for your final assessment and consideration. Should you require
     additional information, please inform.

Enclosures:    Tally Sheet (1)
               Job Announcement (1)
               Personnel Files (3)
               Screening Forms (3)

ALABAMA
STATE
UNIVERSITY
P.O. BOX 271
MONTGOMERY,
ALABAMA
36101-0271
334.229.6994
www.alasu.edu

## T A L L Y

| Categories: | Ed/ Trng | Work Ex. | Comm Oral | Comm Written | Per App | **Total** |
|---|---|---|---|---|---|---|
| Arrington | 13 | 12 | 12 | 13 | 15 | **65** |
| Merrit | 13 | 13 | 11 | 13 | 15 | **65** |
| Nunley | 12 | 12 | 10 | 12 | 15 | **61** |

# EXHIBIT 8



# CONFIDENTIAL

OFFICE OF PERSONNEL

AND HUMAN RELATIONS

## MEMORANDUM

TO:        President Joe A. Lee

FROM:    Olan L. Wesley, Director
            Personnel and Human Relations

DATE:    June 27, 2005

RE:        Recommendation for Appointment of Director of Police and Security

Request that the Office of the Vice President for Administrative Services Memorandum, Recommendation for Appointment of Director of Police and Security, dated June 15, 2005 (attached) be rescinded.

It is my opinion that the rationale and recommendations used in the above memo leave the University and Police Department at risk for unwarranted and unnecessary criticism. This memo invites and encourages potential litigation concerning the method used in the selection and appointment process for the Director of Police and Campus Security at Alabama State University. In addition, the recommendation to increase Mrs. Arrington's salary poses a concern in that Mrs. Arrington will be reassigned to the position of Police Investigator which she previously held; the budgeted salary for this position in 2005 is $31,734 at Grade XIV, Step 5. Dr. Frazier's recommendation is to reassign a salary of $37,722, Grade XIV, Step 12, effective July 15, 2005, a violation of University policy. In accordance with the University's **Non-Academic Handbook**, Para 8.2, the authority to change or assign a salary at Step 12 lies only with the Board of Trustees.

In Dr. Frazier's concluding remarks he states "I believe that the above recommendations and rationale provide for the interests of the Department's effectiveness within the framework of available candidates, and gives appropriate deference to the first female Police Chief at the University." This statement is in contradiction to the University's **Non-Academic Handbook,** Para 2.3 which states that: "Objective criteria are the primary basis for selection. Each applicant is considered on the basis of his/her skills, knowledge and abilities."

In conclusion, I recommend that the position be re-opened for ten (10) days and a new screening committee be appointed by the Vice President for Administrative Services. I further recommend, that one member of the committee be appointed from outside the area, perhaps from Student Affairs. The screening committee will submit the top three names to

ALABAMA

STATE

UNIVERSITY

P.O. BOX 271

MONTGOMERY,

ALABAMA

36101-0271

334.229.4667

334.265.0697 FAX

www.alasu.edu



**Recommendation for Appointment of Director of Police and Security**
**Page 2**
**June 27, 2005**

the Area Vice President who will make recommendation to the President, and the President will make the final appointment subject to approval by the Board of Trustees.

Enclosure

jw

O.L.W.

Approved: _____    Disapproved: _____


Date: _____    Date: _____

# EXHIBIT 9

ASU

OFFICE OF PERSONNEL

AND HUMAN RELATIONS

# MEMORANDUM

TO:  Dr. Leon Frazier
Vice President for Administrative Services

FROM:  Olan L. Wesley, Director
Personnel and Human Relations

DATE:  July 18, 2005

RE:  Director of Police and Security

Dr. Joe A. Lee has approved the re-opening of the Director of Police and Security
position for ten (10) days (see attached). The advertisement for Director of Police and
Security is attached for your approval. If you desire to make any changes please feel free
to do so and return to the Office of Personnel and Human Relations for posting as soon as
possible, but not later than Wednesday, July 20, 2005.

O. L. W.

jw

Attachment

ALABAMA

STATE

UNIVERSITY

P.O. Box 271

MONTGOMERY,

ALABAMA

36101-0271

334.229.4667

334.265.0697 FAX

www.alasu.edu

# EXHIBIT 10

# POSITION AVAILABLE
# ALABAMA STATE UNIVERSITY

**915 South Jackson Street ● Montgomery, AL 36101-0271**
Voice: (334) 229-4667 ● Fax: (334)265-0697 ● ASU Job Line: (334) 229-5627(JOBS)



## AFFIRMATIVE ACTION/EQUAL OPPORTUNITY EMPLOYER

**Date Posted:** July 21, 2005          **Classification: Administrative**
**Closing Date:** August 4, 2005

### To download an application form visit our website @ www.alasu.edu/hr

## DIRECTOR OF POLICE AND CAMPUS SECURITY (JC-4001)
## (Search Re-Opened)

Alabama State University, Division of Administrative Services, invites applications to fill the position of Director of Police and Campus Security. The successful applicant will manage the operation of the University Police Department providing Law enforcement, security surveillance, escorts, general investigations, communications, contracts and related business operations.

## Qualifications:

Bachelor's degree in criminal justice, public or business administration or closely related field. Master's degree preferred in one of the preceding areas. Extensive knowledge of modern police methods, procedures and administration; thorough knowledge of business management practices and principles; ability to exercise effective administrative and technical supervision over sworn and non-sworn security personnel engaged in law enforcement activities and the ability to exercise judgment and discretion in applying and interpreting departmental policies and procedures.

## Salary:
Competitive

## Starting Date:
Immediately following selection and approval of a candidate.

## TO APPLY:
Interested applicants should submit an employment application form listing the names, address and phone numbers/email address of the three professional references on the reference sheet, transcripts and resume to:

### Office of Personnel and Human Relations
Alabama State University
P. O. Box 271
Montgomery, AL   36101

*Alabama State University is an Affirmative Action/Equal Opportunity Employer*

Exhibit

# EXHIBIT 11

**ALABAMA STATE UNIVERSITY**

**PERSONNEL AND HUMAN RELATIONS**





RECEIVED
JUN 7 2006
PERSONNEL & HUMAN RELATIONS

## SCREENING APPLICANTS/INQUIRIES FOR VACANT POSITIONS

**POSITION:** Director of Police & Campus Security _____ **POSITION #:_____**

| SOL/UNS | RACE | FIRST SCREENING (Alphabetical Order) | SECOND SCREENING (Order of Preference) | FINALIST |
|---------|------|--------------------------------------|----------------------------------------|----------|
| Sol | Black | Mrs. Vicky Arrington | Mr. Jeffrey Young | Mr. Jeffrey Young**** |
| Sol | Black | Mr. Marion Brock, III | Mrs. Vicky Arrington* | Mr. Virgil Merritt |
| Sol | Black | Mr. Andy Dowell | Mr. Virgil Merritt | Mr. Marion Brock, III |
| Sol | Caucas | Mr. Mark Mathies | Mr. Mark Mathies** | |
| Sol | Black | Mr. Virgil Merritt | Mr. Marion Brock, III | |
| Sol | Black | Mr. Jeffrey Young | Mr. Andy Dowell*** | |

