UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| VICKY ARRINGTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )   C.A.N.: 2:07-CV-717-MHT |
| | ) |
| ALABAMA STATE UNIVERSITY | ) |
| | ) |
|     Defendant. | ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF HER RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Plaintiff Vicky Arrington (hereinafter "Plaintiff"), by and through her attorney of record, and would submit the following brief in support of her response to Defendant Alabama State University's (hereinafter "ASU" or "Defendant") Motion for Summary Judgment:

**I.  STATEMENT OF THE CASE**

Plaintiff, a female, has worked for Defendant in Montgomery, Alabama, as a police officer continuously since 2002.  In or around January 2003, Plaintiff was appointed Interim Chief of Police by Defendant.  Thereafter, Plaintiff sought a permanent position with Defendant as Chief of Police.  The screening committee was dissolved and Plaintiff later learned that a new Chief of Police, Jeffrey Young, a male, had been hired by Defendant as Chief of Police.  Plaintiff filed a discrimination complaint with the EEOC and obtained a right-to-sue letter.  On August 9, 2007, Plaintiff filed her Complaint against Defendant for its violations of her federally protected rights against discrimination because of her sex under Title VII of the Civil Rights Act of 1964 (Case 2:07-cv-00717-MHT-CSC Document 1) (all court document references hereafter will be in

Case 2:07-cv-00717-MHT-CSC). Defendant filed its Answer denying that it has discriminated against Plaintiff because of her sex in violation of Title VII of the Civil Rights Act of 1964 (Document 4).

## II. STATEMENT OF MATERIAL FACTS

Plaintiff, a female, has worked continuously for Defendant since August 2002 in Montgomery, Alabama, as a police investigator from 2002-2003 and then as Interim Chief of Police from February 2003 until July 2006 [Document 14 Page 24 (internal pages 18-19)]. In or around January 2003, Plaintiff was appointed Interim Chief of Police by Defendant after then-Chief of Police Caesar Moss (hereinafter, "Moss") was deployed to Iraq by the United States Military [Document 1 ¶ 14; Document 4 ¶ 14 (admitting Plaintiff's factual allegation)]. Plaintiff was highly qualified for the position she held, and she was performing each and every essential function of her job to Defendant's reasonable satisfaction [Document 14 Page 34 (internal page 59 at line 15)]. In January 2005, Moss returned from his service in Iraq and retired as Chief of Police of Defendant [Document 1 ¶ 15; Document 4 ¶ 15 (admitting Plaintiff's factual allegation)]. Defendant announced the vacancy for Chief of Police, solicited employment applications, and appointed a screening committee to evaluate potential candidates. [Document 1 ¶ 16; Document 4 ¶ 16 (admitting Plaintiff's factual allegation)]. Plaintiff applied for the permanent position as Chief of Police [Document 1 ¶ 17; Document 4 ¶ 17 (admitting Plaintiff's factual allegation)].

Plaintiff was one of three applicants, and the only female, considered by the screening committee for the permanent position as Chief of Police. Id. Plaintiff was qualified for the position as she had served substantially the same functions as Interim Chief of Police for a

number of years. [Document 14 Page 34 (internal page 59)]. Furthermore, Plaintiff possessed the requisite education level (Document 13 Page 7 ¶ 22). She met all other requirements of the position. [Document 14 Page 25 (internal page 24, lines 4-14)]. In addition, Plaintiff ranked highest among the three applicants with a score of 65 by the Defendant's screening committee. (Document 13 Page 14). This was higher than the score (61) given to Donnie Nunley, the original applicant who was recommended by the screening committee. Id. Additionally, Defendant's Personnel and Human Relations Affirmative Action Personnel Compliance Report indicates that Plaintiff was the top-ranked candidate among the three original applicants for the permanent position as Chief of Police. (Exhibit B hereto attached to Plaintiff's Response to Defendant's Motion for Summary Judgment). Nunley was not hired for the position. (Document 13 Page 14). Instead of adhering to its initial valid screening process, Defendant arbitrarily and intentionally decided to disregard the results of the initial screening process and re-open the position for employment. [Document 13 Page 14; Document 1 ¶ 14; Document 4 ¶ 14 (admitting factual allegation)].

