```
    IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

      MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


VICKY ARRINGTON,              )
                              )
    Plaintiff,                )
                              )   CIVIL ACTION NO.
    v.                        )    2:07cv717-MHT
                              )         (WO)
ALABAMA STATE UNIVERSITY,     )
                              )
    Defendant.                )
```

## OPINION

Plaintiff Vicky Arrington brings this lawsuit against defendant Alabama State University ("ASU"), claiming gender discrimination in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 1981a and 2000e through 2000e-17. Arrington claims that ASU did not hire her to be its permanent Chief of Police because she is a woman.

The case is before the court on ASU's motion for summary judgment. After reviewing the record, the court concludes that ASU's motion should be granted for the reasons that follow.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's role at the summary-judgment stage is to view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Arrington was hired by ASU as a police investigator in 2002. In early 2003, ASU Vice President Leon Frazier recommended that she be appointed Interim Chief of Police after the chief and his second-in-command were deployed to Iraq.

Arrington was appointed to the position and served continuously until early 2005, when the chief retired. Shortly after, ASU announced the vacancy for the position of Chief of Police. ASU listed the qualifications as follows:

> "Bachelor's degree in criminal justice, public or business administration or closely related field. Master's degree preferred in one of the preceding areas. Extensive knowledge of modern police methods, procedures and administration; thorough knowledge of business management practices and principles; ability to exercise effective administrative and technical supervision over sworn and non-sworn security personnel engaged in law enforcement activities and the ability to exercise judgment and discretion in applying and interpreting departmental policies and procedures."

Def. Ex. 4.

The Human Resources Department forwarded three applications to the screening committee for its review. They were for Arrington, Virgil Merrit, and Donnie Nunley. The screening committee interviewed and ranked all three candidates. Arrington and Merrit tied with scores of 65, and Nunley had a slightly lower score of 61. The screening committee ranked Arrington highest,

followed by Merrit, and finally Nunley. ASU Vice President Frazier reviewed the ranked candidates and selected Nunley over the other candidates because he was "[p]erceived as having [the] highest probability of overall success." Def. Ex. 6.

In a June 2007 memorandum to ASU President Joe A. Lee, Frazier noted that there was "no significant variation between the three candidates" and that "none of [the candidates] are notably strong." Def. Ex. 7. He also noted that two of the applicants were "internal to the Police Department and one was external to the university." Id.

In addition, Frazier wrote that, "given the history of the Police Department and its on-going proclivity for internal strife, dissension, and demonstrated anti-managerial orientations and ambitions, at the expense of the Department's effectiveness and the University's image, a case is made for an appointment from without the Department." Id.

4

Frazier recommended that ASU hire Nunley to be Chief of Police; reassign Arrington to the position of Police Investigator; and ensure that Arrington report directly to the Chief of Police so that she would not have to report to anyone she had supervised. Frazier suggested that this arrangement would give "appropriate deference to the first female Police Chief at the University." Id. In addition, Frazier noted that Arrington had "served valiantly and conscientiously" in the position of Interim Police Chief. Id.

Two weeks later, Personnel and Human Resources Director Olan Wesley sent a memorandum to President Lee asking that Lee rescind Frazier's recommendation, re-open the position, and appoint a new search committee. Wesley wrote that some of Frazier's comments in the recommendation "encouraged potential litigation," in particular his comments regarding the climate of the police department and suggesting that the university should give some level of deference to Arrington as ASU's first female police chief. Def. Ex. 8.

Subsequently, Wesley informed Frazier that President Lee had approved re-opening the vacancy; the position was re-opened from July 21 through August 4, 2005; the job posting was identical to the previous posting.

A second search committee, chaired by Joseph Pace, was formed.  Six applicants were considered for the position, including Arrington, Virgil Merritt, Jeffrey Young, Mark Mathies, Andy Dowell and Marion Brock.  The search committee scored them as follows: Young: 88, Arrington: 83.5, Merritt: 83.5, Mathies 83, Dowell: 74, and Brock: 78.  Of these six, three were interviewed: Young, Merritt, and Brock.  Mathies was not interviewed because he could not be reached for an interview; Dowell was not interviewed because he was unable to appear for an interview.  ASU and Arrington disagree as to why Arrington was not interviewed; ASU contends that Arrington was offered, but declined, an interview, while Arrington claims that she never declined any interview.  The evidence reflects that Pace called

Arrington, informed her that he was chairing a screening committee for the position of police chief, and offered her two interview times.  Arrington was surprised and asked about what happened with the first screening process.  Pace informed her that he did not know what happened and suggested she speak with Frazier.  Arrington called Frazier, who said he would call her back but never did.  Arrington did not follow up with Frazier or Pace.