*Mrs. Vicky Arrington declined to be interviewed.
**Mr. Mark Mathies could not be reached for interview. (Ph No. not in service/
    disconnected/customer not available messages received on four attempts.)
***Mr. Andy Dowell was unable to appear for interview.
****After screening all files and interviewing applicants who accepted the
invitation to appear before the Committee, we strongly recommend Mr. Jeffrey
Young as top applicant for this position.

**Successful Applicant**

# ALABAMA STATE UNIVERSITY

## PERSONNEL AND HUMAN RELATIONS



## SCREENING APPLICANTS/INQUIRIES FOR VACANT POSITIONS

**POSITION:** Director of Police & Campus Security          **POSITION #:**_____

| SOL/UNS | RACE | FIRST SCREENING (Alphabetical Order) | SECOND SCREENING (Order of Preference) | FINALIST |
|---------|------|--------------------------------------|----------------------------------------|----------|
| Sol | Black | | | Mr. Jeffery Young |
| Sol | Black | | | Mr. Virgil Merritt |
| Sol | Black | | | Mr. Marion Brock, III |

**Successful Applicant**
Mr. Jeffrey Young

# ALABAMA STATE UNIVERSITY
## PERSONNEL AND HUMAN RELATIONS



## AFFIRMATIVE ACTION PERSONNEL COMPLIANCE REPORT

**PERSON RECOMMENDED:** Jeffrey Young

**TITLE:** Director of Police & Campus Security

( ) New Position
(X) Replacement for Ceasar Moss
If Replacement, Race __B__ Sex __M__    Salary _____ of previous incumbent.
**COLLEGE:** Administratiave Services    **DEPT:** Police & Security
**APPLICATION DEADLINE:** Aug. 4, 2005    **STARTING DATE** ASAP following appt.

**SALARY RANGE:** $48,571-56,327    **ACCOUNT #** 216150-124 **POSITION #:** _____

---

**\*TOTAL NUMBER OF APPLICANTS:** _____

FEMALE: __3__    MALE: __15__
BLACK: _unk_ WHITE: _unk_    OTHER: _unk_

**TOTAL APPLICANTS INTERVIEWED:**

BLACK: _3_ MALE: _3_ FEMALE: _0_
WHITE: _0_ MALE: _0_ FEMALE: _0_
OTHER: _0_ MALE: _0_ FEMALE: _0_

### 3 TO 5 APPLICANTS IN RANK ORDER
**NAMES**    **RACE/SEX**

1ST.    Jeffrey Young
2ND.    Virgil Merritt
3RD.    Marion Brock, III
4TH.    _____
5TH.    _____

**SEARCH COMMITTEE MEMBERS:**    **RACE/SEX**

1. Mr. Joseph Pace, Chair
2. Mr. Lewis Black
3. Mrs. Jessyca Darrington
4. Mrs. Gloria Julius
5. Mr. Henry McCreary

**RECOMMENDATION( JUSTIFICATION OF APPOINTEE):**
Mr. Jeffrey Young was selected
after being determined most
suitable of those who availed
themselves for interview.

**ADVERTISEMENT DOCUMENTATION:**
**LIST BELOW & ATTACH DOCUMENTATION**
Attached

**ATTACH JOB DESCRIPTION**

**MUST BE REVIEWED BY THE FOLLOWING PERSONS BEFORE A JOB OFFER IS MADE:**

Joseph Pace    6/7/06
**CHAIR OF SEARCH COMMITTEE**    **DATE**

**COLLEGE DEAN/DEPARTMENT HEAD**    **DATE**

Leon Frazier, VP for Admin. Svcs.    6/7/06
**AREA VICE PRESIDENT**    **DATE**

Olan Wesley
**DIRECTOR OF PERSONNEL**    **DATE**

### ALABAMA STATE UNIVERSITY
### PERSONNEL AND HUMAN RELATIONS



> **EMPLOYMENT APPLICATION CHECKLIST**
> **(NON-ACADEMIC)**

1.  College, School or Area: __Administrative Services Division__

2.  Department: __Police & Campus Security__

3.  Recommended Academic Rank and/or Title: __Director__

4.  Area of Specialization: __Law Enforcement/Public Safety__

5.  Recommended Salary: __$56,327__

6.  Source of Funds: __General Fund__

7.  Budget Position Number: _____

8.  Desired Beginning Date of Employment: __July 1, 2006__

9.  Was a request for authorization to Fill a Vacancy Secured?  ( X ) Yes        ( ) No

10. Was the position announcement prepared on the basis of the position description from the request for Authorization to Fill Vacancy?  If no, why not? **Yes**

11. List the name and address of each organization to which the position announcement was sent.  (Use the back of this sheet if more space is needed).  **Alabama State Employment Services. 1060 A. East South Blvd., Montgomery. Alabama  36116-2338: Alabama State University Job Line and Alabama State University website @ www.alasu.edu:**

12. Was the position announcement published?   If yes, list the publications in which the position was advertised. **No**

1

13. Was the position announcement sent to other institutions, placement services and/or agencies? ( X ) Yes    (  ) No.   If yes, list below.  If no, why not? Use space provided for explanation. **National-Wide Personnel; Southeastern Personnel and Local Personnel agencies and institutions of Higher Education**

14. Were efforts made to determine the availability of qualified whites, other non blacks and females for the position?  If yes, what efforts?  If no, why not? **Yes, See #11**

15. Were active efforts made to inform potential white and other non black applicants of the vacancy?  If yes, what were the efforts?  If no, why not? **Yes, See # 11**

16. How many applications were received?     18

        **(a)**     **Number of solicited applications:** _____18_____

        **(b)**     **Number of unsolicited application:** _____0_____

        **(c)**     **Number of completed applications:** _____6_____

        **(d)**     **Are all applications on file?**     ( x ) **Yes**    (  ) **No**

17. What method was used in the preliminary screening of applications?
   Qualification Screening by Personnel Office

18. What method was used for selection of applicants for interview?
   Second Level Screening of Applications by Committee

19.    Applicants interviewed:

(a)    Were they all required to make some form of presentation?