A second screening committee was appointed by Defendant to evaluate the qualified applicants [Document 1¶ 18; Document 4 ¶ 17 (admitting Plaintiff's factual allegation)]. Plaintiff was contacted by Joe Pace, who Plaintiff believed to be the chairman of the second screening committee, seeking an interview appointment for an evaluation by the second screening committee . [Document 14 Page 26 (internal page 28 at line 10)]. While all other applicants were contacted directly by the employer, Plaintiff was advised by Pace to contact Dr. Frazier, a representative of the employer, regarding the necessary steps she needed to take to participate in this second screening process. Id. Plaintiff contacted Dr. Frazier, who promised to

get back in touch with Plaintiff which he failed to do [Document 14 Page 26-27 (internal pages 28-29)]. Shortly thereafter, Plaintiff learned that a new Chief of Police, Jeffrey Young, a male, had been hired by Defendant [Document 14 Page 34 (internal page 58 at line 3)]. After Young began in the position, Plaintiff has be relied upon to perform duties and responsibilities within the scope of Young's position that Young has been unable to perform [Document 14 Page 35 (internal page 61 at line 1)]. Plaintiff filed a complaint with the EEOC and was given notice of her right to sue postmarked "May 09  2007" (Exhibit A attached hereto Plaintiff's Response to Defendant's Motion for Summary Judgment).

### III.  LEGAL ARGUMENT

**A.  SUMMARY JUDGMENT STANDARD**

Under the provisions of Rule 56(c), F.R.C.P., summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex v. Cattrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant "always bears the initial responsibility of informing the district court of the basis for its motion"... and ... must "demonstrate the absence of a genuine issue of material fact." *Id*.

After the movant has met its burden under Rule 56(c), the non-movant must set forth "specific facts showing that there is a genuine issue for trial" *Id*. In ruling, the Court "must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986); cited in *Reeves v. Thigpen*, 879 F.Supp 1153, 1166 (M.D.Ala. 1995).

In entertaining a motion for summary judgment, the court should review all of the

evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but the court may not make credibility judgments or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence supporting the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, pp. 299-300 (2d Ed. 1995); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

In an employment discrimination case, the court is required to consider the evidence supporting the plaintiff's prima facie case and any such evidence tending to undermine the defendant's nondiscriminatory explanation. The existence of a prima facie case combined with sufficient evidence for the trier of fact to disbelieve the defendant's proffered nondiscriminatory reason for the employment action it took is sufficient for the trier of fact to infer the ultimate fact of discrimination. *Reeves*, at 147.

**B. ARGUMENT-GENDER-BASED DISCRIMINATION**

**1. Title VII of the Civil Rights Act of 1964 - Gender-based discrimination. 42 U.S.C. 2000e.**

Plaintiff has established a prima facie case for discrimination under 42 U.S.C. 2000e, Title VII of the Civil Rights Act of 1964 as amended. Plaintiff contends that Defendant discriminated against her, a female employee, with respect to her being rejected for the permanent position as Chief of Police. 42 U.S.C. 2000e-2(a) provides that "It shall be an unlawful employment practice for an employer to (a) fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

**2.  Circumstantial Evidence.**

**i.  Overview of the Legal Paradigm.**

Individual disparate treatment claims in which the plaintiff lacks direct evidence are analyzed under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in conjunction with *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  This framework places upon the plaintiff the burden of establishing a *prima facie* case of disparate impact discrimination.  Essentially, the plaintiff produces sufficient evidence to allow a fact-finder to draw a reasonable inference that the defendant used prohibited criteria in making an adverse employment decision regarding the plaintiff.

Plaintiff concedes that Defendant's liability for sex discrimination is predicated upon circumstantial evidence.  Since circumstantial evidence of sex discrimination can be difficult to produce, it is appropriate to use the three-step burden shifting framework developed in *McDonnell Douglas Corp.* to analyze circumstantial evidence of discrimination.  First, "the plaintiff must create an inference of discrimination by establishing a *prima facie* case. If she does so, the defendant must 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'...The plaintiff may then attempt to show that these reasons are pretextual or may

present other evidence to show that discriminatory intent was more likely the cause of the employer's actions." *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Burdine*, 450 U.S. at 256.

If a plaintiff chooses to make use of the *McDonnell Douglas* presumption, she initially does not need to present evidence from which the trier of fact could conclude that the adverse employment action taken against her was caused by improper discrimination. Instead, she need only establish that (1) an adverse employment action was taken against her, (2) she was qualified for the job position in question, and (3) different treatment was given to someone who differs with regard to the relevant personal characteristic. *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999).