The committee selected Young as the finalist for the position, and he was appointed police chief.

In December 2006, Arrington filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a right-to-sue letter on May 8, 2007, postmarked May 9, 2007.  Arrington filed suit on August 9, 2007, 93 days after the letter was issued, asserting gender discrimination in violation of Title VII.

### III.   DISCUSSION

A.   Whether Arrington's Claim is Timely

Under Title VII, a complainant has 90 days after receiving an EEOC right-to-sue letter to bring her lawsuit.  42 U.S.C. § 2000e-5(f)(1).  Arrington's letter is dated May 8, 2007, and she filed suit August 9, 2007, 93 days later.  ASU contends that Arrington's claim is untimely because she did not file suit within 90 days from the date the letter was issued.

The 90-day limit, however, runs from the date the letter is <u>received</u>.  <u>Stallworth v. Wells Fargo Armored Services Corp.</u>, 936 F.2d 522, 524 (11th Cir. 1991). There is no hard and fast rule for determining when a complainant has received the letter; rather, courts make this determination on a case-by-case basis.  <u>Kerr v. McDonald's Corp.</u>, 427 F.3d 947, 952 (11th Cir. 2005).

In this case it is fair and reasonable to apply a three-day "mailbox rule" from the date that the letter is issued.  In <u>Baldwin County Welcome Ctr. v. Brown</u>,

466 U.S. 147 (1984), the Supreme Court presumed that a right-to-sue letter was received three days from when it was issued. Id. at 148.[1] Similarly, when a complainant receives notice that a letter must be picked up at the post office, the Eleventh Circuit allows her three days to obtain the letter from the post office. Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1342 (11th Cir. 1999). Applying a three-day mailbox rule in this case provides a reasonable time for the letter to travel through the mail. To do otherwise, as ASU requests, would essentially require a plaintiff to bring suit 90 days from when the letter is issued, contrary to the requirement that the clock should not begin to run until the plaintiff's receipt of the letter.

---

1. Norris v. Florida Dep't of Health & Rehabilitative Services, 730 F.2d 682, 683 (11th Cir. 1984), is not to the contrary. In that case, the Eleventh Circuit refused to apply the three-day period because the plaintiff was asking for three days from when the letter was received, not when it was issued.

Accordingly, the court finds that it is appropriate to apply the three-day rule here. Because Arrington received the letter on May 11, 2007, and because the 90 days from May 11 ended on August 9, 2007, the date that Arrington filed suit, her claim is timely.

B. Arrington's Gender-Discrimination Claim

Title VII gender-discrimination claims are analyzed under the familiar burden-shifting framework laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under that framework, Arrington must first establish a prima-facie case of gender discrimination. <u>See</u> <u>id</u>. at 802. The burden then shifts to ASU to rebut the presumption of discrimination by providing a legitimate, nondiscriminatory reason for the adverse-employment action. <u>See</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir. 2000). ASU's burden is merely one of production, and thus it need not persuade the court that it was actually motivated by the reason advanced. <u>See, e.g.</u>, <u>Texas Dep't of Cmty Affairs v.</u>

10

Burdine, 450 U.S. 248, 253-55, 258 (1981); McDonnell Douglas, 411 U.S. at 802. Once ASU satisfies its burden, the burden shifts back to Arrington to persuade the court that ASU's proffered reason is pretextual. Arrington must produce enough evidence to allow a reasonable factfinder to conclude that ASU's decision was not based on the reason given. Chapman, 229 F.3d at 1024.

Arrington can make out a prima-facie case of gender discrimination based on ASU's decision to hire Jeffrey Young if she can show that (1) she is a member of a protected class; (2) she was qualified for the position that she sought; (3) she was rejected, and (4) the position went to a similarly situated person outside the protected class. See Wilson v. B/E Aero., Inc., 376 F.3d 1079, 1089 (11th Cir. 2004). Arrington has made such a showing. First, she is a woman and therefore a member of a protected class; second, ASU does not dispute that Arrington was qualified for the position; third, Arrington was not hired as police

11

chief; and, finally, the position went to Jeffrey Young, a male.