(x ) Yes        ( ) No

(b)    Did they meet with all departmental staff members?

( ) Yes        (X ) No

(c)    Did they all meet the Department Head, Director or Dean?

(X ) Yes        ( ) No

(d)    Did they all meet the area Vice-President?

( x) Yes        ( ) No

If the answer to any of the above is no, explain.  Not required

20.    Compile the following information about applicants for whom complete applications received and interviews were conducted.

| Race and Sex | NUMBER OF APPLICANTS | |
|---|---|---|
| | With Completed Applications | Who were interviewed |
| Black Males | 5 | 3 |
| Black Females | 1 | 0 |
| White Females | 0 | 0 |
| Other Males | 0 | 0 |
| Other Females | 0 | 0 |
| Total Number | 6 | 3 |

21.    List the name, race, and sex of the selected candidate.

Jeffrey Young _____     Black _____     M _____
Name                                 Race              Sex

3

22.    What procedure was used to make the final selection?

Interview with Vice President and Assistant Vice President

23.    Why was this candidate selected over candidates for whom complete applications were received and interviews were held?

Most Suitably Qualified

24.    Signatures: (Required)

_____
Department Head/Chairperson/Director

_____
Date

_____
College/School/Dean

_____
Date

_____
Area Vice President

6/7/06
Date

_____
Director of Personnel Services & Human Relations

6/7/06
Date

4

# EXHIBIT 13



OFFICE OF PERSONNEL

AND HUMAN RELATIONS

# MEMORANDUM

TO:     Dr. Leon Frazier
        Vice President for Administrative Services

FROM:   Olan L. Wesley, Director
        Personnel and Human Relations

DATE:   July 18, 2006

**RE:     Notification to Applicants (Director, Police and Campus
        Security)**

In response to your inquiry regarding notification of applicants of the re-opening
of the Director of Police and Campus Security position.  The announcement for
this position was first posted on February 10, 2005 thru March 9, 2005 and again
on July 21, 2005 thru August 4, 2005 (attached).  After the second posting, the first
screening of all eligible applicants was made and a selection was made but the
appointee declined the offer of employment.  None of the applicants were notified
of the selection of an applicant, because a contract had not been approved.  The
position was not re-posted, the screening committee completed a second screening
of all applicants who had completed applications on file and Mrs. Vicky Arrington
was contacted for an interview however she declined (attached).

After interviewing all eligible candidates who had agreed to appear before the
committee for an interview, a selection was made.  After a contract had been
approved and the appointee had agreed to accept the position by signing the
contact, all applicants who had applied for the position of Director of Police and
Campus Security were notified of their non-selection by letter dated June 26, 2006
(attached).

If you have any questions, please contact me at extension 4667.

**ALABAMA
STATE
UNIVERSITY**
P.O. BOX 271
MONTGOMERY,
ALABAMA
36101-0271
334.229.4667
334.265.0637 FAX
www.alasu.edu

O. L. W.

jw

Enclosures



# EXHIBIT 14

# ALABAMA STATE UNIVERSITY
**Montgomery, Alabama**

# APPLICATION FOR EMPLOYMENT
Request for information Concerning Training and Professional Experience



**Affirmative Action/Equal Opportunity Employer**

Position for which you are applying  <u>Director of Police and Campus Security</u>
*Please be specific, applicant will be considered only for the position designated. One position per application.*

Area of your highest major/specialization  <u>Graduate Degree</u>

Name in full  <u>Jeffrey</u>           <u>H.</u>                    <u>Young</u>
                First Name              MI        (Maiden)        Last Name

(Check one)    ( )Dr.    ( X )Mr.    ( ) Miss    ( )Ms.       ( )Mrs.

Social Security Number▓▓▓▓▓▓▓ *Race <u>Black</u>    Sex: ( X) Male ( ) Female

Present Address  <u>3240 virginia Pines Lane   apt E</u>
                                    (Street)
<u>Montgomery</u>
                                    (city)
<u>Alabama</u>                          <u>36116</u>
        (State)                      (Zip Code)
<u>334-284-9130</u>
                    (Telephone Number)

Home Address  _____
                                    (Street)
_____
                                    (city)
_____
            (State)        Zip Code)
_____
                    (Telephone Number)

**\*This information requested ONLY to assist the University in complying with provision of a federal court order**



Exhibit

SCT # 615002

Name _Jeffrey Young_ _____ Visa Status (Citizenship) _____
**(Please Print or Type)**

**Scholastic training:** Give names of institutions attended as indicated below:

| 1. Institutions: Name and Address | Circle Highest Grade Completed | Dated Completed |
|---|---|---|
| a. Grammar or High School   Fairfield Adult School | 1 2 3 4 5 6 7 8 9 10 11 12 | 7/83 |

| b. Business, Trade or Correspondence School   Course(s) Studied | | Date Started | Date Completed |
|---|---|---|---|
| | | | |
| | | | |

| College or University | Quarter/Semester | Degree | Date Started | Date Completed |
|---|---|---|---|---|
| Auburn University Montgomery | | B.S | 4/98 | 12/01 |
| Auburn University Montgomery | | M.S | 1/02 | 8/03 |
| | | | | |
| | | | | |

2.  Field of Study: _Justice & Public Safety_ _____

| | Major | Quarter/Semester Hours | Minor | Quarter/Semester Hours |
|---|---|---|---|---|
| Undergraduate Degree | Law Enforcement Adimistration | 132 | | |
| Master's Degree | Justice & Public Safety | 33 | | |
| Doctorate Degree | | | | |

Total quarters/semester hours earned beyond highest degree _____

3. Teaching/Administrative Experience  (Start with most recent position):

| Ranking and Teaching | | College or University | Reason for Leaving | Last Annual Salary |
|---|---|---|---|---|
| From | To | Description of Duties | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Total years of experience:** Teaching: Below College _____ College _____ At ASU _____
Administrative:   Below College _____ College _____ ASU _____

4. Business or other Professional Experience

Alabam Peace Officer   1994

**EMPLOYMENT HISTORY**

Beginning with your Present or most recent employment. Each time you changed jobs or your title changed (list as a separate period). Give complete information, especially about the kind of work you did. Be sure to include and describe your military experience, if any.