A plaintiff's *prima facie* case raises a presumption of illegal discrimination. *Burdine*, 450 U.S. at 254; *see also Hunter v. Citibank, N.A.*, 862 F.Supp. 902 (E.D.N.Y.1994), affirmed 60 F.3d 810, certiorari denied 116 S.Ct. 483, 516 U.S. 978, 133 L.Ed.2d 410. (Upon a showing by Plaintiff that he has met his *prima facie* burden, an inference of discriminatory intent is raised). As a general rule, "[d]emonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997).[1]

**ii. Plaintiff can prove a *prima facie* case of discriminatory employment action.**

To establish a *prima facie* case of sex discrimination under Title VII, Plaintiff must

---

[1] In the Eleventh Circuit, the satisfaction of the McDonnell Douglas test raises a "presumption," but not an "inference." *Walker v. Mortham*, 158 F.3d 1177, 1184, n. 10 (11th Cir. 1998).

demonstrate that (1) she is a member of a protected class, (2) she applied and was qualified for a promotion, (3) she was rejected, and (4) an equally or less qualified person who is not a member of the protected class was hired. 42. U.S.C.A. § 2000e.

With respect to the first element of a *prima facie* case of sex discrimination, Plaintiff's sex, female, is a protected class under 42 U.S.C. § 2000e. Therefore, it is undisputed that Plaintiff has satisfied the first element of a *prima facie* case of sex discrimination.

As to the second element of a *prima facie* case, while Defendant refrains from arguing that Plaintiff was unqualified for the permanent position as Chief of Police, Defendant contends that Plaintiff had not "applied" for the permanent position as Chief of Police. However, Defendant admitted in paragraph 17 of its Answer that Plaintiff "was one of three *applicants* screened by the independent search committee and that she was the only female" for the permanent position as Chief of Police. (Defendant's Answer Paragraph 17) (*emphasis added*). Furthermore, Defendant admitted to paragraph 18 of Plaintiff's Complaint that Plaintiff was one of the "qualified *applicants*" evaluated by the second screening committee for the same position. (See Plaintiff's Complaint Paragraph 18 and Defendant's Answer Paragraph 18) *(emphasis added)* for the same position. Because Defendant twice admitted in its Answer that Plaintiff was considered as an "applicant" by both the first and second screening committees, and now argues that Plaintiff did not apply, whether the Plaintiff applied for the permanent position as Chief of Police is a genuine issue of material fact to be presented at trial when the evidence is viewed in a light most favorable to the Plaintiff.

Notwithstanding Defendant's own admissions that the Plaintiff was an applicant,

8

Defendant argues that Plaintiff had not applied, alleging that Plaintiff voluntarily refused to participate in an evaluation interview with the second screening committee. To the contrary, Plaintiff asserts that she sought an interview with the second screening committee. Furthermore, Plaintiff asserts that she was instructed by Pace, who she believe to be the chairman of the second screening committee, to contact Dr. Frazier, a representative of Defendant, regarding an interview with the committee, which she did. Plaintiff further asserts that she was told by Dr. Frazier, Defendant's representative, that he would get back to her which he never did. Because there is a dispute as to why Plaintiff did not participate in an interview before the second screening committee, a genuine issue of material fact exists as to whether the Plaintiff applied for the position which should be presented at trial. When this factual dispute is viewed in a light most favorable to Plaintiff, it overcomes Defendant's contention that there is no genuine issue of material fact.

The third element of a *prima facie* case, that the Plaintiff's application was rejected, is not contested in Defendant's Motion for Summary Judgment. Plaintiff was rejected by the first screening committee in favor of a male finalist who thereafter withdrew his interest from the position. Plaintiff was rejected by the second screening committee by first not being contacted about an interview with the second screening committee as she was promised, and second, by the eventual hiring of Jeffrey Young as Chief of Police.

With respect to the fourth element of a *prima facie* case, it is undisputed that the person hired, Young, is a male and is not a member of the Plaintiff's protected class; however Defendant contends that Young was not equally or less qualified than Plaintiff. Nonetheless, Plaintiff has set forth sufficient evidence to indicate that Young, the person hired, was equally or less

qualified than Plaintiff.