Because Arrington has made out her prima-facie case, the burden shifts to ASU to provide a legitimate, non-discriminatory basis for its decision not to hire her. ASU offers two reasons: first, it contends that Arrington did not properly apply for the position, or, at the very least declined to interview for the position; second, it contends that Young was selected over Arrington because he "was the best candidate for the job" in the eyes of the screening committee. In particular, ASU points out that the job posting specifically stated a preference for candidates with a master's degree in "criminal justice, public or business administration or [a] closely related field," and that Young had such a degree in criminal justice, but Arrington did not.

Arrington, in response, contends that both reasons are pretextual. The court agrees that ASU's contention that Arrington did not "apply" for the position is

12

without merit; the committee itself treated Arrington as an applicant.  This is not enough, however: in order to meet her burden, Arrington must show that <u>both</u> articulated reasons are pretextual.  Arrington cannot show that ASU's other stated reason--that Young was the best candidate--is pretextual.  In order to make such a showing, Arrington must show that "the disparities between the successful applicant's and her own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  <u>Brooks v. County Comm'n</u>, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation marks and citation omitted).  In other words, Arrington's burden is not to show that she was more qualified than Young, but rather that the difference in their qualifications were so extreme that no reasonable person could choose Young over Arrington.

Arrington has not made such a showing.  Indeed, Young had extensive experience that arguably surpassed

13

Arrington's: he served as the deputy chief of police at Auburn University at Montgomery for 11 years, and Arrington served as interim police chief for only two years. Further, the job posting plainly stated a preference for candidates who already have a master's degree in one of several particular relevant fields. Arrington was working towards a master's degree in counseling, which was not among the preferred fields enumerated in the job posting; Young, in contrast, had a master's degree in criminal justice, one of the preferred fields.

In light of the above record, Young was not so much less qualified than Arrington that no reasonable factfinder could choose him over her. Thus, Arrington has not carried her burden of showing that ASU decided not to hire her because of her gender.

Arrington also argues that she is entitled to relief because (1) Frazier did not recommend her for the position after the first search and (2) ASU failed to interview her during the second search. It is

14

unclear whether Arrington contends that these actions give rise to additional, distinct gender-discrimination claims or that they merely support her underlying failure-to-hire claim. The court will, however, address them as distinct claims in the interest of completeness.

First, Arrington cannot make out a prima-facie case with respect to Frazier's recommendation, because she cannot show that she suffered an adverse-employment action when Frazier recommended Nunley. In order to show that she suffered an adverse-employment action that could give rise to an independent gender-discrimination claim, Arrington must "establish an 'ultimate employment decision' or make some other showing of substantiality in the employment context." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Here, there was no "ultimate employment decision"; no action was taken on Frazier's recommendation, and the application process was re-opened.

15

Second, Arrington cannot show that she is entitled to relief based on the failure to interview her. Even if she were able to make out a prima-facie case, she has provided no evidence to suggest that the failure to interview her was based on anything other than a misunderstanding: Pace expected Arrington to contact him to schedule an interview, and Arrington expected Frazier to call her back to explain what happened. Arrington has not come forward with any evidence to suggest that Frazier did not return her call because of bias. Rather, the record shows that it was Frazier who first recommended that Arrington be appointed Interim Chief of Police; Frazier also noted that Arrington had served "valiantly and conscientiously" and sought to give her "deference" for serving as ASU's first female police chief. Def. Ex. 7. There is no evidence that Frazier was motivated by gender bias. Thus, Arrington's claim that ASU's failure to interview her was motivated by gender bias is without merit.

16

****

Arrington has failed to establish any genuine issues of material fact warranting a trial. She has not put forth sufficient evidence to support a finding that ASU's articulated reason for hiring Young as ASU Chief of Police is unworthy of belief and thus a pretext for gender discrimination. ASU's motion for summary judgment will be granted.

An appropriate judgment will be entered.

DONE, this the 25th day of November, 2008.

                                           /s/ Myron H. Thompson
                                       UNITED STATES DISTRICT JUDGE