| Dates From: | To: | Occupation & Specific Duties | Employers Name & Address | Annual Salary | Reason for Leaving |
|---|---|---|---|---|---|
| 8/94 | Present | Deputy Chief | Auburn Montgmery | 36,700.00 | Advancement |
| 1/93 | 8/94 | Sergeant | Tuskegee Univ. | 17,000.00 | Advancement |
| 3/79 | 9/92 | Security Spec. | U.S. Air force | 17,000.00 | Honorable Discharge |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Show Other Experience By Using Additional Sheets**

5. Present Position ___Deputy Chief of Police_____

Appointment Date __5/04___ Annual Salary $ _36,700.00_ Number of Months of Service per year. _12_

6. Have you ever failed to obtain reappointment? __N/A_____ If "yes" give date(s) and school(s)

7. Do you presently hold academic tenure? _____ _____ If "yes" give date(s) and school(s)

8. List principal faculty committees on which you have served during the past five years. If an officer, indicate with an asterisk (*) and give dates.  Strategic Planning

9. Honors (honorary societies, scholarships, prizes, etc):
   ODK, Staff Scholorship 2000

10. List memberships in learned and professional societies:

11. Publications (Please submit copies, if possible)

12. State how you learned of the position for which you are making application.
    University web site

13. If this institution hires you, whom should we notify in case of emergency?

    Donna Young        334-284-9130


Name  Donna Young                              Telephone Number  334-284-9130

Relationship  spouse                  Alternate Telephone Number  334-538-5012

Address  3240 virginia Pines Lane  Montgomery, Al. 36116
                Street                      City            State        Zip Code

Note: If additional space is required to fully respond to any question, please attach an additional sheet of plain paper and indicate the question number to which the response pertains.

This application will remain active for _One_ calendar year following receipt in the office of Personnel and Human Relations.

I hereby grant permission for Alabama State University to obtain any and all information deemed necessary to process my employment application. This information includes, but not limited to, my past and present employment status and credit record.

I CERTIFY THAT the information in this application is correct and true; is offered as inducement for employment; and I understand that any critical data concerning my qualifications for the position that are withheld or false will render any employment contract null and void.

Date _____  Signature _____

Enclosed resume', undergraduate and graduate transcripts, reference sheet listing the names, address and phone number of the most recent three employers. Applicants without an employment history are asked to provide the names, phone number and address of three character references to

**Personnel and Human Relations**
**Alabama State University**
**915 South Jackson Street**
**Montgomery, Alabama 36104**


## APPLICANT DATA RECORD

**Jeffrey Young**

3240 Virginia Pines Lane
Montgomery, Al. 36116
Hm 334-284-9130 cell 334-850-7657
jeffrey_y@hotmail.com

August 1, 2005

Subject: Employment as Director of Police and Campus Security

I would like to be considered for the Director of Police and Campus Security position with your organization. Currently I am the Deputy Chief of Police at Auburn University Montgomery, Montgomery, Al. I have been at this institution for the ten years where my duties have given me expertise in all areas of law enforcement operations. My position is responsible for overseeing all operational facets of the department to include: patrol, investigations, training and certification, scheduling of personnel, surveillance equipment monitoring and installation. I also work closely with staff members from both Student Affairs and Housing and Residence Life on matters pertaining to student activities outside of the classroom.

The unique opportunity given to those of us that work in higher education I find rewarding and challenging. The diverse community makes for a wonderful opportunity to touch the lives of so many different individuals, and at the same time being responsible for the overall protection of that community is a challenge.

My philosophy for policing in the academic environment is one where property is protected, and persons are safe. This can be achieved through the efforts of community policing, instilling a feeling of inclusion in personnel, and the development of relationships throughout the campus will result in public safety program that will be exemplary.

My law enforcement career consists of twelve years working in the higher education area and over thirteen years as a Security Police Officer in the United States Air Force, where my last assignment was as an instructor at the U.S.A.F. Security Police Academy. There my primary duties were the training of police personnel, both military and civilian law enforcement officers. Other positions held in the military were, Flight Chief, and Area supervisor.

I am currently looking to expand into a position of greater responsibility where my experience will be a benefit to any organization.

Jeffrey Young
3240 Virginia Pines Lane
Apt E
Montgomery, Al. 36116

Home 334-284-9130

Jeffrey_y@hotmail.com

---

Law Enforcement Professional

### Summary of Qualifications

· Disciplines self starter who demonstrates high standards of professional conduct.

· Strong planning, organizing, coordinating, and leadership skills. Works well under
  pressure and consistently meets deadlines.

· Effective communicator, proven ability to work with diverse population of people.

· Maintains excellent relationships with superiors, subordinates, administration and
  students.

· Works well in teams or independently.

· Over 25 years successful experience in Law enforcement and Military police
  activity. Conducting criminal investigations that led to convictions. Presented evidence and
testimony to courts, to include Federal, State, and Municipal.

· Collection of evidence, property room management, and evidence destruction knowledge.

· Key control and computer security plans significantly reduced loss from theft.
  Funds handling procedures at the departmental level directly led to loss and
  but through crime prevention and training losses were significantly reduced.

· Made presentations to parents and students during orientation highlighting crime
  prevention, personal, security. The administration policy of zero tolerance for drugs and
  inter-personal violence.

· Responsible for indoctrination training of new officers. Conduct background checks of
  potential employees.

## Professional Skills

### Leadership

· Professional achievements and ability to lead in any organizational environment.

· Selection for special assignments both in both military and civilian police organizations.

· Supervised organizations ranging from 3-100 civilian and military personnel. Over 20 years of experience supervising in police organizations.

### Training

· Several supervisory and leadership courses, law enforcement supervision, supervisor safety and diversity training.

· Multiple basic and advanced investigative courses, to include sexual assault, homicide and criminal. FBI fingerprinting training, and Department of Defense anti-terrorism course.

· Instructor certified prior assignment to U.S. Air Force Security Police Academy.

### Analytical

· Problem solver who draws upon in-depth knowledge and experience.

· Repeatedly exceeded expectations in case investigations and suspect interviewing which led to successful adjudication.

· Introduced new technology to improve security, safety and resource protection.

### Decision Making

· Most capable of making independent judgments and decisions in stressful situations.

· Have supervised emergency response to bomb threats, aircraft crash scenes, and major vehicle accidents, and been first on scene of major criminal incidents which required multiple notifications, and preservation of crime scene, separation and initial interviews of witnesses.

**Planning**

· Coordinated with Federal, State, Municipal law enforcement agencies to provide security for Presidential visit which occurred on March 10, 2005

· Coordination with other agencies contributed to successful investigations, and additional law enforcement presence at university activities.

· Selected to write several operating procedures which were implemented and serve as procedures to be followed by all officers.