First, Plaintiff refutes Defendant's argument that Young, the person hired for the position, a male, was more qualified than Plaintiff because he allegedly possessed more relevant experience than Plaintiff. Defendant had no experience supervising the Alabama State University Police Department, and had never served as chief of police anywhere. On the other hand, Plaintiff dutifully performed the exact functions as Interim Chief of Police for the Alabama State Police Department for two years. Furthermore, After Young began in the position, Plaintiff has been relied upon to perform duties and responsibilities within the scope of Young's position that Young has been unable to perform; thus demonstrating Plaintiff's greater qualifications. Therefore, it was Plaintiff who possessed more relevant experience for the position as Chief of Police of the Alabama State University Police Department.

Defendant further argues that Young was not equally or less qualified than Plaintiff because Young possessed a master's degree and Plaintiff did not. While Young did allegedly possess a master's degree, Plaintiff was pursuing a master's degree through her enrollment in a graduate program; thus, any disparity in education level was slight and insignificant as it related to her qualifications for the position as Chief of Police. Furthermore, to the extent that any disparity in education level is material, it is overcome by Plaintiff's superior level of experience directly related to the position sought. Because of the evidence tending to show that Young was equally or less qualified than Plaintiff, a genuine issue of material fact exists for trial on the issue of the relative qualifications of Plaintiff and Young.

**3. Defendant's proffered legitimate non-discriminatory reason is pretext**.

Plaintiff contends that Defendants' proffered legitimate non-discriminatory reason for Plaintiff's being rejected is a mere pretext for discriminatory intent.

Assuming that Plaintiff has established a *prima facie* case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for Plaintiff's termination. *McDonnell Douglas*, 411 U.S. at 802. An employer's burden is "exceedingly light" requiring only that the employer offer evidence that could lead a rational fact-finder to believe the decision was not discriminatory. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (1994). In the event the defendant is successful in satisfying this burden, "the McDonnell Douglas framework - with its presumptions and burdens - disappear[s] and the sole remaining issue [is] discrimination vel non." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142-43 (2000).

Once the employer satisfies this burden of production, the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for intentional discrimination. *Jordan v. Wilson*, 649 F.Supp. 1038, 1054 (M.D. Ala. 1986) (internal citations omitted). The employee may satisfy this burden by persuading the court either directly that a discriminatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief. *Id*. Furthermore, at the summary judgment phase, plaintiff can establish pretext by "presenting evidence tending to show that the predicate facts underlying the proffered reason were false" and that "the employer knew them to be false at the time of [its] purposed reliance" or that "the proffered reason may involve a disputed fact of a kind that it is improbable that the employer could be mistaken about it." *Keel*

*v. Roche*, 256 F. Supp. 2d 1269, 1287 (M.D. Ala. 2003) (*quoting Walker v,. Nations Bank of Fla.*, 53 F.3d 1548, 1564 (11th Cir. 1995)). Thus, the remaining issue is whether the plaintiff has presented sufficient evidence from which a reasonable jury could find that a discriminatory reason motivated the employer or that the employer's proffered reason is unworthy of credence. *Burdine*, 450 U.S. at 256; *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 16 F.3d 1519, 1528 (11th Cir. 1997).

Defendant has failed to carry its burden of proving that its reason for rejecting Plaintiff's application was legitimate and non-discriminatory. Defendant argues that Plaintiff was rejected because she "failed to complete her application for the position." Def.'s Motion for Summary Judgment, Page 11, subheading A. The argument that Plaintiff was rejected because she failed to complete her application for the position is mere pretext.

Defendant contends that Plaintiff's alleged refusal (which Plaintiff disputes) to participate in an evaluation interview constituted a failure to complete her application for the position. Defendant relies on this refuted assertion as its proffered legitimate and non-discriminatory reason for rejecting Plaintiff's application. As noted above, Plaintiff asserts that she sought an interview with the second screening committee, and that was told by Defendant's representative that he would get back to her about an interview which he never did. Plaintiff did not decline to be interviewed by the second committee as alleged. Furthermore, it is implausible to conclude that Plaintiff had abandoned her desire to be Chief of Police when she had completely participated in the initial screening process, communicated with the parties she thought appropriate to complete the second screening process, and continued to work daily in fulfilling her duties and obligations as Chief of Police for Defendant on an interim basis. Therefore, to

proffer a material fact which is highly disputed as the legitimate and non-discriminatory reason for Plaintiff's rejection is pretext.