· Vehicle control officer, responsible for insuring maintenance was performed and vehicles kept in good repair.

**Supervision**

· Know and understand worth and dignity of personnel and how to implement this human factor into daily leadership.

· Motivation is easy if you can instill a sense of ownership in subordinates.

· Delegation of responsibilities is key career progression, building individual knowledge and increased performance.

· Getting quality training for personnel is a factor in developing professional performance.

**Computers**

· Proficient in many windows based programs, including Microsoft Word, Excel, Banner

**Work experience**

Auburn University Montgomery, Montgomery, Alabama 1994-present
Deputy Chief of Police, responsible for Operations, Investigations, Training, and scheduling, Communications.

Tuskegee University, Tuskegee Institute, Alabama 1993-1994
Sergeant, supervise security staff for Kellogg Conference center, patrol operations.

United States Air Force, Various locations worldwide 1979-1992
Instructor Security Police Academy, Area Supervisor, Flight Chief
Supervised Security personnel protecting priority resources.

**Education**

Master of Science, Justice & Public Safety, Auburn University Montgomery
Montgomery, Alabama. 2003

Bachelors of Science, Law Enforcement Administration, Auburn University
Montgomery, Montgomery, Al. 2001

Intelligence for Police Managers, 2005
Regional Counterdrug Training academy

Alabama Peace Officer, Montgomery Police Academy, Montgomery, Al. 1994

References:

Dr. Judd Katz, Assistant Vice Chancellor for Academic and Graduate Affairs,
Auburn University Montgomery.
P.O.Bx 244023
Montgomery, Al. 36124
334-244-3539, dshaw@mail.aum.edu

Pam McNeil, Administrative Associate,
Auburn University Montgomery.
P.O.Bx 244023
Montgomery, Al. 36124
334-244-3487, pmcneil@mail.aum.edu

Dr. Glen Ray, Associate Dean, School of Sciences,
Auburn University Montgomery Auburn University Montgomery.
P.O.Bx 244023
Montgomery, Al. 36124
334-244-3690, gray@mail.aum.edu

# Alabama  State University

**P. O. Box 271 ▢ Montgomery, AL 36101-0271**
**Voice: (334) 229-4667 ▢ Fax:  (334)265-0697 ▢ ASU Job Line: (334) 229-5627**

## Reference Sheet

**Please list the last three employers. Applicants without employment history must submit three character references.**

| Name | Title | Employment Location | Phone/Email Address |
|---|---|---|---|
| Dr. Judd Katz | Asst. Vice Chancellor Academic and Graduate Affairs | Auburn University Montg. | 334-244-3539 dshaw@mail.aum.edu |
| Dr. Glen Ray | Associate Dean School of Sciences | Auburn University Montg | 334-244-3690 gray@mail.aum.edu |
| Dr. William Osterhof | Professor | Auburn University Montg | 334-244-3693 |

**This application package will remain active for <u>ONE calendar</u> year following receipt in the office of Personnel and Human Relations.**

**I hereby grant permission for Alabama State University to obtain any and all information deemed necessary to process my employment application.  This information includes, but not limited to, my past and present employment status and credit record.**

**I CERTIFY THAT the information in this application is correct and true; is offered as inducement for employment; and I understand that any critical data concerning my qualifications for the position that are withheld or false will render any employment contract null and void.**

Date  8-1-05          Signature _____

**PRINT Name:** Jeffrey Young          **Position:** Director of Police and Campus Security

# EXHIBIT 15

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Vicky B. Arrington<br>Post Office Box 6344<br>Montgomery, AL 36106 | From: | U.S. Equal Employment Opportunity<br>Commission Birmingham District<br>Ridge Park Place - Suite 2000<br>1130 22nd Street, South<br>Birmingham, AL 35205 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420 2007 01263 | M. Grandison | (205) 212-2111 |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Delner Thomas-Franklin, District Director

**8 MAY 2007**
*(Date Mailed)*

Enclosure(s

cc: **Amardo Wesley Pitters, Esquire**
**Law Offices of A. Wesley Pitters, P.C.**
**1145 South Perry Street**
**Montgomery, AL 36104**

**Thomas, Means, Gillis & Seay, P.C.**
**Attorneys and Counsellors at Law**
**Alabama State University**
**P. O. Drawer 5058**
**Montgomery, AL 36103-5058**

Enclosure with EEOC
Form 161 (3/98)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --**    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of **this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. **For example**, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 -- *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request <u>within 6 months</u> of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT 16

EEOC FORM 131 (5/01)

# U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| JOE A LEE<br>PRESIDENT<br>ALABAMA STATE UNIVERSITY<br>P. O. BOX 271<br>MONTGOMERY,   AL    36101 | **Vicky B. Arrington** |

THIS PERSON (check one or both)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.

**420-2007-01263**

## NOTICE OF CHARGE OF DISCRIMINATION
(See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act

[ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act

[ ] The Equal Pay Act

**RECEIVED**

JAN 08 2007

**Alabama State University**
**Office of the President**

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by   **05-FEB-07**   a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by                    to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
to
If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Booker T. Lewis,
Enforcement Supervisor

EEOC Representative

Telephone:  **(205) 212-2115**

**Birmingham District Office - 420**
**Ridge Park Place**
**1130 22nd Street, South**
**Birmingham, AL 35205**

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| January   05,<br>2007 | Delner Franklin-Thomas,<br>District Director | *[signature]* |

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

| ENTER CHARGE NUMBER |
| --- |
| ☐ FEPA |
| ☐ EEOC  420-2007-01263 |

_____ and EEOC
*(State or local Agency, if any)*

NAME *(Indicate Mr., Ms., or Mrs.)*
VICKY B. ARRINGTON

HOME TELEPHONE NO. *(Include Area Code)*
334-281-1425

STREET ADDRESS    CITY, STATE AND ZIP CODE
P.O. BOX 6341  MONTGOMERY, AL 36106

COUNTY
MONTGOMERY

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

NAME
Alabama State University

NO. OF EMPLOYEES/MEMBERS
more than 15

TELEPHONE NUMBER *(Include Area Code)*
334-229-4200

STREET ADDRESS
915 South Jackson Street

CITY, STATE AND ZIP CODE
Montgomery, AL 36104

NAME

TELEPHONE NUMBER *(Include Area Code)*

STREET ADDRESS

CITY, STATE AND ZIP CODE

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*
☐ RACE  ☐ COLOR  ☑ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ AGE  ☑ RETALIATION  ☐ OTHER *(Specify)*

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE *(Month, day, year)*
July 1, 2006 & Continuing

THE PARTICULARS ARE *(If additional space is needed, attached extra sheet(s)):*

My name is Vicky Arrington. My date of birth is October 30, 1966. My social security number is 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. I am filing this charge alleging employment discrimination and retaliation against my employer, Alabama State University. The most recent date of discriminatory conduct is July 1, 2006 and there is a continuing violation subsequent thereto. I have been deprived of my civil rights as protected by the Constitution and laws of the United States, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended.