Defendant's argument that Plaintiff was rejected on the basis of her relative qualifications in also pretextual. Defendant argues that Young's allegedly greater experience and education than Plaintiff for the permanent position as Chief of Police as its legitimate and non-discriminatory reason for hiring Young rather than Plaintiff. However, Young was not even considered for the position by Defendant's original screening committee. The only reason Young later became a candidate is because Nunley, the person the first screening committee selected over Plaintiff, withdrew his interest in the position. Thereafter, instead of hiring Plaintiff, who scored higher than Nunley and was ranked highest among three candidates by the original screening committee, Defendant dissolved the original screening committee and re-opened its search, whereby Young was hired. Thus, Defendant's argument that Plaintiff was rejected because there was more qualified candidate is also pretext.

Plaintiff has produced sufficient evidence to demonstrate that either of Defendant's proffered legitimate non-discriminatory reasons is pretext. Defendant's argument that it rejected Plaintiff because she failed to complete her application by not participating in a second interview is pretext because Plaintiff actually sought a second interview and, for all practical purposes, was denied one by Defendant's representative. Defendant's argument that it rejected Plaintiff because the person hired, Young, was more qualified, is pretext because Young was not an original candidate for the position, and because Defendant originally rejected Plaintiff in favor of Nunley, a candidate who was less qualified that Plaintiff.

This foregoing evidence combined with Plaintiff's *prima facie* case establish the Defendant's legitimate non-discriminatory reason as pretext. Defendant's contentions, based on facts which are highly disputed and lacking any other evidentiary basis, is simply not believable or reasonable given the evidence in this case. In any event, there is a genuine issue of material fact.

**4. Plaintiff timely filed its action against Defendant.**

Title VII of the Civil Rights Act of 1964 requires that suit be brought within 90 days after the *receipt* of notice of right to sue (*emphasis added*). When the date on which a right-to-sue letter was actually received is either unknown or disputed, Courts have presumed various receipt dates, but no receipt date less than three days after mailing may be presumed. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723 (1984).

In *Brown*, cited above, a notice of right to sue was issued to the complainant on January 27, 1981. Id. Citing Fed.Rule Civ.Proc. 6(e), the Supreme Court held that the presumed date of receipt of the notice was January 30, 1981. Id. Furthermore, Several circuit courts have presumed various receipt dates ranging from three to seven days after the right-to-sue letter was mailed. See Lozano v. Ashcroft, 258 F.3d 1160, 1164 (10th Cir.2001); see also Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (presuming the plaintiff received a right-to-sue letter three days after delivery based upon Fed. R. Civ. P. 6(e)); FN1 Banks v. Rockwell Intern. N. Am. Aircraft Operations, 855 F.2d 324, 326 (6th Cir.1988) (applying a five-day presumption of receipt of a right-to-sue letter).

In the present case, the envelope containing Plaintiff's Right-to-Sue Letter is postmarked

"May 09, 2007". (A photocopy of said envelope is attached hereto and marked as "Exhibit A" to Plaintiff's Response to Defendant's Motion for Summary Judgment). Adding a three-day presumption of receipt to the May 9, 2007 postmark date, the minimum number of days a court may presume, means that the proper receipt date could be not before May 12, 2007. Plaintiff's lawsuit was filed on August 9, 2007, which is 89 days after the earliest possible receipt date that may be presumed. Therefore, Plaintiff's suit was timely filed with the court within 90 days after the *receipt* of notice of right to sue.

## CONCLUSION

The defendant's argument is rife with disputes as to material facts existing between the parties; therefore, the defendant is not entitled to summary judgment. Plaintiff requests that this Honorable Court deny Defendant's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 5th day of June, 2008.

/s/ Andy Nelms
K. Anderson Nelms
Anderson Nelms & Associates, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
Andynelms@andersonnelms.com
ASB-6972-E63K

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following parties or counsel:

Kenneth L. Thomas

Ramanadah M. Salaam-Jones

Attorneys for Defendant

Thomas, Means, Gillis, & Seay, P.C.

Post Office Drawar 5058

3121 Zelda Court

Montgomery, Alabama 36103-5058


                                            /s/ Andy Nelms

K. Anderson Nelms

Anderson Nelms & Associates, LLC

P.O. Box 5059

Montgomery, AL 36103

(334) 263-7733 (Voice)

(334) 832-4390 (Fax)

Andynelms@andersonnelms.com

ASB-2014-E66J