My allegations of fact are more specifically set forth in the attached appendix.

RECEIVED
EEOC

DEC 21 2006

BIRMINGHAM DISTRICT OFFICE

☐ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing f my charge in accordance with their procedures.

declare under penalty of perjury that the foregoing is true nd correct.

NOTARY - *(When necessary to meet State and Local Requirements)*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)*

Gender discrimination and retaliation are apparent considering the following factual allegations in conjunction with the foregoing factual allegations: As interim Chief of Police I spearheaded an investigation into allegations of possible violation of Alabama Ethics Law by Margaret Bradley, principal at Alabama State University's satellite campus (Southern Normal School) in Brewton, Alabama. Upon information and belief, Dr. Bradley is a friend of President Joe Lee. Upon information and belief, the third ranked applicant is from Brewton and a cousin of Dr. Bradley. He was recommended to be hired to fill the vacancy of Police Chief. Upon information and belief, he was disqualified for allegedly fabricating his qualifications. The second ranked applicant received a letter from the University regarding the Screening Committee. I never received any correspondence. In either March or April of 2006 I received a call from Mr. Joe Pace, representing himself to be the Char of a Screening Committee for applicants for the vacant Chief o Police or Director of Police and Security for Alabama State University. He told me that he had two appointment times, one at 11:00 a.m. and the other at 2: 00 p.m., and that I need to select which one I wanted. I told Mr. Pace that I was not aware that the prior Screening Committee was dissolved and plus I was not being afforded adequate notice. He rather impertinently suggested that I called Dr. Frazier (Leon Frazier, Vice President of Administrative Services). I contacted Dr. Frazier who represented that he would get back to me. He never did. The next I heard was some time in June 2006 I was told that Alabama State University had hired a new Chief of Police & Director of Campus Police and Security, and that he would be reporting on July 1, 2006. I was demoted to the position of Police Investigator and notwithstanding promises that I would not have to report to employees of the police department that I previously

supervised as police chief, I have been subjected to all kinds of ridicule and a hostile work environment by the new Police Chief and others at Alabama State University.

My retaliation claims pertaining to University officials in their actions in denying me the position of Police Chief or Director of Police and Security because of my investigations at Southern Normal School.   Further retaliation has to do with the hostile environment as perpetrated by current Chief of Police or Director of Police & Security Jeffery Young.  It is apparent to me that Chief Young is on a mission to make my life miserable.  The hostility he exhibits toward me is self-evident.  He has subjected me to numerous write ups and adverse memoranda.  I have complained to those higher up in the chain of command, including, but not limited to President Lee and Dr. Leon Frazier. Chief Young has taken adverse actions against me regarding my work station, my parking and driving privileges, my uniform, he has intercepted my mail and without authorization opened the same, and he has subjected me to ridicule by having me be supervised by co-employees such as Cpl. Waters, Anderson and Sgt. Crumbie, whom I previously supervised.  He has written me several inflammatory and hostile memoranda. To that end I contend that I am experiencing discriminatory conduct of a nature that is tantamount to a continuing violation.

RECEIVED
EEOC

My gender discrimination claims relates to my denial of the position of Chief of Police or Director of Police & Security Jeffery Young and being passed over twice of someone (a male) outside of my office.  I was treated less favorably that the other males applicants, yet I was ranked number 1 by the screening committee.  Not only did I suffer disparate treatment with respect to the hiring process for a new police chief, but also I suffered gender discrimination at the hands of Alabama State University with respect to

## APPENDIX: EEOC CHARGE OF DISCRIMINATION

### *Vicky Arrington  v. Alabama State University*

In August 2002 I was hired as a police investigator with Alabama State University. The University's Chief of Police at the time was Caesar Moss, a male. He had been the Chief of Police for several years. He was activated by the United States Military and was deployed to Iraq in January 2003. I was appointed Interim Police Chief, also referred to Director of Police & Security for the University. I served the University as Police Chief or Director of Police & Security and executed my duties and responsibilities "valiantly and conscientiously." In January 2005, the position of Chief of Police or Director of Police and Security for Alabama State University became vacant when, upon his return to the position from Iraq, Chief Moss retired. The University, under the auspices of its President Joe A. Lee, its Director of Personnel & Human Relations, Mr. Olan Wesley and its Vice President of Administrative Services, Mr. Leon Frazier, announced a vacancy for the position and solicited applications. The University convened a Screening Committee in furtherance thereof. I applied for the position. I was qualified for the position. I was qualified by having the requisite training, experience and educational background. I have a B.S. Degree in Criminal Justice. I have pursued graduate studies and was very close to completing the curriculum. I was one of three applicants and finalists for consideration by the screening committee for the position. I ranked number one of the three. I was the only female among the three. I was passed over for the position. I believe that I was a victim of gender discrimination. I also believe that I was the victim of retaliation. All in violation of Title VII of Civil Rights Act of 1964, as amended.

my compensation. When I took over as Interim Police Chief for Chief Moss, I was paid

less than not only what he was compensated for performing the same duties and

responsibilities, but also less than what was being paid to the highest ranking officer

beneath me, Captain Merritt, a male. Indeed, the salary offered to the third ranked male

applicant of the first screening committee was more than what I was paid for the years I

served as Interim Police Chief or Director of Police and Security.

I would request that the EEOC conduct an expedited investigation and issue me a

notice of right to sue so that I may proceed with filing a complaint in the United States

District Court for the Middle District of Alabama against Alabama State University,

specifically asserting, among other claims and causes of action, a claim pursuant to Title

VII of the Civil Rights Act, as amended

RECEIVED
EEOC

DEC 2 1 2006
BIRMINGHAM DISTRICT OFFICE

# EXHIBIT 17

# ALABAMA STATE UNIVERSITY
## Montgomery, AL 36101

# TALLY SHEET (SECOND SCREENING)

Name: __Jeffrey Young__

Position: __Director of Police & Campus Security__

| | Score |
|---|---|
| Screener # 1 | 18 |
| Screener # 2 | 16 |
| Screener # 3 | 17 |
| Screener # 4 | 19 |
| Screener # 5 | 18 |
| Screener # 6 | |
| Screener # 7 | |
| Screener # 8 | |
| **Total Score** | 88 |

Comments: _____

_____

_____

_____

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MR. JEFFREY YOUNG

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|-----------|---|---|---|---|---|-------|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | 4.5 | | 4.5 |
| Communications Oral | | | | ✓ | | |
| Communications Written | | | | ✓ | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | 4.5 | | 4.5 |

**Total Score** 18

**Brief Summary Statement:** Excellent candidate

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:**___MR. JEFFREY YOUNG_____

**Position:**___Director of Police & Campus Security_____

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | — |
| Communications Written | | | ✓ | | | 3 |
| Personal Appearance | | | | | | — |
| Overall Suitability | | | | | ✓ | 5 |

**Total Score**__16__

**Brief Summary Statement:**_____

_____

_____

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL 36101

## SCREENING FORM

**Name:** MR. JEFFREY YOUNG

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | | | ✓ | 5 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 17

**Brief Summary Statement:** _____

_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MR. JEFFREY YOUNG

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|-----------|---|---|---|---|---|-------|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | | ✓ | 5 |
| Communications Oral | | | | | | |
| Communications Written | | | | ✓ | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | | ✓ | 5 |

**Total Score** 19

**Brief Summary Statement:** _____

_____

_____

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MR. JEFFREY YOUNG

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | | ✓ | 5 |
| Communications Oral | | | | | | |
| Communications Written | | | ✓ | | | 3 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | | ✓ | 5 |

**Total Score** 18

**Brief Summary Statement:**_____

_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY
## Montgomery, AL 36101

# TALLY SHEET (SECOND SCREENING)

Name: VICKY ARRINGTON

Position: Director of Police & Campus Security

| | Score |
|---|---|
| Screener # 1 | 14.5 |
| Screener # 2 | 17 |
| Screener # 3 | 17 |
| Screener # 4 | 18 |
| Screener # 5 | 17 |
| Screener # 6 | |
| Screener # 7 | |
| Screener # 8 | |
| **Total Score** | 83.5 |

Comments: Applicant declined to appear for interview.

# ALABAMA STATE UNIVERSITY
## Montgomery, AL  36101



## SCREENING FORM

**Name:** MRS. VICKY ARRINGTON

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|-----------|---|---|---|---|---|-------|
| Education/Training | | | 3½ | | | 3½ |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | ✓ | | | 3 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 14.5

**Brief Summary Statement:** _Considerable experience, but difficult to quantify because of inconsistency in date on Appl & Resume. Strong candidate._

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MRS. VICKY ARRINGTON

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | | ✓ | 5 |
| Communications Oral | | | | | | — |
| Communications Written | | | | ✓ | | 4 |
| Personal Appearance | | | | | | — |
| Overall Suitability | | | ✓ | | | 3 |

**Total Score** 17

**Brief Summary Statement:** _____

_____

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL    36101

## SCREENING FORM

**Name:**  MRS. VICKY ARRINGTON

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | | | ✓ | 5 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 17

**Brief Summary Statement:** Criminal Justice

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MRS. VICKY ARRINGTON

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | | ✓ | 5 |
| Communications Oral | | | | | | |
| Communications Written | | | | ✓ | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 18

**Brief Summary Statement:** No Show

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MRS. VICKY ARRINGTON

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | 4 | | 4 |
| Work Experience | | | | 4 | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | | 5 | | 5 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | 4 | | | 4 |

**Total Score** 17

**Brief Summary Statement:**_____

_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY
## Montgomery, AL 36101

# TALLY SHEET (SECOND SCREENING)

**Name:** Virgil Merritt

**Position:** Director of Police & Campus Security

|  | Score |
|---|---|
| Screener # 1 | 14.5 |
| Screener # 2 | 17 |
| Screener # 3 | 18 |
| Screener # 4 | 17 |
| Screener # 5 | 17 |
| Screener # 6 | |
| Screener # 7 | |
| Screener # 8 | |
| **Total Score** | 83.5 |

Comments:

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101



## SCREENING FORM

**Name:** MR. VIRGIL MERRITT

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | ✓ | | | 3 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | 3½ | | | 3.5 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 14.5

**Brief Summary Statement:** Very good candidate

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101



## SCREENING FORM

**Name:** __MR. VIRGIL MERRITT__

**Position:** _Director of Police & Campus Security_

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | | ✓ | 5 |
| Communications Oral | | | | | | |
| Communications Written | | | ✓ | | | 3 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | | ✓ | 5 |

**Total Score** _17_

**Brief Summary
Statement:**_____

_____

_____

**\*Point for each category range from 1 to 5.
Five points is the maximum for each category.**



# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MR. VIRGIL MERRITT

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|-----------|---|---|---|---|---|-------|
| **Education/Training** | | | | ✓ | | 4 |
| **Work Experience** | | | | | ✓ | 5 |
| **Communications Oral** | | | | | | |
| **Communications Written** | | | | | ✓ | 5 |
| **Personal Appearance** | | | | | | |
| **Overall Suitability** | | | | ✓ | | 4 |

**Total Score** 18

**Brief Summary Statement:** _____

_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:**___MR. VIRGIL MERRITT_____

**Position:** _Director of Police & Campus Security_____

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | | ✓ | 5 |
| Communications Oral | | | | | | |
| Communications Written | | | | ✓ | 2 | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | | ✓ | 4 |

**Total Score**_17

**Brief Summary Statement:**_____

_____

_____

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MR. VIRGIL MERRITT

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | 4 | | 4 |
| Work Experience | | | | | 5 | 5 |
| Communications Oral | | | | | | |
| Communications Written | | | | 4 | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | 4 | | 4 |

**Total Score** 17

**Brief Summary Statement:** _____

_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY
## Montgomery, AL 36101

# *TALLY SHEET* (SECOND SCREENING)

Name: __Mark Mathies_____

Position: __Director of Police & Campus Security___

|  | Score |
|---|---|
| Screener # 1 | 18 |
| Screener # 2 | 16 |
| Screener # 3 | 15 |
| Screener # 4 | 16 |
| Screener # 5 | 18 |
| Screener # 6 | |
| Screener # 7 | |
| Screener # 8 | |
| **Total Score** | 83 |

Comments: __Applicant could not be reached for interview._____

_____

_____

_____

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:**  MR  MARK MATHIES

**Position:**  Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | | | ✓ | 5 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 18

**Brief Summary Statement:** Excellent candidate.

**\*Point for each category range from 1 to 5.
Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:**  MR   MARK MATHIES

**Position:**  Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | | ✓ | 5 |
| Communications Oral | | | | | | — |
| Communications Written | | ✓ | | | | 2 |
| Personal Appearance | | | | | | — |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 16

**Brief Summary Statement:**_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

### Montgomery, AL   36101



## SCREENING FORM

**Name:**   MR  MARK MATHIES

**Position:**   Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| **Education/Training** | | | | ✓ | | 4 |
| **Work Experience** | | | | | ✓ | 5 |
| **Communications Oral** | | | | | | |
| **Communications Written** | | ✓ | | | | 2 |
| **Personal Appearance** | | | | | | |
| **Overall Suitability** | | | | ✓ | | 4 |

**Total Score** 15

**Brief Summary
Statement:**

Could meet context

**\*Point for each category range from 1 to 5.
Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:**___MR   MARK MATHIES_____

**Position:**__Director of Police & Campus Security_____

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | | ✓ | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** _16_

**Brief Summary Statement:**_No contact. unable to contact 2/6/0c_

_____

_____

***Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:** MR MARK MATHIES

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | | ✓ | 5 |
| Communications Oral | | | | | | |
| Communications Written | | | ✓ | | | 3 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 18

**Brief Summary
Statement:** _____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY
## Montgomery, AL  36101

# TALLY SHEET (SECOND SCREENING)

Name: Mr. Marion Brock, III

Position: Director of Police & Campus Security

|  | Score |
|---|---|
| Screener # 1 | 15 |
| Screener # 2 | 14 |
| Screener # 3 | 16 |
| Screener # 4 | 17 |
| Screener # 5 | 16 |
| Screener # 6 | |
| Screener # 7 | |
| Screener # 8 | |
| **Total Score** | 78 |

Comments: _____

_____

_____

_____

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101



## SCREENING FORM

**Name:**_  MR. MARION BROCK, III_

**Position:**_ Director of Police & Campus Security_

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| **Education/Training** | | | | ✓ | | 4 |
| **Work Experience** | | | ✓ | | | 3 |
| **Communications Oral** | | | | | | |
| **Communications Written** | | | | ✓ | | 4 |
| **Personal Appearance** | | | | | | |
| **Overall Suitability** | | | | ✓ | | 4 |

**Total Score** _15_

**Brief Summary
Statement:**_ Strong candidate_

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101



## SCREENING FORM

**Name:**  MR. MARION BROCK, III

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| **Education/Training** | | | | ✓✓ | ✓ | 5 |
| **Work Experience** | | | ✓ | | | 3 |
| **Communications Oral** | | | | | | — |
| **Communications Written** | | | ✓ | | | 3 |
| **Personal Appearance** | | | | ✓ | | — |
| **Overall Suitability** | | | ✓ | | | 3 |

**Total Score** 14

**Brief Summary**
**Statement:**_____

_____

_____

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL  36101



## SCREENING FORM

**Name:**  MR. MARION BROCK, III

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | ✓ | | | 3 |
| Communications Oral | | | | | | |
| Communications Written | | | | | ✓ | 5 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 16

**Brief Summary**
**Statement:**_____

_____

_____

***Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101



## SCREENING FORM

**Name:** MR. MARION BROCK, III

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | | ✓ | 5 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | ✓ | | |
| Communications Written | | | | ✓ | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 17

**Brief Summary Statement:** _____

_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:**  MR. MARION BROCK, III

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | | 5 | 5 |
| Work Experience | | | 3 | | | 3 |
| Communications Oral | | | | | | |
| Communications Written | | | | 4 | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | 4 | | 4 |

**Total Score** 16

**Brief Summary Statement:**

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY
## Montgomery, AL 36101

# *TALLY SHEET* (SECOND SCREENING)

Name: _Andy Dowell_

Position: _Director of Police & Campus Security_

|  | Score |
|---|---|
| Screener # 1 | 14 |
| Screener # 2 | 14 |
| Screener # 3 | 14 |
| Screener # 4 | 16 |
| Screener # 5 | 16 |
| Screener # 6 | |
| Screener # 7 | |
| Screener # 8 | |
| **Total Score** | 74 |

Comments: _Applicant unable to appear for interview._

# ALABAMA STATE UNIVERSITY

## Montgomery, AL    36101



## SCREENING FORM

**Name:** MR. ANDY DOWELL

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | ✓ | | | 3 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | ✓ | | | 3 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 14

**Brief Summary
Statement:** _Good Candidate_

**\*Point for each category range from 1 to 5.
Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY

## Montgomery, AL   36101

## SCREENING FORM

**Name:**_____MR. ANDY DOWELL_____

**Position:**_ Director of Police & Campus Security _____

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|-----------|---|---|---|---|---|-------|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | — |
| Communications Written | | | ✓ | | | 3 |
| Personal Appearance | | | | | | — |
| Overall Suitability | | | ✓ | | | 3 |

**Total Score**_14_

**Brief Summary Statement:**_____

_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY

## Montgomery, AL 36101

## SCREENING FORM

**Name:** MR. ANDY DOWELL

**Position:** Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| **Education/Training** | | | | ✓ | | 4 |
| **Work Experience** | | | ✓ | | | 3 |
| **Communications Oral** | | | | | | |
| **Communications Written** | | | | ✓ | | 4 |
| **Personal Appearance** | | | | | | |
| **Overall Suitability** | | | ✓ | | | 3 |

**Total Score** 14

**Brief Summary Statement:**_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.

# ALABAMA STATE UNIVERSITY
## Montgomery, AL   36101



## SCREENING FORM

**Name:**   MR. ANDY DOWELL

**Position:**  Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | | ✓ | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

Total Score 16

**Brief Summary Statement:** No show - Decline the interview 2/6/06

**\*Point for each category range from 1 to 5.**
**Five points is the maximum for each category.**

# ALABAMA STATE UNIVERSITY
## Montgomery, AL  36101

## SCREENING FORM

**Name:**  MR. ANDY DOWELL

**Position:**  Director of Police & Campus Security

| CATEGORY* | 1 | 2 | 3 | 4 | 5 | SCORE |
|---|---|---|---|---|---|---|
| Education/Training | | | | ✓ | | 4 |
| Work Experience | | | | ✓ | | 4 |
| Communications Oral | | | | | | |
| Communications Written | | | | ✓ | | 4 |
| Personal Appearance | | | | | | |
| Overall Suitability | | | | ✓ | | 4 |

**Total Score** 16

**Brief Summary
Statement:**_____

_____

_____

*Point for each category range from 1 to 5.
Five points is the maximum for each category.